UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| In re: Deere & Company Repair Services Antitrust Litigation | Case No. 3:22-cv-50188<br>MDL No. 3030 |
| This Document Relates to:<br>ALL CASES | STATUS REPORT RE: PROPOSED LEADERSHIP STRUCTURE |

**APPLICATION OF REX A. SHARP OF SHARP LAW, LLP
AS LEAD AND/OR CO-LEAD CLASS COUNSEL**

Plaintiff Monty Ferrell respectfully submits this application in support of appoint Rex A. Sharp as Lead and/or Co-Lead Class Counsel. Lead Class Counsel is usually selected by the Court, not just imposed by the largest "slate" of lawyers filing together. *Manual for Complex Litigation* (4th ed. 2009) ("the Manual"), § 10.224 ("Deferring to proposals by counsel without independent examination, even those that seem to have the concurrence of a majority of those affected, invites problems down the road if designated counsel turn out to be unwilling or unable to discharge their responsibilities satisfactorily or if they incur excessive costs."). For the reasons set forth below, Rex A. Sharp is "best able to represent the interests of the class" under Federal Rule of Civil Procedure 23(g)(2) because he, along with the team at Sharp Law, combine demonstrated lead counsel, MDL, and trial experience with high-level success prosecuting antitrust class cases. Sharp Law and its partners, including Mr. Sharp, have been sole lead in many dozens of other federal class actions, and have the labor and money to bring this one to an efficient, successful conclusion, via trial or settlement. Indeed, the attorneys at Sharp Law have years of experience not only within the realm of antitrust law, but also strong agricultural and rural backgrounds of relevance to the claims and parties at issue in this case.

**ARGUMENT IN SUPPORT**

This Court should "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). The appointment of interim counsel is guided by the same factors that guides the choice of counsel after full consideration of Rule 23. Courts consider: (l) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's knowledge of the applicable law; (3) the resources that counsel will commit to representing the class, and (4) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action. See Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(1)(B). Further, designating interim counsel "clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual § 21.11. As discussed herein, all the factors noted in Rule 23(g) and the Manual are more than satisfied here.

Further, Magistrate Judge Stephen R. Bough and law professor Elizabeth Chamblee Burch note that a one-size-fits-all approach does not always work when selecting MDL leadership. Stephen R. Bough & Elizabeth Chamblee Burch, *Collected Wisdom on Selecting Leaders and Managing MDLs*, 106 JUDICATURE 70, 73-75 (2022). Choosing leadership from applications and interviews enables the Court to glean a sense of who the attorneys are and helps ensure that all counsel who apply or are interested in leadership are not "'excluded from the process.'" *Id.* at 74 (quoting Judge Richard Story of the Northern District of Georgia who even after being presented with a slate, permitted additional applications).

Mr. Sharp and the attorneys at Sharp Law meet all the criteria. First, Mr. Sharp was among the first to file complaints alleging the claims at issue here. However, first to file in this case is of lesser importance given the national media exposure given to the issue. Courts often appoint counsel from the first filed case as that is often much further ahead of the others or the other cases have not been consolidated and transferred to a central location. *See, e.g., In re Clearview AI, Inc. Consumer Privacy Litig.*, No. 21 C 0135, 2021 WL 916056, at *1 (N.D. Ill. Mar. 10, 2021) (choosing first to file counsel as lead because the attorney in that case (1) filed a motion for preliminary injunction and (2) successful defended motions to transfer venue and lack of personal jurisdiction). None of the cases in this Multidistrict Litigation are more procedurally advanced than any other. The literal first-to-file should be given little weight.

Second, Mr. Sharp and the attorneys at Sharp Law have extensive experience in prosecuting antitrust class action claims on behalf of consumers and in a wide variety of complex litigation matters. This experience has provided all team members with extensive knowledge of the applicable law. Indeed, Mr. Sharp was a Co-Lead in the $609 million EpiPen MDL which recently concluded, providing money and freeing manpower for the litigation in this case.

Third, Mr. Sharp and the attorneys at Sharp Law have the financial resources to commit to this litigation. Sharp Law attorneys have decades of experience litigating some of the nation's most complicated antitrust and class actions cases, and have recovered over a billion dollars in damages for class members. These resources are not merely financial, however. The firm has the personnel and expertise necessary to pursue a case of this magnitude and to achieve a positive outcome for the plaintiffs. The group has substantial experience with the tasks unique to complex litigation, including working with investigators and other non-lawyer professionals, supervising large teams of lawyers analyzing discovery documents, and finding and engaging highly qualified expert

witnesses and consultants.

Fourth, Mr. Sharp and the attorneys at Sharp Law have extensive experience handling class actions, complex litigation, and the types of claims asserted in the action. The attorneys at Sharp Law LLP have extensive experience handling class actions in state and federal courts throughout the United States. The firm has a national footprint developed over decades of successfully handling complex class action cases in state and federal courtrooms. Our class action cases have taken us from rural New Mexico all the way to the United States Supreme Court. Mr. Sharp has both briefed and personally argued class issues before the U.S. Supreme Court. *Dart Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81 (2014). Attorneys at Sharp Law have served as sole lead class counsel in over 50 cases and co-lead counsel in dozens more, recovering well over a billion dollars for class members. [1] Sharp Law has focused exclusively on class actions for over 20 years, self-funding all its cases. In addition, the firm has also been actively involved in MDLs including in leadership.[2] Outside of the MDL context, Sharp Law has been appointed lead class counsel in several oil & gas class actions throughout the Midwest.

Mr. Sharp is the Managing Partner of Sharp Law and focuses on agriculture, antitrust,

---

[1] *See* Ex. 1 (Sharp Law LLP Resume) for full list of class action and antitrust cases with leadership positions.

[2] *See, e.g., In re SoClean, Inc., Mktg., Sales Practices, and Prod. Liab. Litig.*, No 22-mc-152 (W.D. Pa.) (co-lead); *In re Crop Inputs Antitrust Litig.*, 21-MD-2993 (E.D. Mo.) (executive committee); *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 17-MDL-2785 (D. Kan.) (co-lead); *In re Imprelis Herbicide Mktg., Sales Practices & Prod. Liab. Litig.*, 11-MDL-02284-GP (E.D. Pa.); *In re Union Pacific Railroad Empl. Prac. Litig.*, MDL No. 1597 (D. Neb.) (co-lead); *In re Western States Wholesale Natural Gas Antitrust Litig.*, MDL No. 1566 (D. Nev.) (co-lead counsel for plaintiff Reorganized FLI); *In re Domestic Airline Travel Antitrust Litig.*, MDL No. 2656; *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, MDL No. 2918; *In re Blue Cross Blue Shield Antitrust Litig.*, MDL No. 2406; *In re Interior Molded Doors Indirect Purchaser Antitrust Litig.*, 18-cv-850; *In re Pre-Filled Propane Tank Mktg. & Sales Practices Litig.*, No. 09-MD-2086 (W.D. Mo.); *In re Medtronic Sprint Fidelis Leads Products Liability Litig.*, No. 08-MD-1905 (D. Minn.); *In re Cathode Ray Tube Antitrust Litig.* (Indirect Purchaser Action), MDL No. 1917 (N.D. Cal.); *In re TFT-LCD (Flat Panel) Antitrust Litig.* (Indirect Purchaser Action), MDL No. 1827 (N.D. Cal.); *In re Guidant Corp. Implantable Defibrillators Products Liability Litig.*, No. 05-MD-1708 (D. Minn.); *In re Universal Service Fund Telephone Billing Practices Litig.*, MDL No. 1468 (liaison counsel).

consumer, and oil & gas class actions. He has worked on antitrust and consumer class action cases throughout his career on both defense- and plaintiff-side. Mr. Sharp was recently appointed as one of five co-lead attorneys in the pharmaceutical antitrust and RICO class action, *In re EpiPen Marketing, Sales Practices & Antitrust Litigation*, 17-MDL-2785 (D. Kan.). The firm self-funded its part of the over $10 million war chest necessary to successfully prepare the MDL class case for trial. Mr. Sharp and the attorneys at Sharp Law substantially contributed to all aspects of this litigation from document review and depositions to expert preparation to major briefing to trial preparation. The co-leads successfully obtained over $600 million for the MDL class through settlements with both defendants.

Before founding Sharp Law, Mr. Sharp worked at multiple defense-oriented firms in Houston, Texas and Kansas City, Missouri, where he represented consumers and major companies in class action litigation at all stages including experience as trial and appellate counsel. Having received Board Certification for Civil Trial Law by the National Board of Trial Advocacy, Mr. Sharp sat for the bar in multiple states, passing each time, and was a member of the Kansas Board of Discipline of Attorneys for 20 years. Mr. Sharp's legal experiences beyond the national firms include representing an international beef processing organization as outside counsel and serving as city attorney for a rural Kansas community. Mr. Sharp is a *cum laude* graduate of University of Michigan Law School and received his undergraduate degree in economics with honors and distinction from Stanford University.

Mr. Sharp and his firm have the capability and willingness to devote the necessary resources to see major class actions through to trial and appeal to achieve the best possible result for the class. Of note, partner Ruth Anne French-Hodson currently serves as a co-lead in *In re SoClean, Inc., Marketing, Sales Practices, and Products Liability Litig.*, No 22-mc-152 (W.D. Pa.)

where Ms. French-Hodson is one of two co-lead attorneys directing the strategy and prosecution of the claims.

If appointed to lead the Deere & Company Repair Services MDL, Mr. Sharp and Sharp Law have the resources to both fund and staff the case as either a sole lead or co-lead. The *In re EpiPen* MDL is settled, the invested funds repaid, and the workforce from that case can be deployed here. Mr. Sharp and the Sharp Law team includes multiple attorneys with extensive experience either leading or supporting complex consumer class actions in MDLs. Further, Sharp Law attorneys have practical experience in driving and operating Deere & Company equipment. From partners—such as Rex A. Sharp, Isaac L. Diel, and Ruth Anne French-Hodson—to associates (including Hammons P. Hepner and Leo B. Oppenheimer), many Sharp Law attorneys have first-hand experience within the agriculture industry and grew up in farming communities across the Midwest. *See generally* Stephen R. Bough & Elizabeth Chamblee Burch, *Collected Wisdom on Selecting Leaders and Managing MDLs*, 106 JUDICATURE 70, 72 (2022) (noting that "relevant expertise can likewise lead to cognitive diversity" when selecting MDL leadership as "leaders who share[] experiences with the putative class members, not simply those who had prior MDL or trial expertise" enables attorneys to have "'unique insights on what putative class members might want.'"). Because of this, issues and claims such as these are directly relevant to the experiences by the Sharp Law attorneys as they hear first-hand anecdotes describing the allegations. Mr. Sharp farmed to put himself through college. Sharp Law has the inherent knowledge and know-how of agriculture that can only be learned through many years of intimate involvement within the industry.

Finally, Mr. Sharp and Sharp Law are in the middle of farm country in a suburb of Kansas City crucial to this case: the John Deere Agricultural Marketing Center is in Olathe, Kansas, less

than 20 miles from the Sharp Law office. Even Defendant notes that "certain key witnesses and information reside within John Deere's Agricultural Marketing Center, which is responsible for the ***go-to-market planning for most products at issue in these cases*** and is located near Kansas City." Deere & Company's Consolidated Reply, ECF No. 56, MDL No. 3030, (J.P.M.L. Mar. 29, 2022) (emphasis added). Further, the Olathe, Kansas location is one of two equipment sales and administration offices in the United States and Canada, and "the equipment operations distribute equipment and service parts." *See, e.g.,* Deere & Company, Annual Report (Form 10-K) (Oct. 31, 2021). Sharp Law's headquarters in Prairie Village neighboring the center in Olathe will provide a convenient location for 30(b)(6) and other local witness depositions. Sharp Law's office will also provide a secure and convenient location to review and store Defendant's hard copy documents produced during the litigation.

In addition to Sharp Law's headquarters being near Deere & Co.'s Ag Marketing Center, the nexus of Kansas to the farm implement industry cannot be overlooked. In 2021, the state of Kansas ranked first in number of acres of wheat planted at 7.3 million acres[3] and in 2020 ranked second in number of bushels harvested at over 281 million bushels of wheat.[4] The proximity of Sharp Law to the Agricultural Marketing Center coupled with being in the middle of wheat country highlight the economics and efficiencies Mr. Sharp and Sharp Law will bring to the table.

Mr. Sharp currently represents a class representative in Oklahoma. Mr. Sharp has worked cooperatively with counsel for the proposed slate in the past. Since consolidation, he has informally coordinated with additional counsel. As such, Mr. Sharp and the attorneys at Sharp Law

---

[3] *Wheat*, Agricultural Marketing Resource Center (Feb. 2022), https://www.agmrc.org/commodities-products/grains-oilseeds/wheat.

[4] *Ranking of States that Produce the Most Wheat*, Beef2Live (July 4, 2022), https://beef2live.com/story-ranking-states-produce-wheat-0-210491.

would work well managing other plaintiffs' attorneys as Lead Counsel or can seamlessly coordinate with the group should the Court create a Co-Lead leadership structure in this case. Sharp Law's talents will best be deployed at the Lead or Co-Lead level.

## CONCLUSION

Mr. Rex A. Sharp, Managing Partner of Sharp Law LLP, respectfully requests appointment as Lead and/or Co-Lead Class Counsel in the Deere & Company Repair Services Antitrust Litigation, MDL No. 3030.

Dated: August 10, 2022.   Respectfully submitted,

/s/ *Rex A. Sharp*

Rex A. Sharp
Isaac L. Diel
Greg M. Bentz
Ruth Anne French-Hodson
Hammons P. Hepner
SHARP LAW, LLP
4820 W. 75th St.
Prairie Village, KS 66208
Telephone: (913) 901-0505
Facsimile: (913) 901-0419
rsharp@midwest-law.com
idiel@midwest-law.com
gbentz@midwest-law.com
rafrenchhodson@midwest-law.com
hhepner@midwest-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of August 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all counsel who have registered for receipt of the documents filed in this matter.

/s/*Rex A. Sharp*
Rex A. Sharp