UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| **IN RE: DEERE & COMPANY REPAIR SERVICES ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br> **ALL CASES** | Case No.: 3:22-cv-50188<br>Hon. Iain D. Johnston |

**JOINT PROTOCOL FOR PRODUCTION OF DOCUMENTS AND
ELECTRONICALLY STORED INFORMATION ("PROTOCOL")**

This Protocol will govern how the parties manage electronic discovery in the above-captioned case ("the Action"). The production specifications in this Protocol apply to documents that are produced by any party to this Action.

I.   **GENERAL PROVISIONS**

A.   Nothing in this Protocol shall be construed to affect the admissibility of discoverable information. All objections to the admissibility of any documents are preserved and may be asserted at any time. Pursuant to the terms of this Protocol, information regarding search process and electronically-stored information ("ESI") practices may be disclosed, but compliance with this Protocol does not constitute a waiver, by any party, of any objection to the production of particular ESI for any reason, including as irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any party. For the avoidance of doubt, a party's compliance with this Protocol will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. All parties preserve all such privileges and protections, and all parties reserve the right to object to any such privileges and protections. Furthermore, this Protocol and a party's stipulation thereto shall not constitute a waiver of (a) any jurisdictional defenses that may be available; (b) any affirmative

defenses under Rule 8 of the Federal Rules of Civil Procedure, any defense listed in Rule 12(b) of the Federal Rules of Civil Procedure, or otherwise (including but not limited to any defense based on ineffective service), or (c) any other statutory or common law defenses that may be available to Defendant Deere & Company ("Defendant"). Defendant expressly reserves its rights to raise these and any other defenses available to it.

    B. Each party will designate one or more responsible individuals empowered to speak on the party's behalf on discovery matters and who will (a) be prepared to participate in e-discovery dispute resolution; (b) be knowledgeable about the party's e-discovery efforts; (c) be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and (d) be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

## II. IDENTIFICATION OF RESPONSIVE ESI

    A. **Custodians.** Within 28 calendar days of the date when a party's response and objections to a party's first set of omnibus Requests for Production of Documents served in accordance with Federal Rule of Civil Procedure 34 is due, including any agreed extensions or extensions granted by the Court, the producing party will disclose the individuals they believe in good faith to be most likely to possess ESI and other documents potentially responsive to the requests. Within 14 calendar days of the producing party's disclosure, the parties shall meet and confer on an agreed list of individual document custodians whose email and other ESI will be searched for responsive information in this matter.

1. Additional Custodians: If, after the initial negotiation of custodians described in the preceding paragraph concludes, a requesting party determines that additional custodians should be added, then the requesting party shall advise the producing party in writing of the proposed revisions and the basis for the request(s). If the parties have not agreed whether to adopt the proposed revisions within 21 calendar days of the requesting party's request, then the parties may bring the matter to the Court for resolution. The parties will meet and confer in a good faith effort to resolve the issue before the filing of a motion with the Court, in compliance with Local Rule 37.2. The parties shall raise any such disputed revisions via a motion not to exceed five pages, each for Plaintiffs and Defendant, unless the Court requires the dispute to be presented in a different format.

2. The parties' discussion of custodians does not preclude a party from requesting additional custodians pursuant to the terms of this ESI Protocol, nor does it preclude a party from objecting to any such additional requests.

B. **Date Range.** The parties shall meet and confer in a good faith effort to reach agreement on an appropriate date range for searching potentially responsive ESI. Once the date range has been set by the parties' agreement or in an order of the Court, to the extent that discovery reveals that the appropriate date range for searching potentially responsive ESI should be changed, the parties shall meet and confer further in compliance with Local Rule 37.2 before the matter is brought to the Court.

C. **Sources of ESI.** The following data sources if containing unique potentially responsive ESI shall be preserved and searched to the extent available and in the possession, custody, or control of a party to this matter for each of the custodians identified in Paragraph II.A

above: (1) live and archived email mailbox(es); (2) network-based or cloud system file shares (individual, project, and/or department/group); (3) user-created content on laptop/desktop computer hard drive(s), provided that they are not duplicative of documents contained in network-based file shares; (4) removable media such as CD's, DVD's, and USB or "flash" drives; and (5) mobile data, including text messages, voicemail, contacts, images (i.e., pictures and videos), message histories from any messaging apps (e.g. WhatsApp, WeChat, LINE, Facebook Messenger etc.) and instant messages from any mobile devices used for work-related matters. The parties will conduct a reasonable inquiry to determine if any of its designated custodians has possession, custody, or control of responsive information on any other platform or available from any other source, and if so, shall preserve and search for production in the same manner these additional sources of information.

The parties agree that the following categories of ESI, devices, or systems need not be preserved and/or searched for production and are not discoverable:

1. Deleted, slack, fragmented, or other data only accessible by forensics;
2. Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system;
3. Audit trail metadata, logs, records, or information concerning the history of, access to, and/or activities regarding discoverable electronically stored information;
4. Data related to individuals' Internet access, such as temporary Internet files, proxy logs, history, cache, or cookies;
5. Data in metadata fields that are frequently updated automatically, such as last-opened dates;

6. Backup data that is substantially duplicative of data that is more accessible elsewhere; and

7. Server logs, system logs, or network logs.

In the event a party wishes to discard or destroy data within any category of ESI, devices, or systems containing responsive data on the basis that available data was used or is stored on systems no longer in use and is unintelligible on systems presently in use, the party seeking to discard or destroy data will notify the other parties of that intention and the parties will meet and confer, and if unable to reach resolution, will present the matter via joint motion to the Court.

      D.      **<u>Preservation.</u>**  Each party represents that it has taken reasonable steps to preserve hard copy documents and reasonably accessible ESI related to this Action. These steps include, but are not limited to, providing written notice to the custodians who are under their control.

      E.      **<u>Search Terms.</u>**  Within 28 calendar days of the date when a party's response and objections to another party's Requests for Production of Documents served in accordance with Federal Rule of Civil Procedure 34 is due, including any agreed extensions or extensions granted by the Court, the responding party will disclose the search terms and any other culling/search criteria they intend to apply ("Proposed Search Terms") to filter the sources of ESI for its custodians. If the requesting party objects to the search terms used by the responding party, or would like additional search terms used, it shall inform the responding party of the objection(s) or additional search terms in writing within 14 calendar days of the initial exchange of Proposed Search Terms. The parties will then confer in good faith to reach agreement on any alternative or additional search terms. If the parties cannot reach an agreement, the requesting party may seek relief from the Court. The parties will cooperate in good faith to resolve all matters pertaining to Proposed Search Terms in the initial round of negotiations described in this paragraph.

Nevertheless, if, after the initial negotiation of Proposed Search Terms described in this paragraph concludes, there is good cause for additional Proposed Search Terms to be added, then the requesting party shall advise the producing party in writing of the proposed revisions and the basis for the request(s). If the parties have not agreed whether to adopt the proposed revisions within 21 calendar days of the requesting party's request, then the parties may bring the matter to the Court for resolution. The parties will meet and confer in a good faith effort to resolve the issue before the filing of a motion with the Court, in compliance with Local Rule 37.2. The parties shall raise any such disputed revisions via a motion not to exceed five pages each for Plaintiffs and Defendant, unless the Court requires the dispute to be presented in a different format.

        F.       **<u>Technology-Assisted Review.</u>** No party shall use predictive coding/technology-assisted review for the purpose of culling documents to be produced without notifying the requesting party prior to use and allowing time for the parties to meet and confer in advance of the production of any documents regarding the use, if any, of predictive coding/technology-assisted review.

### III.    PRODUCTION OF HARD COPY DOCUMENTS

        A.       **<u>Format.</u>** Absent objection, hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat). If an original document contains color and the color is not necessary for the reader to understand the meaning of the document or any information presented therein, the document may be produced in black-and-white format. The requesting party may request that the document be produced in color if color is necessary to understand the meaning or content of the document or for any other good faith reason, in which case the parties shall meet and confer as to producing that document in that format or some other reasonably useable format. Multi-page OCR

text for each document should also be provided to the extent such OCR text can be provided or applied in an automated fashion. Each party shall make a good faith attempt to maximize the text quality of the production through use of settings in the OCR software available to that party (or party's vendor).

      B.    **<u>Appearance.</u>** Each document's electronic image shall convey the same information and image as the original document except for Bates numbers, any confidentiality designation(s) consistent with the terms of the Protective Order entered in this matter, and redactions for any privilege or the confidential or private and sensitive identifying information of individuals not parties to this Action. If it is not practicable to include within the electronic files themselves the confidentiality designation, then the producing party shall designate in a transmittal letter or email to the party to whom the materials are produced any portions of the documents that should be so designated. Documents shall appear with any such redactions, revisions, and/or comments visible and printed.

      C.    **<u>Unitization.</u>** If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original file of the producing party or shall be documented in a load file or otherwise electronically tracked.

      D.    **<u>Metadata.</u>** The database load file should contain the following fields: "PRODBEG"; "PRODEND", "PGCOUNT", and "CUSTODIAN."

**IV.    PRODUCTION OF ESI**

      A.    **<u>Format.</u>** Absent objection, the parties will produce ESI in single-page, black-and-white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet type files, source code, audio, and video files, which shall be produced in native format. An ESI document containing color may be produced in black-and-white unless the color is necessary for the reader

to understand the meaning of the document or any information contained therein. If a requesting party in good faith believes that the production of ESI documents or categories of documents in color is necessary for any ESI documents or categories of documents produced in the first instance in black-and-white, the parties shall meet and confer as to the appropriateness regarding the number, types, and format of additional documents to be produced in color, if any. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs will show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages should include the BCC line. Presentation and spreadsheet documents shall be processed with hidden slides and all speaker notes unhidden; presentation documents shall also be processed to show both the slide and the speaker's notes on the TIFF/JPG image.

   B. **<u>Natives.</u>** If a document is produced in native, a single-page Bates stamped image slip sheet stating the document has been produced in native format will also be provided. To the extent that either party believes that specific documents or classes of documents not already identified within this Protocol should be produced in native format, the parties agree to meet and confer in good faith to resolve the request. The producing party shall not unreasonably deny such requests if the requesting party has demonstrated good cause for requesting the ESI in native format.

   C. **<u>Redaction of Native Documents.</u>** If files required to be produced in native format contain both discoverable information and non-discoverable privileged information that would otherwise be redacted for production, the producing party may either apply the redactions directly on the native file itself or produce TIFF image files with burned-in redactions in lieu of a native file and TIFF placeholder image, as follows:

1. A party modifying an original file as provided herein shall in no way remove or alter formatting and contextual information (e.g., headers, column headings, etc.) in creating the modified file for production and must retain a copy of the original, unmodified file in its native format. Documents that are to be produced in a native format but that require redactions shall be produced along with a placeholder TIFF image that is Bates-stamped and bears the redactions.

2. A party producing TIFF images that contain redacted text shall make reasonable efforts to ensure that native files, prior to conversion to TIFF, reveal hidden data from redacted native files and will be formatted so as to be readable (for example, column widths in Excel files should be formatted so that numbers do not appear as "#"). Under these circumstances, all single-page TIFF images shall include row and column headings.

D. **Appearance.** Each document's electronic image shall convey the same information and image as the original document except for Bates numbers, any confidentiality designation(s) consistent with the terms of the Protective Order entered in this matter, and redactions for any privilege or the confidential or private and sensitive identifying information of individuals not parties to this Action. If it is not practicable to include within the electronic files themselves the confidentiality designation, then the producing party shall designate in a transmittal letter or email to the party to whom the materials are produced any portions of the ESI that should be so designated. Documents shall appear with any such redactions, revisions, and/or comments visible and printed. Documents that present imaging or formatting problems shall be promptly identified, and the parties shall meet and confer in an attempt to resolve the problems. Images for data from mobile devices shall also be branded with the custodian's name, device type, and device serial number at the top of each page.

E. **Unitization.** If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original file of the producing party or shall be documented in a load file or otherwise electronically tracked.

F. **Exception Files.** The parties need not produce files that cannot be produced or imaged due to technical difficulties. However, the producing party shall provide the exception reason for exception files in families of responsive documents. Common exception files include, without limitation, corruption, password protection, digital rights management, or proprietary software associated to the file. With respect to any ESI items that are password-protected or encrypted within the scope of review, the producing party will take reasonable steps to disable the protection so that the documents can be reviewed and produced if appropriate. ESI that is likely to be responsive and cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a requesting party, and the parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

G. **De-Duplication.** Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. Parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. No party shall remove near-duplicate documents without the consent of the requesting party and allowing time for the parties to meet and confer in advance. De-duplication will be done across the entire collection (global de-duplication), and the CUSTODIAN field will list the custodian of a document after de-duplication. Any other custodians that are associated with the document (that are excluded due to de-duplication) should be listed in

an "ALL_CUSTODIAN" field. Email thread analysis may be used to reduce the volume of emails reviewed and produced, provided that the produced emails must include all of the responsive information from a thread, including attachments.

H. **Compressed File Types.** Compressed file types (i.e. .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

I. **Metadata.** The parties will produce extracted metadata for each document in the form of an industry standard Concordance .DAT file and include the fields shown in the table below. If specific fields cannot be provided for a particular document because, e.g., the field is unavailable or contains privileged information or the document was scanned from a hard copy, the field(s) may be left blank. For date and time field types, the format shall be provided in the following format in separate fields as specified below: mm/dd/yyyy for dates and hh:mm:ss for time. The parties will produce the following metadata fields:

| Field Name | Description |
|---|---|
| **Common Fields** | |
| PRODBEG | The beginning bates number of the document. |
| PRODEND | The last bates number of the document. |
| PRODBEG_ATTACH | The beginning bates number of the document family. |
| PRODEND_ATTACH | The last bates number of the entire document family |
| CUSTODIAN | Custodian of a document from which the document originated. |
| ALL_CUSTODIAN | All of the custodians of a document from which the document originated, separated by semicolons. |
| FILENAME | Original File Name |
| FILE_SIZE | The file size of a document in kilobytes. |
| FILE_EXTEN | The file extension of the document. |

| Field Name | Description |
|---|---|
| PGCOUNT | The number of single page images associated with the document. |
| MD5HASH | Unique identifier associated with the document or "de-duplication key" assigned to the document. |
| **Non-Mobile Originated** | |
| FROM | The display name and email address of the author of an email/calendar item. |
| TO | The display name and email address of the recipient(s) of an email/calendar item. |
| CC | The display name and email address of the copyee(s) of an email/calendar item. |
| BCC | The display name and email address of the blind copyee(s) of an email/calendar item. |
| EMAIL SUBJECT | The subject line of the email/calendar item. |
| DATE_SENT | The date the email or calendar entry was sent. |
| TIME_SENT | The time the email or calendar entry was sent. |
| TIME_ZONE | The time zone the document was processed in. |
| AUTHOR | The author of the document from extracted metadata. |
| DATE_CREATED | The date the document was created. |
| TIME_CREATED | The time the document was created. |
| DATE_MOD | The date the document was last modified. |
| TIME_MOD | The time the document was last modified. |
| DATE_ACCESSD | The date the document was last accessed. |
| PRINTED_DATE | The date the document was last printed. |

## V.  PRODUCTION FROM DATABASES

If responding to a discovery request requires production of ESI contained in a database, the producing party may comply with the discovery request by querying the database for

discoverable information and generating a report in a reasonably usable and exportable electronic format (for example, in Excel or .csv format).

Responding parties in producing ESI from databases will also produce data dictionaries or other available material used in the ordinary course to identify the meanings of data fields, entries, etc. The parties shall meet and confer to resolve questions regarding transactional data.

## VI. REPRODUCTION OF DOCUMENTS

To the extent any party is required or agrees to re-produce documents in this Action that originally were produced or prepared for production in other cases or government investigations, or by a non-party, such documents may be produced in the same format that they originally were produced or prepared for production, except that the producing party may produce the document with new Bates numbers, revise any confidentiality designation(s) consistent with the terms of the Protective Order entered in this matter, or include redactions for any privilege or the confidential or private and sensitive identifying information of individuals not parties to this Action. Should the requesting party believe there is a good faith basis for previously produced documents to be produced in a format consistent with this Protocol or with additional information not previously produced, the parties shall meet and confer regarding whether a supplemental production containing the additional information is warranted.

## VII. PRODUCTION MEDIA

The producing party may produce documents on CD–ROM, DVD, external hard drive (with standard PC compatible interface), FTP site, or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall be labeled with: (1) the party making the production, (2) text referencing the case caption, (3) the Bates number range of the materials contained on the Production Media,

and (4) any confidentiality designation(s) consistent with the terms of the Protective Order entered in this matter. To maximize the security of information in transit, any Production Media may be encrypted by the producing party. In such cases, the producing party shall transmit the encryption key or password to the requesting party, under separate cover, contemporaneously with sending the encrypted media.

**VIII.  PRIVILEGE LOGS**

A. The parties will prepare and serve privilege logs that satisfy Federal Rule of Civil Procedure 26(b)(5) and that provide information sufficient for the parties to assess claims of privilege adequately. The parties agree to meet and confer regarding the format of privilege logs, and the metadata fields that will be provided as part of privilege logs.

B. The parties do not need to log any of the following categories of withheld documents, subject to the exceptions set forth herein:

1. attorney/client privileged communications and work product regarding this Action (including any actions transferred or otherwise included in these coordinated proceedings in the future) written by, to, between, or on behalf of any of the parties or their representatives or counsel on or after January 12, 2022; and

2. communications, that are by, to, or between any party to this litigation or its counsel, and/or a non-testifying consultant retained for the party in respect to issues in this litigation or in anticipation thereof.

**IV.  GENERAL PROVISIONS**

1. Any practice or procedure set forth herein may be varied by agreement of the parties or Court order.

2. Should any party subsequently determine in good faith that it cannot proceed as required by this Protocol or that the Protocol requires modification, the parties will meet and confer to resolve any dispute at least 14 calendar days before seeking Court intervention unless it would be impracticable to do so.

STIPULATED AND AGREED TO BY:

Dated: November 1, 2022

By:
Adam J. Zapala
Elizabeth T. Castillo
James G. Dallal
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
jdallal@cpmlegal.com

Alexander E. Barnett
**COTCHETT, PITRE & McCARTHY, LLP**
40 Worth Street, Suite 602
New York, NY 10013
Telephone: (212) 201-6820
Facsimile: (917) 398-7753
abarnett@cpmlegal.com

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Kaitlyn L. Dennis
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
kdennis@gustafsongluek.com

Respectfully submitted:

By: *John M, Majoras (with consent)*
John M. Majoras
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, DC 20001
Telephone: (202) 879-3939
jmmajoras@jonesday.com

Tiffany D. Lipscomb-Jackson
**JONES DAY**
325 John H. McConnell Boulevard,
Suite 600
Columbus, OH 43215-2673
Telephone: (614) 281-3876
tdlipscombjackson@jonesday.com

Corey A. Lee
**JONES DAY**
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
calee@jonesday.com

Amanda B. Maslar (6321073)
**JONES DAY**
110 North Wacker, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
amaslar@jonesday.com

*Counsel for Defendant*

*Deere & Company*

Dennis Stewart
**GUSTAFSON GLUEK PLLC**
600 W. Broadway, Suite 3300
San Diego, CA 92101
dstewart@gustafsongluek.com

Kenneth A. Wexler
Justin N. Boley
Tyler J. Story
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Dr., Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
kaw@wbe-llp.com
jnb@wbe-llp.com
tjs@wbe-llp.com

*Interim Co-Lead Counsel for Plaintiffs*


Kathleen C. Chavez, Esq. (6255735)
Robert Foote, Esq. (3124325)
**FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC**
10 W. State Steet, Suite 200
Geneva, IL 60134
kcc@fmcolaw.com
rmf@fmcolaw.com

*Interim Liaison Counsel for Plaintiffs*

Marc C. Gravino (6188531)
**WILLIAMS MCCARTHY LLP**
P.O. Box 219
Rockford, IL 61105
(815) 987-8936
mgravino@wilmac.com

*Interim Local Facilitating Counsel for Plaintiffs*