**EXHIBIT 1**

1994 WL 369147
United States District Court, S.D. New York.

E. & G. GABRIEL, a partnership, Plaintiff,
v.
GABRIEL BROTHERS, INC. f/k/a Gabriel Brothers Discounts, Inc., Arthur Gabriel, Sr., James Gabriel, Gilbert Gabriel, Paul Gabriel, John Gabriel, Arthur Gabriel, II, Ronald Gabriel, Samuel Goldstein, Certified–Fashion Guild, Inc., and Richard and Company, Defendants.

No. 93 CIV. 0894 (PKL).
|
July 13, 1994.

**Attorneys and Law Firms**

McDermott, Will & Emery New York City, Lloyd Constantine, Russell G. Tisman, Yang Chen, of counsel, for plaintiffs.

Howrey & Simon, Washington, DC, Stuart H. Harris, Kenneth A. Gallo, Kimberly D. Reed, of counsel, Leader & Berkon, New York City, James K. Leader, of counsel, for Defendant Gabriel Bros., Inc.

Shea & Gould, New York City, John E. Daniel, of counsel, Silverman, Coopersmith & Frimmer, Philadelphia, PA, Lawrence Silverman, of counsel, for defendant Goldstein.

OPINION AND ORDER

LEISURE, District Judge,

**\*1** This antitrust action arises out the alleged anticompetitive conduct of Gabriel Brothers, Inc., f/k/a Gabriel Brothers Discounts, Inc., following a schism in the Gabriel family business which resulted in the formation of two distinct companies, Gabriel Brothers, Inc. ("Brothers Stores"), and E. & G. Gabriel. Plaintiff E. & G. Gabriel alleges that defendants violated §§ 1 and 2 of the Sherman Antitrust Act, as well as §§ 340–47 of the New York General Business Law, commonly known as the Donnelly Act. Defendants Brothers Stores and Samuel Goldstein[1] move this Court for an order, pursuant to Fed.R.Civ.P. 12(b)(6), dismissing the action for failure to state a claim upon which relief can be granted. For the reasons stated below, defendants' motion is hereby granted.

BACKGROUND

Prior to 1985, Elias Gabriel owned stock and operated a retail department store in Pennsylvania along with his brothers Arthur Gabriel, Sr., and James Gabriel. Amended Complaint at 7. In June of 1985, Elias sold this stock to defendants Arthur, James, and Brothers Stores. *Id.* After selling his shares, Elias established a new retail business with his son Gregory, that being the partnership E. & G. Gabriel ("E. & G."). Since 1985, this retail store has expanded its operation to include five (5) stores in Western Pennsylvania and Ohio. *Id.* at 8. Defendant Brothers Stores also operate a chain of retail stores in this geographic area but not in exactly the same communities as plaintiff. *Id.* at 4. Both chains sell a wide variety of discounted goods, ranging from women and children's clothing to housewares and household items. *Id.* at 4–5.

Shortly after E. & G. was formed in 1985, defendants Brothers Stores, Arthur Gabriel, Sr., James Gabriel, Gilbert Gabriel, Paul Gabriel, John Gabriel, Arthur Gabriel II, Ronald Gabriel ("the Brothers") and the buyer for the Brothers Stores, Samuel Goldstein,[2] allegedly launched a campaign of anticompetitive behavior aimed at damaging plaintiff's business. *Id.* at 8. Plaintiff contends that, through this campaign, defendants intended to eliminate plaintiff's supplies, destroy competition, and monopolize the tri-state market, comprising Eastern Ohio, Southwest Pennsylvania and Eastern West Virginia, for the sale of name-branded deep discounted merchandise ("NBDDM").[3] *Id.* at 10. Plaintiff alleges that in furtherance of this goal, defendants threatened to stop purchasing goods for Brothers Stores unless the suppliers refused to sell to plaintiff. Plaintiff also alleges that in furtherance of their anti-competitive campaign, Brothers Stores, through Goldstein and another buyer, Certified Fashion Guild, Inc.[4], purchased merchandise beyond their needs and agreed to pay prices in excess of the goods' fair market value. This was allegedly done with the motive of driving E. & G. out of the NBDDM market. *Id.* at 8–10. Plaintiff alleges in its amended complaint that these acts resulted in the unlawful restraint of trade in the NBDDM market in the tri-state area. *Id.* at 11. Defendants now move this Court for an order dismissing the action pursuant to Fed.R.Civ.P. 12(b)(6).

DISCUSSION

I. STANDARD FOR A MOTION TO DISMISS

**\*2** Defendants have moved for an order dismissing plaintiff's claim pursuant to Fed.R.Civ.P. 12(b)(6). In deciding defendants' motion, this Court must apply "the familiar standard for review of a Rule 12(b)(6) motion, which requires a court to construe any well-pleaded factual allegations in the complaint in favor of the plaintiff and dismiss the complaint only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Gagliardi v. Village of Pawling,* 18 F.3d 188, 191 (2d Cir.1994) (quoting *Allen v. West–Point–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, (1957))).

"The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 International Brotherhood of Electrical Workers,* 905 F.2d 35, 37 (2d Cir.1990). Thus, a motion to dismiss must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)). "When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991), cert. denied, 503 U.S. 960, 112 S.Ct. 1561 (1992)).

Defendants raise a number of defenses to plaintiff's claims, *inter alia:* (1) plaintiff's failure properly to allege a relevant product market; (2) plaintiff's failure sufficiently to allege anticompetitive behavior attributable to defendants; (3) plaintiff's failure properly to allege facts supporting a dangerous probability of achieving monopoly power.

II. THE AMENDED COMPLAINT FAILS TO ALLEGE A RELEVANT PRODUCT MARKET

Defendants contend that plaintiff has failed properly to allege a relevant product market as required by the Sherman Antitrust Act. Generally, under § 1 and § 2 of the Sherman Antitrust Act, a plaintiff must allege a contract, combination, or conspiracy constituting an unlawful restraint of trade. *See* 15 U.S.C. § 1; *Acquaire v. Canada Dry Bottling Co.,* No. 93–7368, slip op. at 4026 (2d Cir. May 13, 1994). As a prerequisite to any antitrust claim, however, plaintiff "must allege a relevant product market in which the anticompetitive effects of the challenged activity can be assessed." *Re–Alco Industries, Inc. v. National Center for Health Educ., Inc.,* 812 F.Supp. 387, 391 (S.D.N.Y.1993) (quoting *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 29 (1984)). Furthermore, the alleged product market must be theoretically plausible. *See Theatre Party Assocs., Inc. v. Shubert Org., Inc.,* 695 F.Supp. 150, 154 (S.D.N.Y.1988) (complaint dismissed where plaintiff failed to set out a "theoretically rational explanation to support its proposed relevant product market"). Because of these constraints, in the context of Rule 12 motions to dismiss, federal courts "have not hesitated to reject market allegations that make no economic sense." *Id.; see also Shaw v. Rolex Watch, U.S.A., Inc*. 673 F.Supp. 674, 679 (S.D.N.Y.1987) (dismissing claim for failure properly to allege a relevant product market); *Gianna Enterprises v. Miss World (Jersey) Ltd.,* 551 F.Supp. 1348, 1354 (S.D.N.Y.1982) (claim dismissed for failure to explain why market for international beauty pageants excludes state and national beauty pageant).

**\*3** In determining the relevant market, the general rule is that "commodities reasonably interchangeable by consumers for the same purposes make up that 'part of the trade or commerce,' monopolization of which may be illegal." *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 395 (1956); *see Frito–Lay, Inc. v. Bachman Co.,* 659 F.Supp. 1129, 1136 (S.D.N.Y.1986).

Reasonable interchangeability is determined by the following criteria: (1) low cross-elasticity of demand; (2) the impact of price change of one product on the price of the other; (3) the similarity of use or purpose for each product; and, (4) the similarity in clientele for each product. *See Rosen v. Hyundai Group (Korea),* 829 F.Supp. 41, 47 (E.D.N.Y.1993) ("goods are in the same relevant product market if they are reasonably interchangeable for the purposes for which they were produced"); *Frito–Lay, Inc.,* 659 F.Supp at 1136; *Borden v. F.T.C.,* 674 F.2d 498, 507 (6th Cir.1982); *Brown Shoe Co. v. United States,* 370 U.S. 294, 325 (1962) ("The outer boundaries of a product market are determined by the

reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.")

In its amended complaint, plaintiff has not explicitly stated the relevant market forming the basis of its monopoly claim. Plaintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal. *See Re–Alco,* 812 F.Supp. at 391 ("If a complaint fails to allege facts regarding substitute products, to distinguish among apparently comparable products, or to allege other pertinent facts relating to cross-elasticity of demand ... a court may grant a Rule 12(b)(6) motion." (citing *Ford Piano Supply Co. v. Steinway & Sons,* 1987 Trade Cas. (CCH) 67, 828 at 59, 503, 1988 W.L. 3488 (S.D.N.Y.1988))). Nevertheless, for the purposes of this motion, the Court construes plaintiff's references to name-branded deep discounted merchandise as the market allegedly being monopolized, and, accordingly, addresses whether plaintiff's alleged market survives interchangeability analysis.

Applying the interchangeability criteria, the Court finds plaintiff's alleged market to be implausible. Plaintiff's proposed market is comprised of products as varied as household hardwares and children's sleepwear. Hammers are obviously not reasonable substitutes for children's pajamas; they are not used for similar purposes, nor will the price of hammers affect the price of pajamas. Plaintiff's assertion that NBDDM constitutes a cognizable market subject to monopolization is economically nonsensical.

In addition, plaintiff's reliance on *Telsat v. Entertainment and Sports Programming Network,* 753 F.Supp. 109, 112 (S.D.N.Y.1990) (Leisure, J.), is misplaced. Plaintiff would have the Court believe that a market for quality television sports programming comprehends the same extensive variety of noninterchangeable products as "NBDDM." However, in *Telstat,* plaintiff's market was confined by logical parameters such as television programming, as opposed to radio, and sports events, as opposed to other types of entertainment generally. In the instant case, plaintiff's alleged market is not defined by rational parameters, and the products included in NBDDM lack the requisite commonality which distinguishes one market from another.

**\*4** Furthermore, plaintiff's attempt to identify the market as "discount priced items" must fail. Discounted pricing cannot be used as a valid parameter in alleging a relevant product market. *See Brown Shoe Co.,* 370 U.S. at 326. In *Brown Shoe Co.,* the Supreme Court explicitly rejected the contention that a discount priced product can constitute a market distinct from medium priced or high priced products. *See Brown Shoe Co.,* 370 U.S. at 326 ("It would be unrealistic to accept Brown's contention that, for example, men's shoes selling below $8.99 are in a different product market from those selling above $9.00."); *see also United States v. Jos. Schlitz Brewing Co.,* 253 F.Supp. 129, 145–46 (N.D.Cal.), *aff'd per curiam,* 385 U.S. 37 (1966) (finding private label and premium beer are part of same market).

Plaintiff's argument further fails in that plaintiff endeavors to argue that items of the same name-brand, yet priced at a discount, can constitute a separate and distinct market. Plaintiff has not advanced the argument based on a "price/quality" distinction, but rather only based on a price distinction. In marketing the same items, i.e. name-brand items, price alone necessarily cannot serve as a logical parameter of a market. Because price affects demand within the market for name-brand goods, it cannot define a market for those same goods.

Plaintiff's failure to allege a plausible product market is fatal to its claim. Without an appropriate product market, "it is impossible for a court to assess the anticompetitive effect of challenged practices." *Re–Alco,* 812 F.Supp. at 392 (citing *Gianna Enterprises,* 551 F.Supp. at 1354).

**II. PLAINTIFF'S § 1 CLAIM OF CONSPIRACY AGAINST DEFENDANT GOLDSTEIN**

Defendant Goldstein also challenges plaintiff's § 1 claim on grounds additional to those asserted by defendant Brothers Stores. Goldstein contends that plaintiff's allegation of a conspiracy fails, because the acts of defendant Brothers Stores and Goldstein are well within the bounds of standard business practice. Having concluded that plaintiff's § 1 claim against defendant Goldstein is dismissed for the reasons set forth above, i.e., because of its failure to allege properly a relevant product market, the Court need not and, accordingly, does not reach the issue raised by Goldstein herein.

**III. PLAINTIFF'S § 2 CLAIM OF ATTEMPTED MONOPOLIZATION**

In addition to dismissing plaintiff's § 2 claim for failure to allege a relevant product market, plaintiff's § 2 claim must also be dismissed for the reasons set forth below.[5] The basic elements of a claim of attempted monopolization under § 2 are as follows: (1) predatory or anticompetitive conduct; (2)

specific intent to monopolize; and (3) dangerous probability of successful monopolization. *See Spectrum Sports, Inc. v. McQuillan,* 113 S.Ct. 884, 890–91 (1993); *Volvo North America Corp. v. International Professional Tennis Council,* 857 F.2d 55, 73 (2d Cir.1988).

**\*5** In its amended complaint, plaintiff has not sufficiently alleged a dangerous probability that monopolization will succeed. Plaintiff alleges only that the "intentional and unlawful conduct of defendants ... have a dangerous probability of achieving monopoly power." Amended Complaint at 12. The verbatim recitation of statutory language cannot save a patently deficient claim. *See Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972) ("A complaint cannot escape the charge that it is entirely conclusory in nature, merely by quoting ... words from the statute[ ]").

Under appropriate circumstances, the Second Circuit has been willing to infer a dangerous probability of success when the first two elements of a § 2 claim, coupled with monopoly power, have been shown. *See Volvo N. Amer,* 857 F.2d at 73–74; *but see International Distribution Centers, Inc. v. Walsh Trucking Co.,* 812 F.2d 786 (2d Cir.1987) (adhering to the traditional rule "that an action under section 2 of the Sherman Act for attempting to monopolize a market will lie only where there is anticompetitive conduct, a specific intent to monopolize *and* a dangerous probability that monopoly will be achieved") (emphasis added). [6] Even assuming, *arguendo,* this Court were willing to infer the third element, the insufficiency of plaintiff's allegations obviates this possibility. Plaintiff has not adequately alleged the first two elements nor has it alleged either an estimated share of the market, or any other facts in support of a claim of monopoly power. Therefore, the Court could not infer a dangerous probability of successful monopolization.

Plaintiff's failure to allege sufficiently this element flows directly and necessarily from its failure to allege a relevant product market. It is axiomatic that, without first delineating a relevant market with minimal specificity, one cannot allege monopolization of this market. Therefore, in addition to the reasons stated above, plaintiff's § 2 claim should be dismissed for failure to allege a dangerous probability of success.

Having dismissed on the grounds discussed above, the Court need not reach the issue of the anticompetitive acts alleged. However, the Court is doubtful that plaintiff will ever be able to allege sufficient facts to support its antitrust claims, in that plaintiff's amended complaint contains myriad conclusory assertions with few factual allegations to support them. Although no special pleading is required in antitrust cases, *Three Crown Ltd. Partnership v. Caxton Corp.,* 817 F.Supp. 1033, 1047 (S.D.N.Y.1993), "conclusory allegations which merely recite the litany of antitrust will not suffice." *John's Insulation, Inc. v. Siska Constr. Co.,* 774 F.Supp. 156, 163 (S.D.N.Y.1991). Even construing plaintiff's allegations liberally, this Court is skeptical that plaintiff will be able to satisfy the *de minimis* level of specificity this Court may demand "before allowing a potentially massive factual controversy to proceed." *John's Insulation,* 774 F.Supp. at 163 (citing *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 528 n. 17 (1983)).

IV. PENDENT STATE CLAIMS

**\*6** In addition to alleging federal claims under 15 U.S.C. § 1, § 2, plaintiff also asserts state law claims. Where a court has jurisdiction over one or more aspects of a case, it may properly assert jurisdiction over any other aspects of the case that share a common nucleus of operative facts. *See United Mine Workers v. Gibbs,* 383 U.S. 715 (1966); *Roco Carriers, Ltd. v. M/V Nurnberg Express,* 899 F.2d 1292 (2d Cir.1990). Although the exercise of pendent jurisdiction is a matter of the district court's discretion, once a court dismisses all federal claims, "the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Morse v. University of Vermont,* 973 F.2d 122, 127 (2d Cir.1992) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)). Therefore, in exercising its discretion, this Court dismisses plaintiff's state law claims. [7]

CONCLUSION

For the reasons stated above, this Court grants defendants' motion in its entirety.

SO ORDERED.

[1] Defendants Brothers' Stores and Goldstein's motions raise similar arguments, the most notable exception being that Goldstein moves for an order dismissing plaintiffs' claims *with prejudice*. Where parties' arguments overlap, the Court will address the defendants collectively; where arguments

| | |
|---|---|
| 2 | Goldstein is named only in E. & G.'s Sherman Act § 1 claim. |
| 3 | Although plaintiff has not explicitly identified the specific market allegedly monopolized, this Court construes plaintiff's references to name-branded deep discounted merchandise as the proposed market. |
| 4 | Although only Brothers Stores and Goldstein have moved to dismiss, this opinion applies with equal force and effect to the remaining defendants, Certified Fashion Guild, Inc. and Richard and Company, under res judicata or law of the case doctrines. *See Arizona v. California,* 460 U.S. 605, 618–19 (1983). |
| 5 | As previously indicated in footnote 2, *supra,* the § 2 claim asserted by plaintiff does not apply to defendant Goldstein. |
| 6 | In *International Distribution,* the Second Circuit offered several criteria by which dangerous probability may be determined: the strength of the competition, the probable development of the industry, the barriers to entry, the nature of the anticompetitive conduct and the elasticity of demand. *See International Distribution Center,* 812 F.2d at 792. Because plaintiff has failed to allege adequately a relevant product market, it is impractical, if not impossible, for this Court to apply these criteria to determine dangerous probability of defendants' success. |
| 7 | The Court notes that, dismissal of plaintiff's Donnelly Act claim is appropriate on the same grounds as dismissal of the federal antitrust claims. The Donnelly Act has been construed as a "Little Sherman Act", and thus, failure to allege a relevant product market is fatal to its claim. *See International Television Productions Ltd. v. Television Div. of Twentieth Century–Fox Film Corp.,* 622 F.Supp. 1532, 1540 (S.D.N.Y.1985). Furthermore, under the Donnelly Act, a plaintiff must allege an impact on trade *in New York. See International Television Prods. Ltd.,* 622 F.Supp. at 1540 (citing *Baker v. Walter Reade Theatres, Inc.,* 37 Misc.2d 172, 237 N.Y.S.2d 795, 796 (1962)). While plaintiff alleges acts committed in New York, it alleges no impact in New York as a result of these acts. |

**All Citations**

Not Reported in F.Supp., 1994 WL 369147, 1994-1 Trade Cases P 70,650

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works. 5