# APPENDIX A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| IN RE: DEERE & COMPANY REPAIR SERVICES ANTITRUST LITIGATION | Case No.: 3:22-cv-50188<br>MDL No. 3030<br><br>Hon. Iain D. Johnston |

**APPENDIX OF PARTIES' POSITIONS
ON DISPUTES IN JOINT RULE 26(F) REPORT**

**PLAINTIFFS' POSITION**

**Dispute No. 1: Bifurcation of Class and Merits Expert Reports (§§ A, E)**

**Plaintiffs' Proposed Language:** Please refer to Plaintiffs' proposed schedule set forth in Section A of the Joint 26(f) Report, which is also set forth in greater detail in Section E thereof.

**Plaintiffs' Explanation:** Plaintiffs propose one round of expert reports for both class certification and merits. Plaintiffs' proposal is based on modern best practices from many recent antitrust class actions and is intended to streamline this case. Given the single fact discovery period for all issues (including class certification and merits) and the single expert discovery period for all issues (including class certification and merits), followed by *Daubert* briefing and then class certification briefing, there is no need for two, separate rounds of expert reports. Combining class and merits expert reports can be highly effective—plaintiffs' counsel, including Co-Lead Counsel here, have successfully litigated multiple prior complex antitrust class actions in various federal courts with schedules similar to what Plaintiffs propose, often with the agreement of the defendant(s).[1]

Plaintiffs' proposal also promotes efficiency and eliminates redundancy in two ways. First, Plaintiffs' schedule avoids two rounds of enormously expensive and largely redundant expert reports—one for class certification and another for merits. Second, as class briefing begins after the fact and expert record has closed, the class briefs will be far more comprehensive and enlightening to the Court because both sides will be working from the same factual and expert record for their respective class briefs. It is for this reason that all parties—plaintiffs and defendants—typically prefer schedules like the one Plaintiffs propose here.

Given the frequent overlap between class certification and merits inquiries, bifurcating class and merits expert reports is fraught with difficult line-drawing and may lead to duplicative expert reports and wasted resources. As the Manual for Complex Litigation (Fourth) observes:

---

[1] *See, e.g.*, Scheduling Order, *In re Telescopes Antitrust Litig.*, No. 5:20-cv-03639-EJD (N.D. Cal. Sept. 30, 2022), ECF No. 276; Case Management Order, *In re Geisinger Health and Evangelical Cty. Hosp. Healthcare Workers Antitrust Litig.*, No. 4:21-cv-00196-MWB (Feb. 7, 2022), ECF No. 80; Case Management Order No. 1, *In re: Broiler Chicken Grower Antitrust Litig.*, No. 6:17-cv-00033-RJS-SPS (E.D. Okla. Apr. 13, 2020), ECF No. 312; Stipulated Order Regarding Amended Case Schedule As Modified, *Simon and Simon, PC, et al. v. Align Tech., Inc.*, No. 3:20-cv-03754-VC (N.D. Cal. May 18, 2021), ECF No. 106; Further Amended Scheduling Order, *In re Lipitor Antitrust Litig.*, No. 3:12-cv-02389-PGS-DEA (D.N.J. Oct. 1, 2019), ECF No. 899; Corrected Seventh Amended Scheduling Order, *In re: Niaspan Antitrust Litig.*, No. 13-MD-2460 (E.D. Pa. Nov. 16, 2018), ECF No. 570; Scheduling Order at 1, *In re Dental Supplies Antitrust Litig.*, No. 16-cv-696 (BMC)(GRB) (E.D.N.Y. April 10, 2017), ECF No. 177; Discovery Plan and Scheduling Order at 1, *Le, et al., v. Zuffa, LLC*, No. 2-15-cv-01045-RFB-(PAL) (D. Nev. Oct. 14, 2016), ECF No. 311; Scheduling Order, *Fusion Elite All Stars, et al., v. Varsity Brands, LLC, et al.*, No. 2:20-cv-02600-SHL-cgc (W.D. Tenn. Oc. 15, 2020), ECF No. 61; Scheduling Order Regarding Discovery and Briefing on Motion for Class Certification, *In re Domestic Airline Travel Antitrust Litig.*, No. 1:15-mc-01404-CKK (D.D.C. Jan. 30, 2017), ECF No. 152; Stipulated Amended Scheduling Order Regarding Discovery and Summary Judgment, *In re Domestic Airline Travel Antitrust Litig.*, No. 1:15-mc-01404-CKK (D.D.C. Sept. 24, 2018), ECF No. 290; Order on Discovery Plan, *Precision Assocs., Inc., et al. v. Panalpina World Transp. (Hldg.) Ltd., et al.*, No. 1:08-cv-00042-JG-VVP (E.D.N.Y. Dec. 17, 2013), ECF No. 977.

> Generally, discovery into certification issues pertains to the requirements of Rule 23 and tests whether the claims and defenses are susceptible to class-wide proof; discovery into the merits pertains to the strength or weaknesses of the claims or defenses and tests whether they are likely to succeed. There is not always a bright line between the two. Courts have recognized that information about the nature of the claims on the merits and the proof that they require is important to deciding certification.

Manual for Complex Litigation (Fourth) § 21.14 at 256 (2004).

Moreover, bifurcating class and merits expert reports will cause delay and inefficiency by extending the case schedule by at least 240 days under Defendant's proposal (*i.e.*, an additional 120 days the fully brief the second round of expert reports plus an additional 120 days to fully brief any *Daubert* motions related thereto), which does not even account for a potential hearing or time for the Court to rule. When all is said and done, Defendant's proposal will likely add a year to the case schedule proposed by Plaintiffs.

To the extent Deere argues that bifurcation is necessary because their rebuttal class certification expert report will look materially different from their rebuttal merits expert report, Plaintiffs respond that they do not have the benefit of any of Deere's data or documents at this point to arrive at the same conclusion. Plaintiffs' proposal therefore mirrors what courts have ordered in similar cases and is meant to simplify expert discovery and reports for the Court and both sides.

## JOHN DEERE'S POSITION

**Dispute No. 1: Sequencing Expert Discovery**
- **Plaintiffs' Proposal:** complete expert discovery on both class certification and merits issues before proceeding to class certification briefing
- **Defendant's Proposal**: To allow for class certification to be decided as "early [as] practicable," Fed. R. Civ. P. 23(c)(1)(A), one week after the close of fact discovery, the parties will begin class certification expert discovery, including any motions to exclude experts, then brief the motion for class certification. Once class certification has been decided, if the case continues, the parties will then engage in expert discovery regarding merits issues.

John Deere proposes sequencing expert discovery in a manner that allows a decision on class certification as soon as practicable, without sacrificing efficiency or wasting judicial and party resources. Focusing on the limited experts that are relevant to class certification will allow the parties to complete that discovery more quickly than if the parties must focus on both class certification and merits experts, which is likely to involve many more reports and depositions—indeed, Plaintiffs have identified seven different categories of experts that might be used in this matter, only a limited number of which could have any relevance to class certification. John Deere's proposal is consistent with Rule 23(c)(1)(A)'s directive and is a common approach to expert discovery in antitrust multidistrict litigations. *See In re: Local TV Advertising Antitrust Litigation*, Case No. 1:18-cv-06785 (N.D. Ill.), Dkt. 218 at 3-4 (sequencing class certification and merits expert discovery); *In re: Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637 (N.D. Ill.), Dkt. 388 at 3-5 (same), *In re: National Football Leagues "Sunday Ticket" Antitrust Litigation*, Case No. 2:15-ml-02668 (C.D. Cal.), Dkt. 294 at 2 (same).

Such an approach also makes sense from an efficiency and resource management perspective. Very often, if an antitrust class action is not certified, the case will not proceed. By not engaging in merits expert discovery prior to class certification, the parties will not expend resources that may never need to be expended. This is not a trivial amount—expert expenses often range in the hundreds of thousands of dollars per expert, not including related legal expenses. Nor is having different experts for different phases hypothetical—John Deere's current plan is to have one class certification expert and different, perhaps multiple, merits experts.

Even if the case were to proceed as individual actions in the event class certification is denied, the expert reports and analysis for the liability and damages issues will necessarily be different for individual plaintiffs than what would be submitted if the class were certified. The class certification decision will inform what work, if any, will be done by merits and damages experts.

John Deere's proposal is not bifurcation, which can often involve inefficient duplication of deponents and other discovery. To be certain, if individual cases were to proceed in response to the class not being certified, discovery may need to be taken of the newly named plaintiffs. But the existing discovery will still be usable. And if the class were certified, discovery will be closed with only expert reports on merits and damages issues remaining.

3

Plaintiffs propose engaging in class certification and merits expert discovery at the same time, followed by class certification briefing. For the reasons already stated, this is inefficient. It will also unnecessarily delay resolution of class certification. Under Plaintiffs' plan, expert discovery would not begin until one month after fact discovery closes. This is presumably because Plaintiffs believe they need this time to finalize numerous experts' reports—regardless of whether that is accurate, it must be the case that less time would be needed to finalize just class certification reports, allowing for faster resolution of certification if expert discovery is sequenced.

Plaintiffs' plan is also unworkable. Plaintiffs' proposed schedule allows just 45 days between the disclosure of all of their expert reports and John Deere's rebuttal reports. If expert discovery is focused on class certification experts, that can be done as, typically, there are only 1 or 2 experts per side. But if all experts are included, it is not possible for John Deere to identify rebuttal experts, retain them, and respond to Plaintiffs' entire slate of proposed experts in only 45 days. Inevitably, this will further delay class certification briefing, which is prejudicial to John Deere.

If merits and damages expert discovery is completed prior to the class certification decision, those efforts may be completely wasted if the class were not certified and the case did not proceed, or would need to be completely re-done if the case were to proceed with individual plaintiffs (who may not even be represented solely by current class counsel). A natural sequencing of expert work to allow for those possible results allows for a timely and efficient process, just as the Federal Rules have always contemplated with resolution of the class certification question as early as possible.

4

## PLAINTIFFS' POSITION

**DISPUTE NO. 2: LIMIT ON REQUESTS FOR ADMISSION (§ D(2)(c))**

**Plaintiffs' Proposed Language:** "With respect to requests for admission not pertaining to the evidentiary issues addressed in the prior paragraph, all parties must endeavor to coordinate to ensure that any such requests do not cause unnecessary duplication. With respect to such non-evidentiary issues: consistent with Fed. R. Civ. P. 36, there shall be no limits on the number of requests for admissions the parties may serve."

**Plaintiffs' Explanation:** There should be no limit on the number of RFAs. Neither the Federal Rules of Civil Procedure ("Rules") nor this District's Local Rules impose such a limit. Rule 36, which governs RFAs, allows parties to narrow the facts and issues by soliciting admissions or denials in the form of requests to admit. Fed. R. Civ. P. 36. RFAs are "discovery tools which aid the court and the parties by limiting and refining the claims that will be asserted at trial .... [T]hey are generally quite important in resolving issues ... [and n]o presumptive limit has ever been set on the number of requests a party can propound." *Escobedo v. Ram Shirdi Inc.*, No. 10 C 6598, 2011 WL 13243990, at *2 (N.D. Ill. Mar. 16, 2011).

Whether the number of RFAs served in a particular case is appropriate depends upon the "complexity of the case" and whether the propounding party is "truly seeking admissions" or is instead "seeking to circumvent the Federal Rules regarding discovery." *Bonner v. O'Toole*, No. 12 C 981, 2012 WL 6591720, at *4 (N.D. Ill. Dec. 18, 2012) (internal quotation marks omitted). A court should be reasonably certain of the existence of discovery abuse before it limits the number or scope of requests for admission regarding any matter otherwise discoverable. *Escobedo*, 2011 WL 13243990, at *2.

Here, Plaintiffs propose no limit on the number of RFAs for both sides given that this is a complex, antitrust class action. Plaintiffs intend on serving RFAs tailored in manner and scope to limit the need for extensive discovery and to narrow the issues at trial. Agreeing to a limit on the number of RFAs at this early stage of the case—before Deere has produced a single document to Plaintiffs—would require extensive speculation by Plaintiffs and be inappropriate.

To the extent Deere argues that Plaintiffs may serve an excessive number of RFAs, Plaintiffs respond that the appropriate manner to assert an objection regarding an alleged excessive number of RFAs is by filing a motion for a protective order before the RFAs are due to be answered. *See, e.g.*, *Tamas v. Family Video Movie Club, Inc.*, 301 F.R.D. 346, 346-48 (N.D. Ill. 2014) (granting plaintiffs' motion for a protective order to excuse them from answering the 29,440 RFAs issued by defendant).

Relatedly, to the extent Deere argues that an excessive number of RFAs may impose undue burden, Plaintiffs respond that while RFAs are discovery tools, explanations of answers are not required. *See, e.g.*, *United Coal Co. v. Powell Cost. Co.*, 839 F.2d 958, 967 (3d Cir. 1988). Rule 36 only provides a limited number of possible responses for the responding party: (1) object to the RFA as improper; (2) admit the matter; (3) deny the matter; or (4) state in detail why it cannot truthfully admit or deny. *Buchanan v. Chicago Transit Auth.*, No. 16-CV-4577, 2016 WL 7116591, at *3 (N.D. Ill. Dec. 7, 2016). Thus, when a party denies a request, it need only state "deny"—no further explanation is needed. For all these reasons, a limit on the number of RFAs is unwarranted at this stage.

5

## JOHN DEERE'S POSITION

**Dispute No. 2: Non-Evidentiary Requests for Admissions**
- **Plaintiffs' Proposal**: no limit to the number of requests for admissions the parties may serve
- **Defendant's Proposal**: As contemplated by this Court's model Rule 26(f) report, Defendant proposes a cap on requests for admissions. Plaintiffs can jointly serve 50 requests for admission on Defendant, and Defendant can serve 50 requests for admissions on each Named Plaintiff.

Imposing limits on requests for admission is common in antitrust cases like this one. *See In re: Optical Disk Drive Products Antitrust Litigation*, Case No. 3:10-md-02143 (N.D. Cal.), Dkt. 606 at 4 (providing for service of 25 requests for admission by each party); *Pet Food Express Ltd. v. Royal Canin USA Inc.*, Case No. 3:09-cv-01483 (N.D. Cal.), Dkt. 73 at 6 (providing for service of 25 requests for admission by each side). John Deere's proposal of 50 requests for admissions is both reasonable and proportional given the number of parties and issues in this case. It strikes the proper balance between utilizing requests for admissions to narrow the scope of the case and the issues in dispute between the parties while still avoiding the extreme burden and cost imposed if the parties are required to respond to an unlimited number of requests for admissions. Should this amount prove insufficient, both parties have reserved their respective rights to seek additional discovery beyond the limits proposed for good cause shown, so there is no prejudice to Plaintiffs in setting an initial limit.

**PLAINTIFFS' POSITION**

**DISPUTE NO. 3: NUMBER OF DEPOSITIONS OF DEERE (§ D(3)(a))**

**Plaintiffs' Proposed Language:** "Plaintiffs, collectively, may take no more than 40 Rule 30(b)(1) depositions of no more than 7 hours each. . . . Plaintiffs may take one Rule 30(b)(6) deposition of no more than 28 hours of Defendant, regardless of the number of designees identified to testify."

**Plaintiffs' Explanation:** Plaintiffs believe the limit on Rule 30(b)(1) depositions should be enlarged given the size of Deere's organization (*i.e.*, Deere had 70,000 employees as of 2021[2]) and the technical complexity of the issues in this case. Plaintiffs initially proposed establishing a limit on depositions *after* conducting initial discovery on Deere's organizational structure and departmental responsibilities as they relate to the issues raised in this case.

Deere insisted the parties add 30(b)(1) and 30(b)(6) deposition limits to the 26(f) Report pursuant to the Court's Proposed Case Management Order template. Plaintiffs explained that they could only agree to (a) high limits given the absence of discovery from Deere at this time or (b) specific limits if Deere provided organizational charts and/or a list of all potentially relevant job titles as part of the parties' 26(f) conference. Indeed, Plaintiffs provided a list of 23 discovery topics to facilitate Deere's identification of relevant custodians (*see* 26(f) Report § D).

Deere has neither provided any organizational charts nor a list of potentially relevant job titles to date. Instead, Deere proposed *five* custodians. Not only is this less than the 10 to 15 custodians Deere previously represented to the Court,[3] this is also a significantly lower number than the additional 12 potential custodians that Plaintiffs were able to identify who have made public statements on Deere's behalf regarding the right to repair.

Plaintiffs shared the names of these 12 custodians with Deere during negotiations regarding deposition limits. Deere responded by stating that individuals such as Julian Sanchez, Deere's Director of Emerging Technology, and Jahmy Hindman, Deere's Chief Technology Officer, would not have information relevant to this lawsuit.[4] Messrs. Sanchez and Hindman are, in fact, both centrally featured on Deere's website representing the company perspective on right to repair and have both been cited in multiple publications discussing issues relevant to this case.[5] This fact is

---

[2] "Number of employees of John Deere (Deere & Company) from 2002 to 2021," STATISTA 2022, available at https://www.statista.com/statistics/278010/john-deere-number-of-employees-since-2002/ (last visited Dec. 23, 2022).

[3] Tr. of Proceedings 23:3-6 (Sept. 8, 2022) ("MR. LEE: So number of custodians, I think we would probably put that in the ten to fifteen range based on our understanding of who is likely to have unique, relevant information.").

[4] Specifically, Deere alleged, "The Emerging Technology group focuses on researching, developing, and supporting the deployment of Deere's next generation technologies. We do not believe that he would have information relevant to this lawsuit."

[5] *See*, *e.g.*, *Self-Repair Made Easy*, JOHN DEERE, https://www.deere.com/en/our-company/news-and-announcements/newsroom/repair/ (last visited Dec. 23, 2022); Nilay Patel, *John Deere turned tractors into computers – what's next? CTO Jahmy Hindman on farming, data, and right to repair*, THE VERGE (June 16, 2021), https://www.theverge.com/22533735/john-deere-cto-hindman-decoder-interview-right-to-repair-tractors (last visited Dec. 23, 2022); *A Conversation on Right to Repair with Julian Sanchez, Director of Emerging Technology,* JOHN DEERE, https://www.deere.com/en/stories/featured/conversation-on-right-to-repair/ (last visited Dec. 23, 2022).

apparent through a simple Google search or from a cursory glance at Deere's website. Aside from the 12 custodians that Plaintiffs identified who are, or were, in public-facing roles, there are likely many more potential custodians who may have relevant information but who Deere has decided not to identify as part of negotiations on deposition limits.

Deere has not given Plaintiffs sufficient information to contextualize Deere's five custodians, such as organizational charts or a list of all potentially relevant job titles. Furthermore, Deere could not confirm whether its identified five custodians had or has final decision-making authority in their departments (*i.e.*, only that they were "leaders of their respective *groups*" (emphasis added)) or even whether they held these positions for the entire class period, let alone during the relevant pre-class period.[6] Plaintiffs cannot simply take Deere at its word here.[7] The insufficient information provided by Deere means that Plaintiffs cannot agree to a specific 30(b)(1) deposition limit at this time, though the number of depositions per defendant in antitrust cases often exceeds 15.[8] If the Court wishes to set a 30(b)(1) deposition limit now, Plaintiffs suggest up to 40 given Deere's size and potential complexities of this litigation.

Regarding the 30(b)(6) deposition of Deere, Plaintiffs propose up to 28 hours, or the equivalent of four depositions, given the number and scope of potentially relevant topics identified by Plaintiffs (*see* 26(f) Report § D). This is not an unprecedented length of time.[9] Plaintiffs could depose a Deere's 30(b)(6) witness(es) for seven hours a day over a maximum of four consecutive days to mitigate the costs and inconveniences. Deere's proposal of seven hours of 30(b)(6) deposition testimony is inadequate. As a point of reference, that is the same amount of 30(b)(6) deposition time that Deere has for each of the named corporate Plaintiffs here, most of which have employees that number in the single digits and the largest of which has 15 employees total.

---

[6] *See* Tr. of Proceedings 23:20-24:7 (Sept. 8, 2022) ("MR ZAPALA: […] We are obviously limited to damages for the four-year period, but I do think there is relevant information that we will want from Deere that certainly predates 2018. So in our view, the class period for damages purposes doesn't necessarily cabin the time period for the discovery that we are going to need. THE COURT: That's fair."

[7] This is consistent with the Court's statements: "THE COURT: I'm not just going to take attorneys' say-so on what they think is proportionate. I need facts and affidavits; I need declarations; I need documents; I need org charts, those kind of things, work flow, before I can start determining what proportionality is, okay? So that's kind of what that framework is." Tr. of Proceedings 30:8-15 (Sept. 8, 2022).

[8] *See, e.g.*, Pretrial Scheduling Order, *In re Cattle and Beef Antitrust Litig.*, No. 0:20-cv-01319 (June 22, 2022), ECF No. 571 (up to 20 fact witnesses per defendant group plus a maximum of 28 hours to be allocated for additional Rule 30(b)(1) depositions); Deposition Protocol Order, *In re Auto. Parts Antitrust Litig. (In re Wire Harness Cases)*, Master File No. 12-md-02311, No. 2:12-cv-00100 (June 30, 2015), ECF No. 315 (up to 15 fact witnesses per defendant group); Case Management Order at ¶ (e)(v), *In re Optical Disk Drive (ODD) Antitrust Litig.*, No. 3:10-md-02143 (N.D. Cal. Jul. 17, 2012), ECF No. 606 (same); Amendment No. 1 to Discovery Plan at ¶ 2, *In Dynamic Random Access Memory Antitrust Litig.*, No. 4:02-md-01486 (Mar. 8, 2006), ECF No. 731 (same).

[9] *See, e.g.*, Case Management Order at ¶ (e)(v), *ODD* (July 17, 2012), ECF No. 606 (ordering five 30(b)(6) depositions, which corresponds to 35 hours of deposition testimony, per defendant group).

## JOHN DEERE'S POSITION

**Dispute No. 3: Limits for Rule 30(b)(1) and Rule 30(b)(6) Depositions of John Deere**
- **Plaintiffs' Proposal**: Plaintiffs can take no more than 40 Rule 30(b)(1) depositions of no more than 7 hours each. Plaintiffs may take one Rule 30(b)(6) deposition of no more than 28 hours of Defendant, regardless of the number of designees identified to testify.
- **Defendant's Proposal:** Plaintiffs can take no more than 10 Rule 30(b)(1) depositions and one Rule 30(b)(6) deposition of no more than 7 hours each. Plaintiffs may take one Rule 30(b)(6) deposition of no more than 7 hours of Defendant, regardless of the number of designees identified to testify.

John Deere's proposal of ten Rule 30(b)(1) depositions provides Plaintiffs an adequate number of depositions and aligns with limits imposed by Courts for depositions of defendants in other antitrust cases. *In re: Resistors Antitrust Litigation*, No. 3:15-cv-03820 (N.D. Cal.), Dkt. 308 at 1 (providing that plaintiffs may take no more than 10 fact witness depositions *per defendant corporate family*, "which is an outer limit and not an expectation of 10 depositions for every family") (emphasis added); *Edwards v. National Milk Producers Federation et al.*, Case No. 4:11-cv-04766 (N.D. Cal.), Dkt. 145, at 8 (providing that plaintiffs may notice up to 10 depositions *for each defendant* and may allocate those depositions among fact and/or Rule 30(b)(6) witnesses) (emphasis added). Furthermore, both parties have reserved their respective rights to seek additional depositions beyond the limits proposed for good cause shown, meaning that Plaintiffs will be able to seek additional depositions should they establish through fact discovery that additional depositions are needed.

Plaintiffs' proposal to take forty Rule 30(b)(1) depositions is unreasonable. During negotiations, Plaintiffs initially proposed taking twenty Rule 30(b)(1) depositions and claimed that they did not yet know the number of document custodians and, accordingly, that they needed to propose more depositions than what would ultimately be necessary to ensure they were not limiting themselves. The parties then made an initial exchange of information regarding potential custodians based on the discovery topics identified in the Rule 26(f) report. For John Deere, this included identifying five key individuals likely to have responsive information along with their job titles, and explaining why certain individuals identified by Plaintiffs are unlikely to have documents relevant to the issues in this case. With additional information in hand, Plaintiffs *increased* the number of Rule 30(b)(1) depositions they are requesting from 20 to 40 depositions and claim they still do not have enough information to estimate how many depositions they will need.

Plaintiffs' rational for proposing additional depositions is wrong thrice over. First, there is no reason to assume that John Deere will ultimately have anywhere near 40 document custodians, especially in light of the discovery topics Plaintiffs have identified. As John Deere has told Plaintiffs, the core group of individuals who have the information relevant to this action is five; there may be some additional custodians to add depending on the precise discovery requests served. But it is highly unlikely that the number of custodians will come anywhere close to 40.

Second, even if John Deere has a large number of custodians, there is no reason to assume that every document custodian, or even most document custodians, needs to be deposed.

Third, and most importantly, Plaintiffs' approach asks the Court to order discovery to cover the outer bounds of what *might* be needed, the opposite of the conservative approach to discovery that proportionality requires. *See McDaniel v. Loyola Univ. Med. Ctr.*, No. 13 CV 6500, 2016 WL 11734769, at *4 (N.D. Ill. Mar. 21, 2016) ("The purpose of the limitation in Rule 30 is to force counsel to think long and hard about who they want to depose and courts should not freely grant relief from the limits without a showing of need."); accord *PeopleFlo Mfg., Inc. v. Sundyne, LLC*, No. 20 CV 3642, 2022 WL 1062706, at *2-3 (N.D. Ill. Apr. 8, 2022) (denying motion for leave to take 19 depositions because the party seeking the depositions did not "make a particularized showing for the need for such depositions" and had only taken one deposition at the time of the request) ("It is therefore quite plausible to this court that once [plaintiff] begins taking depositions in earnest, it will find that it needs far fewer than the 19 now sought. . . . The court therefore cannot conclude that the benefits of [plaintiff's] request outweigh the corresponding burden and expense.").

In addition to the 40 Rule 30(b)(1) depositions Plaintiffs propose, Plaintiffs also claim they should be allowed to take 28 hours, or *four days'* worth, of Rule 30(b)(6) depositions. The burden of Plaintiffs' proposal on John Deere is immense considering the time and resources that would be spent preparing for these depositions. Plaintiffs have not made a "particularized showing" to justify imposing such a burden on John Deere, nor can they at this stage of the proceeding. *PeopleFlo Mfg., Inc.,* 2022 WL 1062706, at *2. If, in the future, Plaintiffs believe they need more 30(b)(6) deposition time, they may seek it for good cause shown. But there is no basis to presume now that such a burdensome amount of deposition time is warranted.

To ensure discovery does not exceed what is proportional and is instead consistent with Rule 1's requirement that the parties pursue "just, speedy, and inexpensive determination" of the proceeding, the Court should allow only a modest number of depositions now, with Plaintiffs reserving their right to seek additional depositions for good cause later. This is precisely what John Deere's proposal—which still affords Plaintiffs more depositions than Rule 30(a)(2) contemplates—accomplishes.