**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| **IN RE: DEERE & COMPANY REPAIR SERVICES ANTITRUST LITIGATION** | Case No.: 3:22-cv-50188<br>Hon. Iain D. Johnston |

**DEFENDANT DEERE & COMPANY'S RESPONSE TO THE STATEMENT OF INTEREST OF THE UNITED STATES**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1
ARGUMENT ........................................................................................................................ 2
CONCLUSION .................................................................................................................... 10

## **TABLE OF AUTHORITIES**

Page

**CASES**

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
 166 F.3d 772 (5th Cir. 1999) ...................................................................................................8

*Clark Mem'ls of Ala., Inc. v. SCI Ala. Funeral Servs. LLC*,
 991 F. Supp. 2d 1151 (N.D. Ala. 2014) ...................................................................................7

*Digital Equipment Corp. v. Uniq Digital Technologies, Inc.*,
 73 F.3d 756 (7th Cir. 1996) ........................................................................................3, 4, 7, 8

*DSM Desotech Inc. v. 3D Sys. Corp.*,
 749 F.3d 1332 (Fed. Cir. 2014) ................................................................................................6

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
 504 U.S. 451 (1992) ........................................................................................................ passim

*Epic Games, Inc. v. Apple Inc.*,
 559 F. Supp. 3d 898 (N.D. Cal. 2021) .....................................................................................8

*Harrison Aire, Inc. v. Aerostar International, Inc.*,
 423 F.3d 374 (3d Cir. 2005) .....................................................................................................9

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
 313 F. Supp. 3d 931 (N.D. Ill. 2018) (St. Eve, J.) ................................................................2, 4

*Lee v. Life Ins. Co. of N. Am.*,
 23 F.3d 14 (1st Cir. 1994) .....................................................................................................7, 8

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
 513 F.3d 1038 (9th Cir. 2008) .................................................................................................9

*Océ N. Am., Inc. v. MCS Servs., Inc.*,
 795 F. Supp. 2d 337 (D. Md. 2011) .........................................................................................5

*Pioneer Fam. Invs., LLC v. Lorusso*,
 No. 14-cv-594, 2014 WL 2883058 (D. Ariz. June 25, 2014) ..................................................7

*PSI Repair Services, Inc. v. Honeywell, Inc.*,
 104 F.3d 811 (6th Cir. 1997) ................................................................................................4, 8

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997) ............................................................................................... 9

*Red Lion Med. Safety, Inc. v. Ohmeda, Inc.*,
   63 F. Supp. 2d 1218 (E.D. Cal. 1999) ................................................................................ 8

*Schor v. Abbott Laboratories*,
   457 F.3d 608 (7th Cir. 2006) ........................................................................................ 3, 4

*Smugglers Notch Homeowners' Ass'n v. Smugglers Notch Mgmt. Co.*,
   414 F. App'x 372 (2d Cir. 2011) ....................................................................................... 9

*United Farmers Agents Ass'n v. Farmers Ins. Exch.*,
   89 F.3d 233 (5th Cir. 1996) ............................................................................................... 8

*US Airways, Inc. v. Sabre Holdings Corp.*,
   938 F.3d 43 (2d Cir. 2019) ................................................................................................ 9

**OTHER AUTHORITIES**

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust
   Principles and Their Application, ¶ 1740 (Aug. 2022) ..................................................... 3

Jonathan I. Gleklen, *The ISO Litigation Legacy of* Eastman Kodak Co. v. Image
   Technical Services*: Twenty Years and Not Much to Show For It*, 27 Antitrust
   56 (2012) ........................................................................................................................ 5, 7

Randy D. Gordon, *Framing Franchise Antitrust Litigation: The Legacy of of*
   Kodak *and* Queen City Pizza, 40 Sw. L. Rev. 247 (2010) ................................................ 5

David A.J. Goldfine & Kenneth M. Vorrasi, *The Fall of the* Kodak *Aftermarket
   Doctrine: Dying a Slow Death in the Lower Courts*, 72 Antitrust L.J. 209
   (2004) ..................................................................................................................... 5, 6, 7

Warren S. Grimes, *Antitrust and the Systemic Bias Against Small Business*:
   Kodak, *Strategic Conduct, and Leverage Theory*, 52 Case W. Rsrv. L. Rev.
   231 (2001) ......................................................................................................................... 7

Herbert Hovenkamp, *Post-Chicago Antitrust: A Review and Critique*, 2001
   Colum. Bus. L. Rev. 257 .................................................................................................. 5

David Walchak, *Reconsidering Kodak: The Cost of Aftermarket Protection*, 18
   Berkeley Bus. L.J. 165 (2021) .......................................................................................... 6

U.S. Federal Trade Commission & U.S. Department of Justice, *Competition Issues in Aftermarkets* (May 26, 2017) .................................................................................. 1, 6

**INTRODUCTION**

The Government does not defend the lion's share of Plaintiffs' Complaint, nor take issue with the vast majority of Deere's Motion. Most notably, the Government emphasizes that it takes no position on "whether Plaintiffs are direct or indirect purchasers" (SOI at 8 n.11), an issue of antitrust standing that features prominently in Deere's papers. The Government also does not contest that Plaintiffs lack Article III standing; that they must plead a plausible primary market made up of products that are reasonably interchangeable; and that failing to plead either a plausible primary market or a relevant aftermarket is fatal to every count. *See id.* at 9–10.

Even with respect to *Kodak*, the Government does not attempt to defend the plausibility of Plaintiffs' "lock-in" theory—that Deere concealed its policies on the front-end and changed them on the back-end. Rather, the Government's sole point is that no such allegations are needed. On its view, *Kodak* supplies antitrust plaintiffs a broad license to press single-brand aftermarket theories, with few (if any) threshold hurdles for those claims to clear before discovery is unleashed.

The fundamental problem with the Government's position is that it rests on a reading of *Kodak* that was incorrect in 1992, and has been decisively foreclosed in circuit after circuit—starting with the Seventh—in the thirty-plus years since. Indeed, the Government *itself* took a different view just a few years ago. In a white paper for the OECD, the Government described the post-*Kodak* world this way: "Despite the Supreme Court's decision in plaintiff's favor in *Kodak*, subsequent decisions have construed *Kodak* narrowly … to find that there can be no aftermarket claim absent a manufacturer's change in policies after it has locked in its customers." FTC & DOJ, *Competition Issues in Aftermarkets*, at 7 (May 26, 2017). As a result, "few plaintiffs have prevailed on aftermarket claims, and the legacy of the *Kodak* decision has been modest." *Id.* at 6.

While the Government has now changed its tune, it is telling that it believed it had better odds upending three decades of law than defending the Complaint on its own terms. Even still,

the Government's proposed doctrinal overhaul offers Plaintiffs no refuge. The Government's position is squarely foreclosed by Seventh Circuit precedent, as well as the weight of federal authority. And because the Government puts forward nothing else to save the Complaint, the proper course remains dismissal.

**ARGUMENT**

The Government never really explains what it thinks is required for a claim premised on *Kodak* to survive the pleadings. Its sole argument is that alleging a genuine lock-in problem—either by way of a company actively concealing its policies on the front-end, or changing them on the back-end—is not required. The Government is wrong. Four points warrant mention.

*First*, the Government misreads *Kodak*. The issue in *Kodak* was whether a single-brand aftermarket could *ever* be the relevant market, if there were competition in the foremarket. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 455 (1992). Kodak argued that competition in the foremarket will *always* discipline anticompetitive behavior in the aftermarket. *Id.* at 465–66. The Court rejected that categorical proposition, reasoning that Kodak's argument would not necessarily be true in every case. *Id.* at 467–79. But while the Court accepted the possibility of single-brand aftermarkets in antitrust, it did not delineate *when* they were proper—instead leaving the issue open for development in the lower courts.

Yet, here, the Government takes the Court's rejection of Kodak's categorical argument as license to press a categorical argument of its own—that claims premised on single-brand aftermarkets are not to be questioned on the pleadings but resolved only after discovery. There is no basis in *Kodak* for that position. Instead, *Kodak* stands for the much more modest proposition: that some subset of antitrust claims may proceed on a single-brand aftermarket theory under certain circumstances. But as the lower federal courts have since "elucidated," and as discussed further below, those circumstances are decidedly "rare." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F.

2

Supp. 3d 931, 961–62 (N.D. Ill. 2018) (St. Eve, J.) (internal quotation marks omitted).

*Second*, the Government badly distorts Seventh Circuit precedent. In a pair of decisions by Judge Easterbrook—*Digital Equipment Corp. v. Uniq Digital Technologies, Inc.*, 73 F.3d 756 (7th Cir. 1996), and *Schor v. Abbott Laboratories*, 457 F.3d 608 (7th Cir. 2006)—the Seventh Circuit held that a plausible *Kodak*-style claim requires some sort of bait-and-switch. As those precedents make clear, *Kodak* does not mean that every manufacturer of a complex and expensive good who "deal[s] in complementary products" is subject by default to roving antitrust liability. *Schor*, 457 F.3d at 614. Something more is required than the mere fact a product comes with high switching-costs and a unique aftermarket, lest every established brand become a *de facto* monopolist over the market for its own goods. *Digit. Equip.*, 73 F.3d at 762–63; *see also* Areeda & Hovenkamp, *Antitrust Law* ¶ 1740 (Aug. 2022) (explaining that single-brand aftermarkets should be rare and only available if "four stringent conditions are satisfied"). Indeed, an antitrust plaintiff must identify more than the *existence* of sunk costs; it must also show certain conduct on the part of the defendant to "*take advantage*" of those costs. *Schor*, 457 F.3d at 614 (emphasis added). That is, a plaintiff must allege that the defendant either hid its policies such that consumers were not "informed … about [those] policies before they bought its [product]," or enacted some sort of "change in policy … to extract supra-competitive prices from customers who had already purchased its [products]." *Digit. Equip.*, 73 F.3d at 763; *see also Schor*, 457 F.3d at 614 (noting that it was Kodak's post-sale change in policy that enabled the company to "raise the total cost of copier-plus-service above the competitive level—and, we observed in *Digital Equipment*, above the price that Kodak could have charged had it followed a closed-service model from the outset").

The Government's contrary reading is untenable. The Government somehow divines in these cases the open-ended idea that plaintiffs may proceed on a *Kodak*-style claim whenever

3

consumers may have trouble "accuratly calculat[ing] life-cycle costs." SOI at 15 (quoting *Digit. Equip.*, 73 F.3d at 762). Thus, the Government says, a company cannot escape *Kodak* simply through an "act of disclosure" that puts consumers on notice of its policies. *Id.* at 16.

The snag for the Government, though, is the Seventh Circuit has held the opposite. Judge Easterbrook took pains to stress there was "no[] doubt" that if "Kodak had informed customers about its policies before they bought its machines," the plaintiffs would have no claim at antitrust. *Digit. Equip.*, 73 F.3d at 763. This is because the "antitrust … problem" identified in *Kodak* was *not* that consumers found it innately hard to predict the life-cycle price of a complicated product; rather, the problem was companies "fooling consumers" with "changes of policy" that they could "not anticipate." *Id.* at 762; *see also Schor*, 457 F.3d at 614. In other words, the touchstone for *Kodak* is a company must actively thwart consumers' ability to intelligently appraise a product, adding a burden *beyond* whatever practical difficulties are inherent to pricing a complex good. Absent this, a complaint fails to state a claim under *Kodak*. Indeed, *Schor* itself arose in a motion to dismiss posture, and the Seventh Circuit affirmed dismissal for the sole reason that the complaint failed to allege "any [policy] switch that would exploit customers' sunk costs." 457 F.3d at 608. The Court did not acknowledge, let alone analyze, any of the Government's other nebulous factors; and the Court did not hesitate over rejecting such a claim as deficient without further fact-finding.

Then-District Judge St. Eve recognized all this in *In re Dealer Management Systems Antitrust Litigation*, 313 F. Supp. 3d 931 (N.D. Ill. 2018). There, relying on *Digital Equipment*, *Schor*, and the Sixth Circuit's decision in *PSI Repair Services, Inc. v. Honeywell, Inc.*, 104 F.3d 811 (6th Cir. 1997), the court held that a "*Kodak* claim depends on the consumer's unawareness of the supplier's aftermarket power and its terms when it purchased the primary-market product." *In re Dealer Mgmt.*, 313 F. Supp. 3d at 962–63. And applying these principles, the court found

4

the plaintiffs had pled two plausible single-brand aftermarkets—one due to a "switch in policy," the other due to a contract that "prohibit[ed] vendors" from disclosing certain hidden, changing costs to customers. *Id.* at 963–64.

*Third*, the Government mischaracterizes the current state of the law, and ignores the Seventh Circuit's role in shaping it. The Government has attempted to cast courts as having been largely receptive to *Kodak* claims, with a history of permissiveness in letting complaints premised on *Kodak*-style theories proceed to discovery. *E.g.*, SOI at 17. The opposite is true. *See* Herbert Hovenkamp, *Post-Chicago Antitrust: A Review and Critique*, 2001 Colum. Bus. L. Rev. 257, 285–86 & n.75 ("Most lower courts have bent over backwards to construe *Kodak* as narrowly as possible.") (collecting cases).[1]

Indeed, a broad coalition of federal courts of appeals have coalesced around the view that a plausible *Kodak*-style claim requires some sort of bait-and-switch. Courts have repeatedly recognized this. *See, e.g.*, *Océ N. Am., Inc. v. MCS Servs., Inc.*, 795 F. Supp. 2d 337, 345 (D. Md. 2011) ("In accordance with the holdings of the First, Third, Sixth, and Seventh Circuits as well as

---

[1] *See also, e.g.*, Jonathan I. Gleklen, *The ISO Litigation Legacy of* Eastman Kodak Co. v. Image Technical Services: *Twenty Years and Not Much to Show For It*, 27 Antitrust 56, 56 (2012) ("Indeed, with the exception of the *Kodak* case itself on remand, defendants have prevailed in almost all of the reported *Kodak*-style cases alleging anticompetitive conduct in aftermarkets."); Randy D. Gordon, *Framing Franchise Antitrust Litigation: The Legacy of* Kodak *and* Queen City Pizza, 40 Sw. L. Rev. 247, 257 & nn. 71–72 (2010) ("There is general agreement that the uniqueness of aftermarket goods and the presence of switching and information costs are necessary to establish an aftermarket as the 'relevant market' for antitrust purposes. But a number of cases hold that these factors are not alone sufficient to state a claim. The most common reasoning is that a *Kodak*-type claim will not succeed absent a showing that the 'defendant has actually changed its policy after locking-in some of its customers.'") (collecting cases); David A.J. Goldfine & Kenneth M. Vorrasi, *The Fall of the* Kodak *Aftermarket Doctrine: Dying a Slow Death in the Lower Courts*, 72 Antitrust L.J. 209, 220 (2004) ("Circuit-by-circuit analysis of how lower courts have approached and resolved *Kodak*-style lock-in claims demonstrates that, on the whole, federal courts have severely limited *Kodak*'s scope so that it is no longer a viable weapon for antitrust plaintiffs.").

5

numerous federal courts and commentators, ... an antitrust plaintiff cannot succeed on a *Kodak* type theory where the defendant has not ... exacted supracompetitive prices by implementing a restrictive anticompetitive change of policy that locked in customers, or used other coercive anticompetitive methods to deceive customers about the prices they would have to pay for parts and service."); *see also DSM Desotech Inc. v. 3D Sys. Corp.*, 749 F.3d 1332, 1346–47 (Fed. Cir. 2014) (relying on precedent from Sixth and Seventh Circuits for proposition that it is "high cost[s] of switching" plus a change in "policies on aftermarket parts and services" that "might form the basis for antitrust liability" under *Kodak*). So, too, academics. *See, e.g.*, David A.J. Goldfine & Kenneth M. Vorrasi, *The Fall of the* Kodak *Aftermarket Doctrine: Dying a Slow Death in the Lower Courts*, 72 Antitrust L.J. 209, 222 & n.46 (2004) ("To state a *Kodak*-style lock-in claim, the First, Fifth, Sixth, and Seventh Circuits require plaintiffs to establish that the defendant implemented a post-sale change in policy in order to exploit the installed base of consumers.") (collecting cases). Even the Government acknowledged as much, at least before this case. *See, e.g.*, FTC & DOJ, *supra*, at 10 & n.50 ("[W]here there is no change in policy or where any changes are predictable to customers, U.S. courts are unlikely to impose antitrust liability.") (citing Seventh Circuit's decision in *Digital Equipment* and Sixth's decision in *PSI Repair*).

The Seventh Circuit is not just part of this consensus; it is widely credited with *starting* it. *See* David Walchak, *Reconsidering* Kodak*: The Cost of Aftermarket Protection*, 18 Berkeley Bus. L.J. 165, 174 (2021) ("Circuit courts largely limited the *Kodak* holding to situations in which equipment manufacturers unexpectedly change their aftermarket parts policy, thereby restricting locked-in consumers' access to competitors in the aftermarket. The first case to take this view of

6

the *Kodak* decision was [*Digital Equipment*].").[2]

Given this widespread understanding of the *Kodak* landscape, the Government's insistence that *Kodak*-style claims defy resolution on the pleadings is just incorrect. SOI at 17. When a complaint fails to plausibly identify a genuine lock-in problem—that is, where a complaint fails to allege how the defendant "took advantage" of consumers in one of the ways identified by the Seventh Circuit—it is common course for the federal courts to dismiss that action on the pleadings. Mot. at 15 & n.3 (collecting cases); Reply at 19 (collecting others).[3] That is precisely the situation Plaintiffs find themselves in here and, under binding Circuit law, their claims must be dismissed.

*Fourth*, attempting to conjure support, the Government grasps for help out-of-circuit. Here, too, the Government falls short. To start, it effectively concedes, as it must, that the First and Sixth Circuits have rejected its position. *See* SOI at 20–23. And while the Government (wrongly) contends that a Fifth Circuit case cited by Deere is inapposite, it never says that the Fifth

---

[2] *See also, e.g.*, Warren S. Grimes, *Antitrust and the Systemic Bias Against Small Business:* Kodak, *Strategic Conduct, and Leverage Theory*, 52 Case W. Rsrv. L. Rev. 231, 279–80 (2001) ("[Judge Easterbrook's] change of policy interpretation seems entrenched in a number of circuits. … In these circuits, there may still be room for plaintiffs to prevail on a *Kodak* theory if the defendant has effected a clear change in policy after the installed-base product is sold."); Goldfine & Vorrasi, *supra*, at 222–24 ("*PSI Repair* and *Digital Equipment* are good examples of how a majority of the circuits have interpreted *Kodak* to require a post-sale change in policy in order for a plaintiff's lock-in theory to prevail."); Gleklen, *supra*, at 58 ("The Seventh Circuit's decision in [*Digital Equipment Corp.*] was the first to limit *Kodak* to cases involving a policy change.").

[3] *See also, e.g.*, *Pioneer Fam. Invs., LLC v. Lorusso*, No. 14-cv-594, 2014 WL 2883058, at *5–6 (D. Ariz. June 25, 2014) (dismissing complaint "based on the allegation that [defendant] controls the secondary market for [its] parts and servicing through a tie-in arrangement with its licensed dealers" because, among other things, the defendant did not "implement[] a new policy after [plaintiffs'] purchase of the system that locked [them] into [the defendant's] services"); *Clark Mem'ls of Ala., Inc. v. SCI Ala. Funeral Servs. LLC*, 991 F. Supp. 2d 1151, 1164–65 (N.D. Ala. 2014) (dismissing complaint on ground that "an essential element of a lock-in claim is a change in policy in the after-markets after a consumer has made a purchase in the initial market"); *Lee v. Life Ins. Co. of N. Am.*, 23 F.3d 14, 20 (1st Cir. 1994) (affirming dismissal where plaintiffs were on-notice about policy and thus failed to allege a plausible "*Kodak*-type 'lock-in'").

Circuit agrees with its view. *Id.* at 20. Nor could it. *See, e.g.*, *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772 (5th Cir. 1999) (finding that the plaintiff "did not prove that a change in any of [the defendant's] pricing, warranty, or other policies served to subject [consumers] to substantial additional information or switching costs"); *see also United Farmers Agents Ass'n v. Farmers Ins. Exch.*, 89 F.3d 233, 238 (5th Cir. 1996) (rejecting claim that insurance agents were "locked-in" to a particular insurance company because the agents "would clearly have become aware of [the alleged anticompetitive] policy long before they faced significant switching costs").

Instead, the Government searches for support in the Ninth, Third, and Second Circuits, to no avail. Start with the Ninth Circuit. The Government relies heavily on a single district court opinion from the late '90s for the proposition that Ninth Circuit precedent does not compel "an implicit limitation on aftermarket antitrust claims to situations involving a change of policy or pricing as to after[]market parts and services." SOI at 18 (quoting *Red Lion Med. Safety, Inc. v. Ohmeda, Inc.*, 63 F. Supp. 2d 1218, 1230 (E.D. Cal. 1999)). What the Government fails to say, however, is that this quote comes from a section where the district court is *contrasting* the court's view with that of the Seventh Circuit (as well as the Sixth and First). Here is the full quote: "Several circuit courts have found in [*Kodak*] an implicit limitation on aftermarket antitrust claims to situations involving a change of policy or pricing as to after market parts and services." *Red Lion*, 63 F. Supp. 2d at 1230 (citing *Digit. Equip.*, 73 F.3d at 762–63; *PSI Repair*, 104 F.3d at 820; *Lee v. Life Ins. Co. of N. Am.*, 23 F.3d 14, 20 (1st Cir. 1994)). So even the Government's leading case acknowledges that the Seventh Circuit rejects the Government's position.

In any event, the Ninth Circuit has never held a *Kodak*-style claim may prevail where consumers were clearly on notice about the policy at issue. In fact, as demonstrated in more recent cases, that Circuit hues closely to the above principles. *See, e.g.*, *Epic Games, Inc. v. Apple Inc.*,

8

559 F. Supp. 3d 898, 1022 (N.D. Cal. 2021) ("Since 1992, five circuit courts and numerous district courts refused to find a *Kodak*-type single-brand aftermarket where customers had knowledge of the alleged restrictive policies and were not subject to a post-purchase policy change."); *see also Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1050 (9th Cir. 2008) (considering how "fraud and deceit" may affect consumers' understanding of product).

The Government's nod to the Third Circuit also fails. SOI at 17. The Government cites *Harrison Aire, Inc. v. Aerostar International, Inc.*, 423 F.3d 374, 384 (3d Cir. 2005), for its point that "an aftermarket policy change is not the *sine qua non* of a *Kodak* claim." But regardless of whether the Third Circuit purports to look to other factors, the thrust of its cases fit comfortably with those above. Like the Seventh, the Third Circuit has made plain that "*Kodak* does not hold that the existence of information and switching costs alone … renders an otherwise invalid relevant market valid." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 439 (3d Cir. 1997). And like the Seventh, the Third Circuit has affirmed dismissals of *Kodak*-style claims where they fail to plausibly allege a change in policy, and where consumers were on notice about the policies at issue. *Id.* at 440 ("Unlike the plaintiffs in *Kodak*, [the plaintiffs here] could assess the potential costs and economic risks at the time they [entered the relevant] agreement.").

The Government also makes a passing reference to the Second Circuit's decision in *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43 (2d Cir. 2019). SOI at 19. But that case did not involve an "alleged aftermarket or tying arrangement," and thus did not implicate any of the cases "from the First, Fifth, Sixth[,] and Seventh Circuits" involving *Kodak*. *US Airways*, 938 F.3d at 66 n.8. And in more relevant cases, the Second Circuit has followed the above principles to reject *Kodak*-style claims like the one here. *See, e.g.*, *Smugglers Notch Homeowners' Ass'n v. Smugglers Notch Mgmt. Co.*, 414 F. App'x 372, 377 (2d Cir. 2011) (affirming dismissal where

9

complaint failed to plausibly allege any "change in policy" and where plaintiffs were "fully aware" of policies at issue).

\* \* \*

Much of the Government's submission reads as if it were filed the day after *Kodak* was decided. As explained, the Government's arguments are as wrong now as they would have been then. But even if the Government's interpretation of *Kodak* was colorable in a vacuum—and it is not—its position has been unambiguously rejected by the federal courts in the thirty years since. And, more importantly, the broad-based consensus that repudiated the Government's position is not only embraced by the Seventh Circuit, but is widely regarded as the fruit of the Seventh Circuit. However the Government would like to parse the case law in other circuits, the rule in the Seventh Circuit is clear. And since the Government's submission offers no other grounds for sustaining Plaintiffs' claims, the Complaint should be rejected on the pleadings.

## CONCLUSION

For these reasons, this Court should enter judgment on the pleadings in favor of Deere.

Dated: February 28, 2023                    Respectfully submitted,


                                            */s/ Tiffany D. Lipscomb-Jackson*

                                            John M. Majoras
                                            jmmajoras@jonesday.com
                                            JONES DAY
                                            51 Louisiana Avenue, N.W.
                                            Washington, DC 20001
                                            Telephone: (202) 879-3939

                                            Tiffany D. Lipscomb-Jackson
                                            tdlipscombjackson@jonesday.com
                                            JONES DAY
                                            325 John H. McConnell Boulevard,
                                            Suite 600
                                            Columbus, OH 43215-2673
                                            Telephone:  (614) 281-3876

                                            Corey A. Lee
                                            calee@jonesday.com
                                            JONES DAY
                                            North Point
                                            901 Lakeside Avenue
                                            Cleveland, Ohio 44114
                                            Telephone: (216) 586-3939

                                            Amanda B. Maslar (6321073)
                                            amaslar@jonesday.com
                                            JONES DAY
                                            110 North Wacker, Suite 4800
                                            Chicago, IL  60606
                                            Telephone:  (312) 782-3939
                                            Facsimile:   (312) 782-8585

                                            *Counsel for Defendant Deere & Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that, on February 28, 2023, a copy of the foregoing was filed using the CM/ECF system, which will effectuate service on all counsel of record.

                                                  */s/ Tiffany D. Lipscomb-Jackson*