```
 1                   IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                             WESTERN DIVISION

 3  IN RE:  DEERE & COMPANY REPAIR   )  Docket No. 22 CV 50188
    SERVICES ANTITRUST LITIGATION    )
 4                                   )  Rockford, Illinois
                                     )  Thursday, May 11, 2023
 5                                   )  9:00 o'clock a.m.
                                     )
 6                       TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE IAIN D. JOHNSTON
 7
    APPEARANCES:
 8
    For the Plaintiffs:          COTCHETT PITRE & MCCARTHY LLP
 9                               (840 Malcolm Road,
                                  Suite 200,
10                                Burlingame, CA  94010) by
                                 MR. ADAM J. ZAPALA
11                               (40 Worth Street,
                                  Suite 602,
12                                New York, NY 10013) by
                                 MR. ALEXANDER E. BARNETT
13
                                 FOOTE MIELKE CHAVEZ & O'NEIL LLC
14                               (10 West State Street,
                                  Suite 200,
15                                Geneva, IL  60134) by
                                 MS. KATHLEEN CURRIE CHAVEZ
16                               MR. ROBERT M. FOOTE

17                               GUSTAFSON GLUEK PLLC
                                 (120 South Sixth Street,
18                                Suite 2600,
                                  Minneapolis, MN  55402) by
19                               MR. DANIEL C. HEDLUND

20                               WEXLER BOLEY & ELGERSMA LLP
                                 (311 South Wacker Drive,
21                                Suite 5450,
                                  Chicago, IL  60606) by
22                               MR. KENNETH A. WEXLER

23                               WILLIAMS MCCARTHY LLP
                                 (120 West State Street,
24                                Rockford, IL  61105) by
                                 MR. MARC C. GRAVINO
25
```

```
 1   For the Defendants:       JONES DAY
                               (325 John H. McConnell Boulevard,
 2                              Suite 600,
                                Columbus, OH  43215) by
 3                             MS. TIFFANY D. LIPSCOMB-JACKSON
                               (901 Lakeside Avenue,
 4                              Cleveland, OH  44114) by
                               MR. COREY A. LEE
 5
     Court Reporter:           Heather M. Perkins-Reiva
 6                             327 South Church Street
                               Rockford, IL  61101
 7                             (779)772-8309

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE CLERK:  22 CV 50188, *Deere & Company Repair
2   Services Antitrust Litigation*.
3          THE COURT:  Good morning, counsel.
4          I keep trying to figure out a way to do this the
5   easiest way.
6          Let's start with appearances, for the record, with
7   defendant.
8          MS. LIPSCOMB-JACKSON:  Good morning, Your Honor.
9   Tiffany Lipscomb-Jackson of Jones Day on behalf of the
10  defendant, along with my partner, Corey Lee.
11         THE COURT:  Good morning.
12         All right.  So I assume Ms. Chavez and/or Mr. Foote
13  will be on the phone.
14         MR. FOOTE:  I'm on, Your Honor.  This is Mr. Foote.
15         THE COURT:  Okay.
16         MS. CHAVEZ:  And I am too.
17         THE COURT:  All right.  Great.
18         I'm just going to go down.
19         Mr. Gravino?
20         MR. GRAVINO:  Yes.  Good morning, Your Honor.
21         THE COURT:  Good morning.
22         Is Mr. Holevas on?
23         MR. GRAVINO:  No.  He is on vacation this week,
24  Judge.
25         THE COURT:  Good for him.  Okay.

1    Let's see.  I always hesitate just to open it up
2 because then everybody chimes in at the same time.
3    Let's see.  How about somebody for Brown,
4 representing Brown?
5    MR. FOOTE:  Maybe we can shorten it up this way,
6 Judge.  I know Mr. Hedlund, Dan Hedlund, is on --
7    This is Mr. Foote -- I'm sorry -- for the reporter.
8    -- Mr. Dan Hedlund is on, Mr. Adam Zapala is on, I
9 believe Mr. Ken Wexler is on.  That may be it for the
10 plaintiff's group.  All those folks represent each and all of
11 the class plaintiff in the case.
12    THE COURT:  Thank you, Mr. Foote.  That is a much
13 better way to do this.
14    Is there anybody else on the phone for the
15 plaintiffs?
16   (No response.)
17    THE COURT:  Okay.  Fantastic.
18    MR. BARNETT:  Your Honor -- I'm sorry -- this is
19 Alexander Barnett from Cotchett Pitre & McCarthy.  I am
20 listening in.  I won't be speaking.  I'm Mr. Zapala's partner.
21    THE COURT:  Okay.  No problem.  No problem.
22    All right.  I have got some things to talk about,
23 nothing major, but let's get an update on the status.
24    I will start with the plaintiffs' side, and then I
25 will hear from defense.

1    MR. FOOTE: Yes, Judge. This is Robert Foote for the
2 plaintiffs.
3    Basically, Judge, we are on schedule. We don't
4 expect any delays or changes in the schedule going forward.
5 We have been talking every day about discovery issues, both on
6 the Deere side and on the plaintiff side. We have been able,
7 with the help of the good folks at Jones Day, to resolve a lot
8 of the issues without your involvement, and we will continue
9 to do that. I believe it will be a handful or less of
10 disputes about discovery when we finish our process.
11    THE COURT: Okay. That's great. I appreciate it.
12    And, look, I have no problems with counsel bringing
13 me legitimate discovery disputes to resolve. That's my job.
14 So if you are able to work things out on your own, that's
15 best; if you can't, that's my job. So I don't have any
16 concerns about that.
17    All right. Let's hear from the defense side.
18    MR. LEE: Your Honor, this is Corey Lee from Jones
19 Day on behalf of John Deere.
20    I agree with plaintiffs' general sentiment that the
21 parties have been engaged in rather lengthy and thorough
22 meet-and-confers. We really appreciate the Court giving us
23 the courtesy of some additional time to meet and confer before
24 requiring to file motions to compel. I think we should have,
25 both by the defendants and the plaintiffs, probably some

1  limited issues that are brought before the Court.
2          THE COURT: Okay. Thank you very much.
3          A couple items. I am working through a stack of
4  *Daubert* motions in another case. I hope to get those done
5  over the weekend. And the trial I had scheduled for next week
6  is settling out. So I would like to turn more attention to
7  the pending motion for judgment on the pleadings in this case
8  because I now have some time, and I need some time for it.
9          I have got some general questions. I will just
10 rattle through them. I don't think it would be fair to put
11 you on the spot right now without any notice that I was going
12 to do this. If there are things you feel like answering after
13 I go through this list, that would be fine. If you want to
14 hold fire until later, that's fine too. Again, I realize I'm
15 doing this on the fly without you folks knowing what's in my
16 head.
17         In no particular order -- I'm trying to start very
18 basic -- basic business of agriculture: plant, grow, harvest,
19 sell. Anything that goes sideways anywhere in any one of
20 those four steps can be disastrous. I know we have got some
21 folks on the phone who are sort of gentleman farmers, if that
22 term is appropriate anymore.
23         But is that a fair characterization of the business
24 of agriculture: you have got to plant, you have got to grow,
25 you have got to harvest, you have to get in off the field, and

1   then you have got to find somebody to sell, and then you do it
2   all again the next year or the next day?
3           Let me start with the plaintiffs:  Is that a fair
4   characterization of the business of agriculture?
5           MR. FOOTE:  Yes, Judge.
6           This is Robert Foote.
7           THE COURT:  All right.  Any views on the defense
8   side?  Am I missing anything?
9           Again, it is a very gross generalization.
10          MS. LIPSCOMB-JACKSON:  This is Tiffany
11  Lipscomb-Jackson, Your Honor.
12          I would say at a very, very high level, that is
13  accurate.
14          THE COURT:  Okay.
15          MS. LIPSCOMB-JACKSON:  It is, of course, more
16  complicated when you get into the details.
17          THE COURT:  Okay. Well, certainly, yes.  I mean,
18  selling is its own issue.  You've got whole businesses and
19  structures on that.
20          All right.  In no particular order, and I will just
21  rattle these off, things that are in my head.
22          How many times do we cite *Twombly*?
23          I'm asking my staff.
24          In a week, how many times do we cite *Iqbal* and
25  *Twombly*?  A half a dozen times, a dozen times a week as things

1  go out the door?
2          Okay. I'm going to go back and reread -- for the I
3  don't know how many times -- *Twombly* because it is an
4  antitrust case. I have got my views on what it did and what
5  it didn't do, but I'm going to go back and look at *Twombly*.
6  It couldn't hurt.
7          There is a case that seems important, *Apple v.
8  Pepper,* relating to Illinois Brick that caught my eye.
9          And, again, don't read too much into this. This is a
10 Virginia Woolf's stream of consciousness.
11         There is a *Loeb Industries* case out there. It is a
12 Seventh Circuit case, I believe. I don't know if it is
13 inconsistent with later Supreme Court rulings. If it is, it
14 puts me in a really tricky spot. I have been in that spot in
15 a couple other contexts where it looks like a Seventh Circuit
16 case is no longer viable after a Supreme Court decision, but
17 then the Seventh Circuit hasn't said it, and I can't tell the
18 Seventh Circuit -- I can't overrule the Seventh Circuit. So
19 if I'm in that spot again, I will try to weasel my way around
20 it as best I can.
21         Let's see. Here is an odd question that I scribbled
22 down: If the plaintiffs could and did join co-conspirators as
23 defendants, would the complaint be allowed to proceed?
24         Hmm, I don't know.
25         The next Post-it: Does the complaint plead both

1 horizontal and vertical conspiracy?

2 Next question: What does the plaintiff view as the
3 relevant market? And then, of course, the flip side is what
4 does the defendant view as the relevant market?

5 Here seems to be my tremendous grasp of the obvious:
6 If I get past, through things like Article III standing and
7 antitrust standing and start jumping headlong into the merits,
8 it seems like *Kodak* is the key case on the merits. Hopefully,
9 I have gotten that part right because that seems to be pretty
10 obvious.

11 Then there is this whole issue of this presumption.
12 I was just curious in what other context in the law is there a
13 presumption that a plaintiff would have to plead its way
14 around for the complaint to proceed beyond a Rule 12 motion.
15 I don't know. Is there a presumption in the business judgment
16 rule if you were to raise that? That's the only thing that
17 came to my head. Maybe there is something else out there. I
18 just couldn't think of another context where there is a
19 presumption that a plaintiff would have to, under Rule 8,
20 plead facts to survive a Rule 12 motion. There used to be an
21 old Illinois case that said public officials' actions were
22 presumptively valid and lawful, and that was an Illinois case,
23 and I say that with a straight face.

24 Let's see. Plaintiffs must plead in complaint that
25 it hid. It seems like the defense is saying that the

1  plaintiff has to plead in the complaint that it hid these
2  actions.
3          So, again, those are just things that are cooking
4  around in my head.  Hopefully, I didn't scare you.  Again,
5  don't read too much into it.
6          If anybody has any views on any of those things, I
7  will be glad to hear.  I'm not going to hold you to it.  I
8  generally don't have oral argument on motions.  Sometimes I
9  do.  Pre-pandemic, I would do it occasionally.  During
10 pandemic, never.  Since pandemic, I haven't done it.  So what
11 does that make it, rare?  Occasionally and never equals rare.
12         If I were to have argument in this case, my practice
13 when I do that is I will give you a list of -- you can tell me
14 whatever you want to tell me, but I will give you a list of
15 some questions of things that are troubling me, so that you
16 would be prepared to address them at the oral argument, so I'm
17 not just rifling questions at you on the fly.
18         So that's a long way around the barn.  If plaintiffs
19 want to address any of those things, I will be glad to hear.
20 Again, I'm not holding you to anything at this point.  These
21 are just things that I'm thinking about.  And then I will hear
22 from defense.  You have a right to make a statement.  You have
23 a right not to make a statement.
24         Go ahead.
25         MR. FOOTE:  Your Honor, Robert Foote.

1  Adam Zapala is way smarter than me. So if anybody
2  has a few comments on those questions, it would be Mr. Zapala
3  for the plaintiffs.
4  THE COURT: Okay.
5  MR. ZAPALA: Well, thank you, Your Honor. This is
6  Adam Zapala from Cotchett Pitre & McCarthy. I'm not sure
7  about Mr. Foote's representation, but I appreciate it
8  nonetheless, and thank you for giving us sort of your
9  high-level views.
10  I would say that we agree, obviously, that *Kodak* is
11  the controlling Supreme Court authority and sort of governs
12  the doctrinal framework in this case, though that was an older
13  Supreme Court case involving older technology, obviously. So
14  we would agree with the Court that that is a very relevant
15  authority for purposes of evaluating the complaint and the
16  case.
17  With respect to *Twombly*, it is, obviously, an
18  important Supreme Court decision regarding the pleading
19  standards in antitrust cases, though I think it's perhaps a
20  little bit off point insofar as that case was about a sort of
21  horizontal conspiracy and the standards and plausibility that
22  you have to plead in terms of where there is parallel conduct
23  in a price-fixing or other collusion-type case, you know, what
24  do you have to plead in terms of the detail about meetings and
25  communications between the defendants or, conversely, whether

1   pleading parallel conduct amongst the competitors is enough,
2   and the Supreme Court in that case held that antitrust
3   complaints, while still ruled by -- or excuse me -- while
4   still governed by Rule 8, the notice pleading standard, have
5   to plausibly allege a conspiracy.
6          We think we meet the standards of *Twombly* in terms of
7   plausibility, though I think our case is slightly different
8   insofar as we are not alleging sort of a straight price-fixing
9   conspiracy amongst an entire industry of horizontal
10  competitors in the same way that I think the *Twombly* court was
11  looking at that issue, though, I agree with the Court, it is
12  obviously important to -- it's an important case for
13  evaluating any pleading in an antitrust case.
14         The *Apple v. Pepper* case, as you mentioned, is a
15  relatively recent Supreme Court case involving the issue of
16  direct purchasers and indirect purchasers in two-sided
17  platforms.  In that case, it involved Apple's app,
18  applications on their iPhones and the question of whether the
19  consumers were direct purchasers of the charge that Apple
20  imposed on developers, which was ultimately also paid by
21  consumers, and in that case, obviously, the Supreme Court
22  found that both consumers and developers are direct purchasers
23  under the fact pattern presented there.
24         In terms of relevant markets, which we have laid out
25  in our complaint, I know that was another area of inquiry for

1 the Court.  Our view is that the foremarket here is the market
2 for tractors, as we have defined in our complaint, for the
3 sale of the tractor.  That is the foremarket.  The aftermarket
4 is the repair services market, as alleged in our complaint.
5 That is, obviously, the aftermarket, so when farmers get
6 repairs on the tractors they purchased from Deere.
7     I'm not sure I entirely understood the inquiry, but I
8 don't believe there is any presumption in antitrust cases.  I
9 think the conduct is evaluated according to the antitrust
10 standards of liability.  I'm not aware of any kind of like
11 business judgment rule, though I will say there is, obviously,
12 the rule-of-reason analysis under the antitrust laws which
13 asks the question of whether there are procompetitive benefits
14 to the conduct and whether the procompetitive benefits are
15 outweighed by the anticompetitive conduct and whether there
16 are less restrictive means of imposing the conduct to achieve
17 the stated procompetitive benefits.  So perhaps that is the
18 presumption that you were referring to, but aside from that, I
19 don't think there is any presumptions per se in this context
20 that I am aware of that are sort of like the business judgment
21 rule in a shareholder derivative case.
22     So those would be the things I would say at a high
23 level, though we are obviously happy to answer any questions
24 the Court may have about our complaint, and we appreciate,
25 obviously, the Court's high-level views.

1             THE COURT: Okay. All right. Anything from defense?
2  Again, you don't have to say anything. But if there is
3  anything you want to address, I will be glad to hear it.
4             MS. LIPSCOMB-JACKSON: Yes. Thank you, Your Honor.
5  Tiffany Lipscomb-Jackson.
6             Just a couple of high-level points, and I appreciate,
7  again, the Court's sharing its views and allowing us to speak.
8             On the issue of *Apple v. Pepper*, that is, we think,
9  one of the key cases for the Court to consider because, in our
10 view, this complaint really is susceptible to a
11 straightforward application of the indirect purchaser rule as
12 it has been outlined in *Apple v. Pepper* and other cases and
13 should be dismissed for that reason. So we would agree that
14 that case and how it aligns with other prior precedents is a
15 key thing for the Court to be looking at when considering the
16 motion.
17            We also agree that *Kodak* is, when you get to the
18 "merits" of plaintiffs' case, the fundamental case, although
19 it has been interpreted multiple times over the years by many
20 courts, including several cases in the Seventh Circuit, and
21 I'm not sure if this is what Your Honor was getting at with
22 the presumption, but what has come out of the *Kodak* line of
23 cases is the idea that you must plead a lock-in problem in the
24 complaint, that you have locked in the consumers, and that
25 that is a failing that we think the complaint here suffers

1  from.  So we agree *Kodak* is the foundation, but there have
2  been several cases since then, including the Seventh Circuit
3  cases, that really give contours to what *Kodak* means and how
4  it should be interpreted and focuses in on the lock-in
5  problem, which defendants believe plaintiffs have failed to
6  plead here.
7  In terms of relevant market, Mr. Zapala noted that
8  plaintiffs are arguing -- or have asserted that the foremarket
9  is the tractor market, and we certainly agree that that's what
10 they have asserted.  Our position is that that is not a
11 cognizable antitrust market, and in a case like this, the
12 burden is on plaintiffs to establish a cognizable relevant
13 market from which they can argue the impact of the alleged
14 anticompetitive conduct.  So defendant's position would simply
15 be that plaintiffs have failed to do that on relevant market,
16 particularly in the foremarket, for the reasons that we have
17 outlined in our brief.
18 I think I have hit sort of, at a high level, all of
19 the points that you raised, Your Honor.  Again, I'm happy to
20 answer any other questions you may have today.  I know that
21 you have mentioned you don't normally have argument.  I do
22 think these are sufficiently complex issues that an argument
23 may be helpful to Your Honor, and defendants would certainly
24 make themselves available for that if you agree that that
25 would be helpful as you make your consideration.

1       THE COURT: Okay. That's helpful. And I will let
2 you know if I will have argument on it.
3       You know, on the *Iqbal/Twombly* issue,
4 occasionally -- I shouldn't say "occasionally" -- And I'm not
5 going to say "always." What's between occasionally and
6 always? -- fairly regularly, pretty often, we get motions to
7 dismiss in employment discrimination cases, which seems like a
8 monumental waste of time because the Seventh Circuit has
9 multiple cases that say that a plaintiff doesn't need to hang
10 factual allegations as to each element of a claim. And, in
11 fact, there is a couple. I think it is *Wilson v. CTA* -- no,
12 that's an Illinois Supreme Court case -- another case where
13 the Seventh Circuit says for an employment discrimination
14 case, the plaintiff need only say, "I was X" -- fill in the
15 blank, fill in the protected class -- "and I was discriminated
16 against." Game over. And that's sufficient.
17       Then you get into these antitrust cases, and it
18 seems -- I don't want to say the standard is different because
19 I don't think I'm allowed to say the standard is different,
20 but it is hard to square for a person doing the work as to how
21 many factual allegations need to be pled towards various
22 elements of the claim, and there is so many aspects to an
23 antitrust claim. Do you need to hang factual allegations on
24 each of those sort of sub-elements? Cases indicate it, and
25 then I have trouble squaring it with other pleading-type cases

1 that go up to the Seventh Circuit.

2 So I will figure it out. I will get over it.

3 All right. I appreciate the insight. Like I said,
4 if I can get these *Daubert* motions done over the weekend, I
5 can turn to the motion for judgment on the pleadings here and
6 devote some time to it because it just needs a big chunk of
7 time. I will lock myself in chambers for a while.

8 Okay. I know we have set a schedule for sort of an
9 ongoing status process. I don't know what's the next date.
10 If anybody knows what it is, it would be helpful.

11 MR. ZAPALA: Yes, Your Honor. This is Adam Zapala
12 from the Cotchett firm.

13 The next status conference is set, according to my
14 schedule, for Thursday, August 17th.

15 THE COURT: That's right. I thought we skipped July.

16 Okay. Thursday, August 17th.

17 Hold on.

18 Yes, I have got you at 9:00 o'clock.

19 Okay. All right. Do what you can on the discovery
20 issues. If you can't get it resolved, let me know, and if you
21 want to get it teed up before the 17th, that's fine, and we
22 can take it up on the 17th, or if I can rule on it before
23 then, I will try to do that because it's May, and I don't want
24 to be the logjam on discovery if I can hear an issue and rule
25 on it right away and keep you folks moving forward, okay?

```
 1              MR. FOOTE:  Thank you, Judge.
 2              THE COURT:  All right.  Anything on the plaintiffs'
 3    side?  Anything else?
 4              MR. FOOTE:  Nothing else, Judge.  Thank you.
 5              THE COURT:  How about from defense?
 6              MS. LIPSCOMB-JACKSON:  Thank you.
 7              THE COURT:  All right.  Thanks.  Have a good day,
 8    everybody.
 9              MR. FOOTE:  Thanks, Judge.
10        (Which were all the proceedings heard.)
11                             CERTIFICATE
12      I certify that the foregoing is a correct transcript from
13    the record of proceedings in the above-entitled matter.
14    /s/Heather M. Perkins-Reiva              May 18, 2023
15    _____        _____
      Heather M. Perkins-Reiva                    Date
16    Official Court Reporter
17
18
19
20
21
22
23
24
25
```