|  |  |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
|  | FOR THE NORTHERN DISTRICT OF ILLINOIS |
| 2 | WESTERN DIVISION |

```
 3  IN RE:  DEERE & COMPANY REPAIR     )  Docket No. 22 CV 50188
        SERVICES ANTITRUST LITIGATION      )
 4                                         )  Rockford, Illinois
                                           )  Tuesday, December 12, 2023
 5                                         )  9:00 o'clock a.m.
                                           )
 6                         TRANSCRIPT OF PROCEEDINGS
                     BEFORE THE HONORABLE IAIN D. JOHNSTON
 7
        APPEARANCES:
 8
        For the Plaintiffs:         COTCHETT PITRE & MCCARTHY LLP
 9                                  (840 Malcolm Road,
                                     Suite 200,
10                                   Burlingame, CA  94010) by
                                    MR. ADAM J. ZAPALA
11
                                    FOOTE MIELKE CHAVEZ & O'NEIL LLC
12                                  (10 West State Street,
                                     Suite 200,
13                                   Geneva, IL  60134) by
                                    MS. KATHLEEN CURRIE CHAVEZ
14                                  MR. ROBERT M. FOOTE

15                                  GUSTAFSON GLUEK PLLC
                                    (120 South Sixth Street,
16                                   Suite 2600,
                                     Minneapolis, MN  55402) by
17                                  MR. DANIEL C. HEDLUND

18                                  WEXLER BOLEY & ELGERSMA LLP
                                    (311 South Wacker Drive,
19                                   Suite 5450,
                                     Chicago, IL  60606) by
20                                  MR. KENNETH A. WEXLER

21                                  WILLIAMS MCCARTHY LLP
                                    (120 West State Street,
22                                   Rockford, IL  61105) by
                                    MR. MARC C. GRAVINO
23                                  MR. JOHN J. HOLEVAS

24

25
```

```
 1  For the Defendants:      JONES DAY
                             (901 Lakeside Avenue,
 2                            Cleveland, OH  44114) by
                             MR. COREY A. LEE
 3                           (325 John H. McConnell Boulevard,
                              Suite 600,
 4                            Columbus, OH  43215) by
                             MS. TIFFANY D. LIPSCOMB-JACKSON
 5                           (51 Louisiana Avenue N.W.,
                              Washington, DC  20001) by
 6                           MR. JOHN M. MAJORAS

 7  Court Reporter:          Heather M. Perkins-Reiva
                             327 South Church Street
 8                           Rockford, IL  61101
                             (779)772-8309
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1          THE CLERK:  Calling 22 CV 50188, *In re Deere &*
2  *Company Repair Services Antitrust Litigation*.
3          THE COURT:  Good morning, counsel.
4          I have spent a considerable amount of time trying to
5  figure out how to properly get appearances, so we are going to
6  try this way today.
7          So is Ms. Chavez on the line?
8          MS. CHAVEZ:  Yes, I am, Judge.  Good morning.
9          THE COURT:  All right.  How about Mr. Foote?
10         MR. FOOTE:  Yes, Your Honor.
11         THE COURT:  Mr. Hedlund?
12         MR. HEDLUND:  Yes, Your Honor.  Good morning.
13         THE COURT:  Good morning.
14         Mr. Wexler?
15         MR. FOOTE:  Mr. Wexler, Your Honor, I believe is on
16 his way to take depositions in this case.
17         THE COURT:  Okay.  All right.  Anybody else for the
18 plaintiff?  I tried my best.
19         MR. ZAPALA:  Good morning, Your Honor.  Adam Zapala
20 from Cotchett Pitre & McCarthy, on for the plaintiffs.
21         MR. WEXLER:  Your Honor, this is Ken Wexler.  I'm
22 sorry.  I had you on mute.
23         THE COURT:  That's all right.
24         MR. WEXLER:  But I'm here.
25         THE COURT:  All right.  So I got Mr. Zapala.

1            Anybody else for the plaintiff?
2            MR. HOLEVAS: Your Honor, Marc Gravino and John
3    Holevas are here.
4            THE COURT: Mr. Gravino and Mr. Holevas, good
5    morning.
6            MR. GRAVINO: Good morning.
7            MR. HOLEVAS: Good morning, Judge.
8            THE COURT: Anybody else for plaintiff?
9            Okay. All right. The easy one: For defendant?
10           MS. LIPSCOMB-JACKSON: Good morning, Your Honor.
11   Tiffany Lipscomb-Jackson, John Majoras, Corey Lee from Jones
12   Day on behalf of defendants.
13           THE COURT: Good morning.
14           Okay. I will start with the plaintiff. Tell me
15   whatever you want to tell me. I will hear from defendant.
16   And then I have got some questions. And then I have got an
17   issue to raise with you folks.
18           So on the plaintiff's side, whoever is going to
19   start, go ahead. Tell us who you are and get us up to speed.
20           MR. FOOTE: Thank you, Judge.
21           MR. ZAPALA: Sure. Adam Zapala, from Cotchett
22   Pitre & McCarthy, for the plaintiffs.
23           The parties have been hard at work, obviously meeting
24   and conferring about a wide variety of discovery issues, both
25   unstructured and structured data. The plaintiffs have also

1  propounded a number of third-party subpoenas to a variety of
2  nonparties to get evidence and information that will be
3  relevant to the case.
4         As you just heard from Mr. Hedlund, some preliminary
5  30(b)(6) depositions are occurring.  And, obviously, we now
6  have the benefit of Your Honor's order, so the parties have
7  been operating under that rubric.  And so the case is
8  proceeding at pace.
9         I did want to highlight one thing that I don't think
10 requires your attention today but may require your attention
11 in the coming weeks or months.  Given where we are in
12 discovery, given that we just received the order, we do think
13 that we will have to adjust the schedule.  There were some
14 assumptions, I think, made at the outset of the case about
15 discovery that have not proved entirely accurate.  We haven't
16 had a full chance to meet and confer with Deere about that
17 yet, but I did want to at least highlight it for the Court
18 that we think a schedule adjustment will be necessary.  So we
19 can come back to you after we have been able to sort of
20 discuss this with Deere in a more fulsome way.
21        I'm happy to answer any other additional questions,
22 but sort of writ large, that is where we are in the case.
23        THE COURT:  Okay.  Well, I don't know if you were
24 looking at my notes.  On the right side of my page, I have,
25 highlighted and underlined, "The deadline to amend the

1  complaint and to join parties passed on December 6th," and
2  then my handwritten notes, I say, "My bad in taking too long
3  for order on MJOP. Do I need to adjust these based on order,
4  affirmative defenses, or claims or parties?"
5  　　　　So I was curious about that. We can address that at
6  any time. You know, I will hear from both sides on that. I
7  bear the burden on that one. That's my fault on taking too
8  long. So if you need to adjust dates because I took long or
9  also because of anything I said in there -- you know, I don't
10 know if there will be -- I haven't looked at all the
11 affirmative defenses. If there is things that need to be
12 added, I will be glad to hear from the parties on that issue.
13 So we can talk about that.
14 　　　　All right. So thanks. That's helpful on the
15 plaintiff's side.
16 　　　　How about from defendant?
17 　　　　MR. LEE: Your Honor, Corey Lee with Jones Day.
18 　　　　I think Mr. Zapala accurately stated the parties are
19 working fairly cooperatively on meeting and conferring with
20 discovery issues, and we felt, like before, we will have
21 minimal, if any, number of issues that have to come before the
22 Court. As the plaintiff stated, there will be 30(b)(6)
23 depositions taking place in this matter over the next couple
24 of days.
25 　　　　One issue we did want to just note for the Court,

1  while we think it is going to be a nonissue, is that plaintiff
2  has stated an intent to use multiple questioners during the
3  deposition, and Deere is not objecting to that.  We understand
4  the plaintiff will be making sure that the questioners are
5  asking questions on separate and discrete topics, and as long
6  as that takes place, we don't expect there to be an issue with
7  that.  We just want to alert the Court a dispute is possible,
8  although we believe it to be unlikely given plaintiff's
9  representation that they will be having their questioners ask
10 questions on separate and discrete topics and not attempting
11 sort of tag-teaming or other sort of group questioning.
12             THE COURT:  Okay.  All right.  Yes, I mean, if they
13 are separate topics, that's fine; but if we are doubling up
14 and rapid firing from different people during questioning,
15 that's not going to be appropriate.
16             And I don't know if I raised this during sort of that
17 initial status:  If you need to, and this is up to the parties
18 to do this, sort of group -- the non-appropriate
19 term -- currently, non-appropriate term -- is "hot tubbing"
20 back in the day we would call it.  You would have, like, three
21 witnesses who respond to the 30(b)(6), and they would answer
22 what the question was depending on what they knew, instead of
23 you depose one person, and they say, "Ah, you know, here is
24 the best answer I can give you."  They have been prepped; they
25 did everything they could, but, you know, Mary Smith is

1 better. And then you have got to depose Mary Smith. And then
2 you have got to depose John Jones. If you had all three
3 together, you could be done in a quicker time. You don't have
4 to do it, but it is just something to think about.
5         But thanks for raising that, Mr. Lee. If it becomes
6 an issue, just let me know.
7         Anything else on the defendant's side?
8         MR. LEE: I don't think so, Your Honor. I think the
9 plaintiff very briefly highlighted for us that they might be
10 requesting some relief in the scheduling order, and we are
11 happy to meet and confer with them and come to an agreement if
12 we can.
13         THE COURT: Okay. Yes, talk among yourselves. If
14 you get an agreement, that's fine. Again, it's my fault. So
15 I will adjust it, but I want to hear from both sides. If you
16 can agree, great, I will adjust accordingly; if you can't, we
17 can talk about it at a status, or simply file a motion, and I
18 will take a look at it, and we will talk after that, okay?
19         MR. ZAPALA: That sounds good, Your Honor. Thank
20 you.
21         THE COURT: All right. As to -- I know there have
22 been -- from the status reports, which have been helpful, it's
23 my understanding there have been multiple meet and confers,
24 and you folks were working through that. I know there was
25 some sampling. We talked about that a couple times. Just so

1 you know, I don't want you folks stuck in meet-and-confer
2 purgatory.  If at some point you reach an impasse, you can
3 bring me an issue.  That's what I'm here for.  So I'm
4 happy -- it is great you are working things out through meet
5 and confer -- but don't think you need to be stuck there
6 forever.  That shouldn't be happening.
7             MR. LEE:  Your Honor, Corey Lee for John Deere.
8             I think not only have the parties been meeting and
9 conferring, but there has been actual agreements to produce
10 some documents and document production taking place.  So it is
11 not just continued meet and confers, but actually progress is
12 being made.
13             THE COURT:  That is fantastic to hear.  I appreciate
14 that.  That's good.
15             MR. HEDLUND:  Yes, Judge.  Dan Hedlund.
16             I would agree.  I have been speaking with Mr. Lee
17 about that, and we have been making progress, and as I think
18 we indicated in our last report, we are hopeful that we will
19 get a little more clarity from our view, at least from the
20 30(b)(6)s, that should allow us to either sort of move beyond
21 this issue or bring it to your attention.  So I appreciate
22 your patience.
23             THE COURT:  Okay.  Thanks.  I appreciate that.
24             All right.  Anything else from the parties to get me
25 up to speed on before I raise an issue?

1    MR. ZAPALA: Not presently, Your Honor, from the
2 plaintiffs. Thank you.
3    THE COURT: All right. So this issue has come to my
4 attention relatively recently -- part of it has come to my
5 attention relatively recently.
6    There is an individual named Vince Maloney.
7 Technically, he is Charles Vincent Maloney. He goes sometimes
8 by C. Vince/Vincent Maloney. I don't know if he is still at
9 Perkins Coie. He has been a friend for more than 20 years.
10 We were partners at Altheimer & Gray together. He has done
11 pro bono cases for me since I have been a judge. He played
12 the bagpipes at my investiture. There has been a lot of late
13 nights between the two of us together. He's a good friend.
14    His father was Bill Maloney, William Maloney/Bill
15 Maloney, who owned the Neff Company Deere dealership down in
16 Avon, Illinois. Avon is -- I think is directly south of
17 Galesburg, maybe 30, 40 miles south of Galesburg. And Bill
18 Maloney passed away, I want to say, the summer sometime, and I
19 am not sure what is going to happen with that dealership. I
20 know Vince has plenty of siblings. I don't talk to Vince
21 about work. I haven't talked to him about this case.
22    I don't see a conflict of any kind because I don't
23 know of one, but I don't know all the facts. And I have got
24 no issues right now, but I will say, and the parties will know
25 this better than I do at this point, if Vince becomes a party,

1  it is going to be a real problem, or if the dealership becomes
2  a party, it may be a problem.  If he's a witness in front of
3  me, it is going to be an issue, or even if he is deposed.  I
4  don't see that happening, but I just wanted to raise it so
5  that if it becomes an issue, somebody lets me know as soon as
6  possible, okay?
7         Again, I haven't talked to him about this case.  I
8  knew his dad owned -- it's what I would think is a bigger
9  dealership.  He also farmed.  I think somebody told me they
10 had, like, 5,000 acres down there, which I consider a decent
11 size farm.
12        So I just raise that.  Hopefully, it doesn't become
13 an issue.  But I just wanted to raise that so the parties knew
14 what I had learned.  Despite what some unhinged pro se
15 attorneys say, I try to disclose as best I can any potential
16 conflicts way ahead, in advance.
17        So, again, I don't think it's a problem.  I'm just
18 raising it so that if it can be avoided, let's avoid it, okay?
19             MR. ZAPALA:  Sounds good, Your Honor.
20             MR. LEE:  Yes.
21             MR. ZAPALA:  Go ahead.  Sorry.
22             MR. MAJORAS:  Your Honor, John Majoras for Deere.
23        We will, obviously, talk to our client about this,
24 but we do appreciate you raising it and flagging that
25 information up front.  If we have any issue, of course we will

```
 1  take it back to you.
 2          THE COURT:  Okay.  And, again, it is Neff, N-e-f-f,
 3  Company.  It is down in Avon, Illinois.
 4          MR. HEDLUND:  Okay.  I was just going to -- thank you
 5  for clarifying that.  I just wanted to get that name.  We have
 6  served some subpoenas on dealerships, but off the top of my
 7  head, I don't recognize that one.
 8          THE COURT:  Okay.
 9          MR. HEDLUND:  Sorry.  Dan Hedlund.
10          THE COURT:  That's all I have.  Anything else to talk
11  about?
12          MR. HEDLUND:  A small point, Judge, and I hope you
13  don't think it is too far afield, but I have got to say it's
14  the first time I have ever seen Led Zeppelin quoted in an
15  opinion, and that was good.
16          THE COURT:  Well, I don't know if it is too
17  well known -- maybe Mr. Gravino and Mr. Holevas know -- I do
18  have a goal of quoting every song off of Led Zeppelin IV in my
19  career.  Surprisingly, the easy one was *Going to California*.
20  *Black Dog* wasn't hard.  *Battle of Evermore* will be very
21  difficult to incorporate.
22          MR. HEDLUND:  That's good.  That's good.
23          THE COURT:  All right.  Thanks, everybody.  Have a
24  great holiday, and let me know if you need my help.
25          MR. GRAVINO:  Thank you, Judge.
```

1        MS. CHAVEZ:  Thank you, Your Honor.

2        MR. HEDLUND:  Thank you, Your Honor.

3        THE COURT:  Have a good day.

4   (Which were all the proceedings heard.)

5                     CERTIFICATE

6   I certify that the foregoing is a correct transcript from

7   the record of proceedings in the above-entitled matter.

8   */s/Heather M. Perkins-Reiva            December 15, 2023*

9   _____        _____
    Heather M. Perkins-Reiva                    Date
10  Official Court Reporter