UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| IN RE: DEERE & COMPANY REPAIR SERVICES ANTITRUST LITIGATION | Case No.: 3:22-cv-50188 <br><br> Hon. Iain D. Johnston |
| THIS DOCUMENT RELATES TO: ALL CASES | |

PLAINTIFFS' MOTION AND MEMORANDUM OF LAW TO MODIFY
DEADLINES IN THE CASE MANAGEMENT ORDER

Plaintiffs, by and through their undersigned counsel, respectfully request a six (6) month extension of the remaining deadlines in the Court's January 10, 2023 Case Management Order No. 2, ECF No. 109 (the "Scheduling Order"). Plaintiffs move pursuant to Federal Rule of Civil Procedure 16(b)(4) for an order modifying the remaining dates and deadlines in in the Scheduling Order to enable Plaintiffs to complete essential party and third-party discovery and to allow Plaintiffs' experts adequate time to analyze and review structured data productions and complete their economic analysis and reports. In Support of this Motion, Plaintiffs state as follows:

I. **INTRODUCTION**

Deere is attempting to run the clock out on Plaintiffs and deny their experts the time needed to discover and analyze critical structured data concerning Deere and authorized dealer pricing for parts and repair services that is critically important to establishing classwide damages and antitrust liability. Plaintiffs have diligently pursued all discovery, including their requests for key structured data, and have efficiently and effectively litigated their claims. Specifically, as described *infra* in Section III. A., Plaintiffs have worked for well over a full year to secure the structured data requested in their First Set of Requests for Production. Despite dozens of meet and confer calls and related correspondence, Deere has failed to produce much of the structured data requested and

1

required by Plaintiffs and their experts. Deere's failure to produce much of the requested structured data has been based on its claim that only authorized John Deere dealers ("Dealers") could produce that data and that Plaintiffs would have to subpoena each Dealer to secure this essential information. As it turned out, Deere has physical possession of this data on its EQUIP system, but claimed that third party discovery was necessary because production required Dealer authorization. While Plaintiffs served those scores of subpoenas in early August of last year, the resulting meet and confer discussions with the dealers aimed at yielding this structured data continued into last month—some five months after the subpoenas were served—and the expected productions have required Deere to process, collect, and provide the requested data to its Dealers because it resides on Deere's proprietary system and Deere has possession of it. Deere's failure to timely produce this data and the resulting marathon meet and confer discussions with its Dealers have made it impossible for Plaintiffs to meet the deadlines in the current Scheduling Order and the parties have been unable to reach agreement on the number of months needed to extend the current deadlines. Because Plaintiffs' experts need six-months *at a minimum* to analyze the eventual structured data productions and prepare their expert reports, Plaintiffs respectfully request a six-month extension of all remaining deadlines in the current Scheduling Order.

## II. LEGAL STANDARD

District Courts exercise substantial discretion over managing their cases to ensure compliance with deadlines. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). *See also Ohio-Sealy Mattress Mfg. Co. v. Duncan,* 95 F.R.D. 99, 100 (N.D. Ill. 1982) ("[C]ourts enjoy broad discretionary powers over the conduct of pre-trial discovery and both courts and commentators have recognized that active judicial management and control over the pre-trial process is essential in complex antitrust cases . . .") (citations omitted)).

A case schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In determining whether good cause exists, the primary consideration for the district court is the diligence of the party seeking to amend. *Trustmark Ins. Co. v. Gen & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005).

### III. ARGUMENT

#### A. Plaintiffs Have Diligently Pursued Discovery

The requested six-month extension is fully supported by Plaintiffs' consistent diligence in pursuing discovery. The Court entered the current Scheduling Order on January 10, 2023. Plaintiffs served their First Set of Requests for Production ("RFPs") on Deere on February 13, 2023. Hedlund Decl., Ex. A. After Deere served its Responses and Objections to Plaintiffs' First Set of RFPs on March 15, 2023, Plaintiffs promptly drafted and sent a letter to Deere addressing the deficiencies in Deere's Responses and Objections. Hedlund Decl., Ex B. The parties then met and conferred by video conference call a total of *seven times* over the following six weeks[1] regarding Plaintiffs First Set of RFPs and exchanged a significant number of correspondence and emails to resolve and narrow the discovery disputes raised by Deere, which culminated in Plaintiffs filing a motion to compel on certain of Plaintiffs' RFPs on May 18, 2023. ECF No. 133. Notably, Deere objected to Plaintiffs' First Set of RFPs that sought structured data on the basis that Deere lacked possession, custody, or control of the data and stated that the data might be in the possession of Deere's independent authorized dealers. *See e.g.*, Deere's R&Os to Plaintiffs First Set of RFPs, Hedlund Decl., Ex. B at 28.

Accordingly, in early August of last year, Plaintiffs served document subpoenas on over twenty authorized Deere Dealers. Hedlund Decl. ¶6. The Dealers subpoenaed by Plaintiffs

---

[1] Plaintiffs and Deere met and conferred concerning Plaintiffs First Set of RFPs on April 7, 2023, April 11, 2023, April 13, 2023, April 14, 2023, April 20, 2023, May 2, 2023, and May 9, 2023. Hedlund Decl. ¶5.

collectively operate over 700 authorized dealership locations throughout the country. *See* CCAC ¶54; ECF No. 85. Critically, because of Deere's avowed lack of possession, custody, and control over the structured data requested in Plaintiffs First Set of RFPs, Plaintiffs were forced to serve the Dealers with subpoenas that contain twenty-six requests for structured data - all of which is required to support class certification, establish classwide impact and damages, and to prove Plaintiffs' antitrust claims. On September 29, 2023, Plaintiffs served their Second Set of RFPs, which requested, among other things, all of the structured data requested in Plaintiffs' subpoena to the Dealers. Hedlund Decl., Ex. C.[2]

By October 2023, a significant number of subpoenaed Dealers served their Responses and Objections, and Plaintiffs immediately began meeting and conferring with them. Hedlund Decl. ¶9. The Dealers objected to Plaintiffs' structured data requests on various bases including that they employ the "EQUIP Business System licensed through and administered by John Deere Information Systems, in the operation of [their businesses]. Much if not all, of the information sought is available through the EQUIP systems that is maintained or available to Deere." *See e.g.*, Hutson Inc.'s Responses and Objections to Plaintiffs' Subpoena; Hedlund Decl., Ex. D at 3-4. In other words, the Dealers objected to the structured data and other documents requests based on the view that Plaintiffs should get it all from Deere rather than from them.[3]

---

[2] Plaintiffs met and conferred with Deere concerning their Second set of RFPs on December 12, 2023, January 10, 2024 and February 1, 2024. Hedlund Decl. ¶8. Plaintiffs also drafted and sent Deere correspondence addressing their Second Set of RFPs on February 7, 2024. *Id.* During a meet and confer telephonic conference held on February 22, 2024, Deere's counsel informed Plaintiffs' counsel that they were still working on a response to Plaintiffs' February 7, 2024 letter regarding the Second Set of RFPs. *Id.* The ongoing, and as yet unresolved, meet-and-confer process regarding the Second Set of RFPs adds more support for Plaintiffs' request herein.

[3] Relatedly, the Dealers also objected to Plaintiffs' non-structured data requests by refusing to produce any correspondence or documents shared with Deere until after Deere completes its production and Plaintiffs complete their review.

On October 12, 2023, Plaintiffs' counsel notified Deere's counsel that "[s]ome of the dealers that we have subpoenaed have responded that we should go to Deere to get certain data we requested that is stored on EQUIP because Deere is a party and it will be a lesser burden on them." Hedlund Decl., Ex. E. On October 16, 2023, Deere stated its position that the information contained in EQUIP is not within Deere's possession, custody, or control:

> It is John Deere's position that the independent authorized John Deere dealers' information in the EQUIP System is not in John Deere's possession, custody, or control as defined by Federal Rule of Civil Procedure 34 and the case law explaining this rule. As we have explained before, the EQUIP System is an operating system used by independent authorized John Deere dealers to connect with the John Deere Network and exchange all information related to dealer business, including ordering, sales and support of goods and dealer financial performance. Like a provider such as Salesforce, John Deere does not control dealer information, nor does it have the right to produce the independent authorized John Deere dealers' information in the EQUIP System in response to a request for production.

*Id.* at Ex. F.

On October 16, 2023, Deere noted that "[i]f an independent authorized John Deere dealer is unable to produce requested data on its own and provides John Deere with authorization, John Deere will work with the dealer in order for the dealer to produce its own data." *Id*. To that end, on November 7, 2023, Deere proposed to assist its authorized dealers with the extraction and production of the structured data housed on EQUIP:

> As we discussed, John Deere is willing to work with the authorized dealers that Plaintiffs have subpoenaed by providing support so that the dealers can produce their information from EQUIP. We believe that it will likely take 6-8 weeks for John Deere to analyze the relevant datasets and write scripts to be able to pull dealer data from EQUIP. John Deere would charge the subpoenaed dealers for the costs associated with providing the dealers their data. While this proposal has been discussed with Greg Whiston at a high level, there is no agreement between the dealers and John Deere.

*Id.* at Ex. G.

5

Thereafter, Plaintiffs pressed Deere on whether it reached an agreement with its Dealers to produce their structured data and to also understand which of the requested data categories requested reside on EQUIP. Plaintiffs did so on December 5, 2023, December 19, 2023, January 4, 2024, January 7, 2024, and on a number of other occasions. *Id.* at Ex. H.

Plaintiffs raised the issue of adjusting the Scheduling Order in light of the discovery issues during the December 12, 2023 status conference. *See* December 12, 2023 Transcript. At 5:9-20; Hedlund Decl., Ex. I:

> I did want to highlight one thing that I don't think requires your attention today but may require your attention in the coming weeks or months. Given where we are in discovery, given that we just received the order, we do think that we will have to adjust the schedule. There were some assumptions, I think, made at the outset of the case about discovery that have not proved entirely accurate. We haven't had a full chance to meet and confer with Deere about that yet, but I did want to at least highlight it for the Court that we think a schedule adjustment will be necessary. So we can come back to you after we have been able to sort of discuss this with Deere in a more fulsome way.

In response, The Court noted that it was amenable to adjusting the Scheduling Order:

> Okay. Yes, talk among yourselves. If you get an agreement, that's fine. Again, it's my fault. So I will adjust it, but I want to hear from both sides. If you can agree, great, I will adjust accordingly; if you can't, we can talk about it at a status, or simply file a motion, and I will take a look at it, and we will talk after that, okay?

*Id.* at 8:13-20.

### B. Plaintiffs have Diligently Pursued a Joint Schedule Extension with Deere

On January 7, 2024, Deere advised Plaintiffs that it had reached an agreement with sixteen Dealers to extract and produce their structured data housed on EQUIP. Hedlund Decl., Ex. J at 1. On January 10, 2024, Plaintiffs met and conferred with Deere concerning the status of Deere's agreement to assist with its Dealers' structured data productions and the impact of the process on the current Scheduling Order. Deere informed Plaintiffs that it would take anywhere between

seven to ten weeks to write the necessary scripts to pull the data from EQUIP and additional time on top of the script writing process to conduct quality control and review the data sets before production. *Id*. at ¶ 17. At that time and since then, Plaintiffs have consistently made clear that their experts would need, *at a minimum*, six months to analyze the structured data productions and produce their corresponding economic analyses. *See* Plaintiffs' January 22, 2024 Letter to Deere ("Please confirm that Deere has already begun or is undertaking the extraction process. Time is of the essence because, as we have discussed at length, it will take our experts a significant amount of time to analyze the full data set and that will require a significant extension of the current case schedule."). Hedlund Decl. at Ex. K.

Accordingly, on January 25, 2024, Plaintiffs proposed a six-month extension to the current Scheduling Order *Id.* at Ex. L. Plaintiffs followed-up on their request on January 29, 2024, and thereafter, on January 31, 2024, Deere countered by proposing a three-month extension without providing any basis for why it believed three months was an appropriate modification to the Scheduling Order. *Id.* at Ex. M. The parties met and conferred on February 6, 2024, during the meet and confer, Deere's sole basis for its proposed three-month extension was that the less time spent on its discovery obligations equated to less interference to Deere's business. Hedlund Decl. ¶21. Plaintiffs again followed-up concerning Deere's response to Plaintiffs' proposed six-month extension on February 9, 2024. *Id*. at Ex. N.

On February 13, 2024, Deere informed Plaintiffs that it would agree only to a 4-month extension. *Id*. at Ex. O. Plaintiffs responded that same day and again reiterated that their experts require a minimum of six-months with the complete data set to prepare their reports, and that the parties had reached an impasse:

7

> It appears the parties are now at an impasse regarding extending the pre-trial schedule—Deere now proposes four months and Plaintiffs need a minimum of six months.
>
> As we have made clear throughout our meet and confer discussions, Plaintiffs require a minimum of six additional months, in part, because of the substantial delays collecting and producing the structured data and other information our experts require to conduct and complete their work and analyses. This delay is the result of Deere declining to produce this data in response to Plaintiffs' initial RFPs last Spring in favor of requiring Plaintiffs to subpoena the data from Deere's authorized dealers, which Plaintiffs did last Summer. As you know, since then, we have spent many months meeting and conferring with the dealers and Deere to come to an agreement to discover this required data, which Deere has physical possession of in its EQUIP database. It now appears clear that the dealers are still months away from producing this data, which is being processed, collected and provided to them by Deere.
>
> Absent Deere agreeing to the six month extension we require by COB tomorrow, Plaintiffs will move the Court to modify the pretrial schedule.

*Id*.

The following day, on February 14, 2024, Deere stated that it believed that a "four month extension to the schedule is sufficient for EQUIP data to be produced and for experts to analyze it in preparation [for] expert reports." *Id*. Again, Deere's only basis for offering to agree to less time than the minimum required by Plaintiffs was that less time working on discovery means less interference with Deere's business operations. Hedlund Decl. ¶21.

### C. Good Cause Exists to Modify the Scheduling Order

Under the current Scheduling Order, the deadline for Plaintiffs to serve their class certification expert reports is May 22, 2024. Because the structured data is nowhere near being produced, it would be impossible for Plaintiffs to discover the full data set requested—which will likely required additional meet and confer discussions and correspondence--and thereafter for their experts to process and analyze the data and prepare their reports. According to Deere, the extraction process for the structured data housed on EQUIP will take between seven to ten weeks. Furthermore, a number of the Dealers do not use EQUIP to store their structured data and are not

8

parties to Deere's agreement to assist Dealers with EQUIP with the extraction and production of their responsive structured data. Plaintiffs are separately negotiating with those Dealers, there is no set timeline on when they will produce their structured data, and it appears Deere will not assist those Dealers with production of their structured data.

Deere's proposed four-month extension is simply unworkable for Plaintiffs and their experts. Deere advised on January 24, 2024 that Deere "has already begun the process that is required to extract the data on behalf of the authorized dealers." *Id.* at Ex. P. Even assuming for the sake of argument that the query and extraction process only takes Deere seven weeks from January 24, 2024, and Deere only spends an unlikely one-week on internal review and quality control of the data, the data will then have to be reviewed by counsel for the various dealers before it is all produced to Plaintiffs. Thereafter, once produced, understood, and analyzed, there will likely be a resulting need to engage in further discussions with the Dealers and possibly Deere to address any remaining questions and deficiencies. Plaintiffs' experts require six months from having a complete data set to analyze and review the required data and draft their reports and it appears likely that they will not have this critical information for at least several more months. That would leave precious little time—if any at all—for Plaintiffs and their experts to understand and incorporate the data into their expert analysis and reports currently due in May. Put simply, Plaintiffs require a six-month extension to the remaining deadlines in the Scheduling Order in order to fairly and effectively prosecute their case. In contrast to Deere's four-month proposal, Plaintiffs proposed six-month extension builds in time for Plaintiffs to meet and confer with Deere concerning remaining questions and possible deficiencies in structured data productions.

9

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court enter Plaintiffs' Proposed Case Management Order No. 3, which extends all remaining deadlines in the Scheduling Order by six (6) months, as well as any other relief that the Court deems just and proper. In accordance with the Court's Case Procedures, Plaintiffs' Proposed Cases Management Order No. 3 is attached hereto as **Exhibit A** to this Motion. *See* Judge Johnston Case Procedures, Proposed Orders (requiring Proposed Case Management Orders to be filed with the Court).

Dated: February 27, 2023

Respectfully submitted,

By: */s/ Adam J. Zapala*
Adam J. Zapala
Elizabeth T. Castillo
James G. Dallal
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
jdallal@cpmlegal.com

Alexander E. Barnett
**COTCHETT, PITRE & McCARTHY, LLP**
40 Worth Street, Suite 602
New York, NY 10013
Telephone: (212) 201-6820
Facsimile: (917) 398-7753
abarnett@cpmlegal.com

By: */s/ Kenneth A. Wexler*
Kenneth A. Wexler
Justin N. Boley
Tyler J. Story
**WEXLER BOLEY & ELGERSMA LLP**
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
kaw@wbe-llp.com
jnb@wbe-llp.com
tjs@wbe-llp.com

By: */s/ Daniel C. Hedlund*
Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Kaitlyn L. Dennis
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
kdennis@gustafsongluek.com

Dennis Stewart
**GUSTAFSON GLUEK PLLC**
600 W. Broadway, Suite 3300
San Diego, CA 92101
dstewart@gustafsongluek.com

*Interim Co-Lead Counsel for Plaintiffs*

Robert Foote, Esq. (3124325)
Kathleen C. Chavez, Esq. (6255735)
**FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC**
10 W. State Steet, Suite 200
Geneva, IL 60134
kcc@fmcolaw.com
rmf@fmcolaw.com
*Interim Liaison Counsel for Plaintiffs*

Marc C. Gravino (6188531)
**WILLIAMS MCCARTHY LLP**
P.O. Box 219
Rockford, IL 61105
(815) 987-8936
mgravino@wilmac.com

*Interim Local Facilitating Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on February 27, 2024 the foregoing was filed electronically using the CM/ECF System. Notice of this filing will be sent to all parties in this case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Daniel Hedlund*
Daniel Hedlund

*Counsel for Plaintiffs*
