```
 1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                              WESTERN DIVISION

 3   IN RE:  DEERE & COMPANY REPAIR    )  Docket No. 22 CV 50188
     SERVICES ANTITRUST LITIGATION     )
 4                                      )  Rockford, Illinois
                                        )  Thursday, April 4, 2024
 5                                      )  9:30 o'clock a.m.
                                        )
 6                       TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE IAIN D. JOHNSTON
 7
     APPEARANCES:
 8
     For the Plaintiffs:        COTCHETT PITRE & MCCARTHY LLP
 9                              (40 Worth Street,
                                 Suite 602,
10                               New York, NY  10013) by
                                MR. ALEXANDER E. BARNETT
11
                                FOOTE MIELKE CHAVEZ & O'NEIL LLC
12                              (1541 East Fabyan Parkway,
                                 Suite 101,
13                               Geneva, IL  60134) by
                                MR. ROBERT M. FOOTE
14
                                GUSTAFSON GLUEK PLLC
15                              (120 South Sixth Street,
                                 Suite 2600,
16                               Minneapolis, MN  55402) by
                                MR. DANIEL C. HEDLUND
17
                                WEXLER BOLEY & ELGERSMA LLP
18                              (311 South Wacker Drive,
                                 Suite 5450,
19                               Chicago, IL  60606) by
                                MR. KENNETH A. WEXLER
20
                                WILLIAMS MCCARTHY LLP
21                              (120 West State Street,
                                 Rockford, IL  61105) by
22                              MR. MARC C. GRAVINO
                                MR. JOHN J. HOLEVAS
23

24

25
```

```
 1   For the Defendants:        JONES DAY
                                (901 Lakeside Avenue East,
 2                               Cleveland, OH  44114) by
                                MR. COREY A. LEE
 3                              (325 John H. McConnell Boulevard,
                                 Suite 600,
 4                               Columbus, OH  43215) by
                                MS. TIFFANY D. LIPSCOMB-JACKSON
 5                              (51 Louisiana Avenue N.W.,
                                 Washington, DC  20001) by
 6                              MR. JOHN M. MAJORAS

 7   Court Reporter:           Heather M. Perkins-Reiva
                               327 South Church Street
 8                             Rockford, IL  61101
                               (779)772-8309
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE CLERK:  Calling 22 CV 50188, Deere & Company
 2   Repair Services Antitrust Litigation.
 3              THE COURT:  Good morning, counsel.
 4              Can I get appearances for the record?  Let's start
 5   with the plaintiffs.
 6              I'm going to try to do this in an orderly fashion.
 7   We will see how it works.
 8              Mr. Foote, are you on the phone?
 9              MR. FOOTE:  Yes, I am, Judge.
10              THE COURT:  All right.  Mr. Hedlund?
11              MR. HEDLUND:  Yes, Your Honor.  Good morning.
12              THE COURT:  Good morning.
13              Mr. Gravino?
14              MR. GRAVINO:  Yes.  Good morning, Your Honor.  Here
15   with Mr. Holevas as well.
16              THE COURT:  Good morning, Mr. Gravino.
17              Good morning, Mr. Holevas.
18              Anybody else for plaintiffs?
19              MR. WEXLER:  Ken Wexler, Your Honor.  Good morning.
20              THE COURT:  There we go.
21              Hold on one second.
22              Where did you go?  You are on this sheet somewhere.
23              There you are.  Okay.  Good morning, Mr. Wexler.
24              MR. BARNETT:  And, Your Honor, this is Alex Barnett.
25   Good morning.
```

 1            THE COURT:  Okay.  Got it.

 2            All right.  I heard Mr. Barnett, and then I don't

 3    know if I heard someone else trying to speak at the same time.

 4            MR. WEXLER:  I don't think so.

 5            THE COURT:  All right.  I think that's everybody.  It

 6    sounds like everybody for plaintiff.

 7            All right.  For defendant?

 8            We've got Mr. Lee?

 9            MS. LIPSCOMB-JACKSON:  Good morning, Your Honor.

10    Tiffany Lipscomb-Jackson on behalf of defendants, and I'm

11    joined by John Majoras and Corey Lee.

12            THE COURT:  All right.  Thank you very much.

13            Let me hear from the plaintiffs' side, and then I

14    will hear from Deere.

15            MR. FOOTE:  Thank you, Judge.  Robert Foote.

16            First of all, thank you for the extension.  We are

17    really working to make that fit into the schedule, working

18    with defendants to make sure we get all the dates right.

19            On specifics, I'm going to turn this over, if it is

20    all right with Your Honor, to Mr. Ken Wexler, who has been

21    working on giving you a very detailed status report.

22            THE COURT:  Okay.  Hold on one second so I can take

23    long notes on a detailed status report.

24            Go ahead.  Go ahead, Mr. Wexler.

25            MR. WEXLER:  Your Honor, it is not that detailed, but

1    it is not as short as the Gettysburg Address.  I will do my

2    best.

3         Specifically, we have taken a handful of 30(b)(6)

4    depositions of John Deere.  They have started to take some

5    30(b)(6) depositions of the plaintiffs.  I think they have

6    taken two so far.

7         With respect to the ones we have taken, we have met

8    and conferred on our request for substitute witnesses on a

9    couple of topics.  We have sort of reached an impasse, but we

10   are going to wait and see on some data that has been promised

11   and analyses before deciding whether to bring a motion.

12        THE COURT:  Okay.

13        MR. WEXLER:  We are also holding back with respect to

14   moving to compel deps of witnesses on the memorandum of

15   understanding that came out in January of 2023 pending an

16   analysis of documents from the farm bureau and perhaps some

17   depositions there as well.

18        With respect to the depositions of our plaintiffs, we

19   have had a couple of hiccups on document production, but we

20   are working feverishly to get those resolved.  We do not want

21   to come back before Your Honor and ask for more time.

22        One of the issues that we are facing with respect to

23   the rest of discovery is the production of structured and

24   unstructured data from John Deere has been moving very, very

25   slowly.  We served a bunch of third-party subpoenas on

1    dealers, which John Deere is collecting the data through their

2    dealers through what's called an EQUIP data effect, and it is

3    taking a long time.

4              So we are a little bit concerned of how slowly the

5    production is taking place.  We would hope that by the next

6    status conference on June 13th, we are finished, we have what

7    we need, but I wanted to give Your Honor a heads up.

8              With respect to the sampling, as Your Honor had

9    suggested previously, we still don't have a resolution on

10   whether it is sufficient because we don't have the data yet.

11   We can't make the judgment.

12             Privilege log, we have not yet agreed on the contents

13   of a privilege log.  John Deere has produced one.  We have

14   some problems with it.  They may have to revise it anyways

15   once we agree on the content.  But we have issues.  There is a

16   bunch of common-interest privileges asserted that we can't

17   tell from the entries whether or not it applies or why it

18   would apply.  We need to work that through.

19             THE COURT:  Did you say "common-interest privilege"?

20             MR. WEXLER:  Yes.  There is common interest asserted

21   with several manufacturers.

22             And then there is a variety of technical issues that

23   we're having.  John Deere has made available certain software,

24   but in terms of its functionality for our purposes and our

25   ability to understand it, we are having terrible problems.

1    But, again, it is something we are working through, and we are

2    working through as quickly as we can because, as I said, we

3    don't want to ask for more time.  But it's an issue right now.

4            And outside of that, I can't think of -- that's about

5    all the detail I have got.

6            THE COURT:  Okay.  I have got some follow-up

7    questions.  Thank you.  I have got some follow-up questions,

8    and they are in no particular order.

9            And then, obviously, I would like to hear from Deere

10   on all these issues, whatever they want to tell me, and then

11   they can add or respond to any of my follow-up questions.

12           As to the depositions of plaintiffs, you said a

13   couple.  I think you said two.  Is that right?

14           MR. WEXLER:  Yes.

15           THE COURT:  There was some document issues.  One of

16   my former partners had a good phrase.  He would call it a

17   "document snag."  So you would be in a deposition.  You would

18   be on hour three.  You would be talking about a subject.  Then

19   the witness, despite counsel's best efforts in making sure

20   everything was produced, would say, "Oh, yeah, I got a

21   letter," or "No, there is a memo," "No, I sent this guy an

22   email," and then you look at your deponent and you want to

23   kill him, not because of anything you have done or haven't

24   done.  But obviously the other side says, "I haven't seen

25   that.  What are you talking about?"  And then they drill down

1    in the deposition, and then you either have to recall the

2    witness or you continue the deposition.

3         Is it something like that, a document snag?

4         MR. FOOTE:  Your Honor, it was much more -- I will

5    speak, if you don't mind, Ken.

6         MR. WEXLER:  No, go ahead.

7         MR. FOOTE:  We realized three days before the dep of

8    Plum Ridge that there were certain emails that our vendor had

9    missed.  So I called Corey Lee right away and gave him the

10   option, you know, go ahead with the deposition or do you want

11   to wait, and we worked it out, and we will get the emails

12   together as fast as possible.  Corey left the deposition open.

13   That's what happened, for example, with missing documents.

14        THE COURT:  Okay.  All right.  That's better than in

15   the middle of a dep when it comes up.  So, okay, that's good.

16   All right.  So that was one of my questions.  That's helpful.

17        MR. WEXLER:  Yes.  In this instance, Your

18   Honor -- this is Ken Wexler again -- we just want to kill the

19   vendor, not the client.

20        THE COURT:  Okay.

21        MR. WEXLER:  But understood.

22        THE COURT:  All right.  So it sounds like there will

23   be -- and this, maybe, is a better question for Deere.  It

24   sounds like there will be some -- well, does anybody want to

25   chime in on this, at some point, on the plaintiffs' side?  It

1    sounds like there will be some depositions, once documents are

2    collected, regarding the memorandum of understanding with the

3    farm bureau; is that right?

4         MR. WEXLER:  Yes, Your Honor.  Ken Wexler again.

5         We took a 30(b)(6) on the topic.  That's one of the

6    issues that we are having.  We were very unhappy with the

7    witness' preparation.  We have met and conferred on the issue.

8    I think we have gone as far as we can with it, and we are

9    going to pursue a different avenue, at least temporarily, to

10   see if we can get some --

11        THE REPORTER:  Judge, he's breaking up.

12        THE COURT:  You are breaking up on us a little bit.

13        MR. WEXLER:  Sorry.

14        Also, in addition to the farm bureau, the AEM, the

15   Association of Equipment Manufacturers, which was negotiating

16   a similar MOU back in 2017 and before.  So we are trying to

17   track it down, without coming to the Court for help, and if we

18   can, we will.

19        THE COURT:  Okay.  Any depositions of people from the

20   farm bureau?

21        MR. WEXLER:  Not yet.  We have not taken them yet.

22   It's in the queue.

23        THE COURT:  Okay.  Yes, I mean, that might be a way

24   to get the information you are looking for if Deere is having

25   problems tracking things down.  The farm bureau, you would

1   think, would likewise have a similar -- not a complete overlap

2   of documents, but similar documents.

3          Okay.  That's helpful.

4          So plaintiffs sent subpoenas to dealers to get

5   information, but Deere is the entity that's collecting the

6   data in response to the subpoenas; is that right?

7          MR. WEXLER:  Apparently -- well, I will let Deere

8   respond to that in terms of the technical aspect.

9          THE COURT:  Okay.  I will talk to Deere about that

10  one.

11         Privilege logs, whoever thought it would be as

12  exciting and as hot a topic as it is today.  I thought we had

13  passed the privilege log issues, but, boy, that thing has come

14  to life.

15         Is it a document by document, categorical privilege

16  log, a combination of the two?  What are you seeing in the

17  privilege log?

18         MR. WEXLER:  Well, what we have seen -- I mean, it is

19  document by document, and there have been documents clawed

20  back through the privilege log.

21         THE COURT:  Okay.

22         MR. WEXLER:  But, again, the parties have not really

23  agreed to the content of the privilege log, and we can't tell

24  from certain -- you know, this is -- I'm sure Your Honor is

25  more familiar with this than me, but it is sort of an age-old

1    problem with not being able to tell why the privilege is being

2    asserted in certain circumstances.  So we have to work that

3    through.

4            THE COURT:  Okay.  All right.  Hold on one second.

5            I apologize.  My computer is not opening up a program

6    that I am begging it to open.

7            Hold on one second.

8            All right.  Thank you.  That's helpful.

9            All right.  From Deere's perspective, tell me

10   whatever you want to tell me, and if you want to chime in on

11   any of the issues that Mr. Wexler has raised or follow up on

12   any of the questions that I have raised, feel free.

13           MR. LEE:  Your Honor, this is Corey Lee on behalf of

14   Deere, and I will be addressing all these issues, and I will

15   try to kind of track the order that Mr. Wexler raised so there

16   is some consistency in how the Court is looking at the issues.

17           So first on the Deere 30(b)(6) issues, Mr. Wexler

18   raised an issue around the MOU and raised it as an issue of

19   preparation.  The deponent that provided the testimony, he was

20   the person who actually negotiated it.  So this is not an

21   instance in which someone was educated to provide testimony.

22   It is the actual person who negotiated the MOU.  I think

23   plaintiffs are a bit unhappy because they felt there was some

24   link between the AEM MOU and the American Farm Bureau's MOU,

25   which I think factually, from their side, I think they are

1    going to explore those avenues elsewhere.

2            But just so the Court doesn't think this is an issue

3    where there was a witness that was kind of put up in the chair

4    who wasn't involved in the actual underlying facts, the actual

5    person that negotiated the MOU with the farm bureau was our

6    deponent there.

7            THE COURT:  Okay.

8            MR. LEE:  Going next to plaintiffs' depositions,

9    there have been issues with documents in both depositions.  So

10   the first deposition was Hapka Farms, and minutes before that

11   deposition began --

12           THE COURT:  Hold on.  Wait.  One, slow down; and,

13   two, you are breaking up on us, too.  I don't know if we have

14   got a bad connection on this call.

15           MR. LEE:  Sorry, Your Honor.

16           So next I'm moving on to plaintiffs' depositions.

17   There have been two depositions that have taken place so far.

18   First, the dep of Hapka Farms, in that instance the plaintiff

19   let us know moments before the deposition started that they

20   had text messages that needed to be produced, that had not

21   been produced so far.  So we don't know the contents or volume

22   of those messages yet, and I think we have an agreement with

23   the plaintiffs there that, if necessary, we will either come

24   back and open that deposition in person or virtually for

25   continued questioning.

1          Similarly, with the deposition of Plum Ridge Farms,

2     as Mr. Foote said, the week before that deposition began, they

3     let us know there are about 6500 documents that they needed to

4     produce, and we will, accordingly, address those as well,

5     either deciding to ask more questions in a deposition or

6     deciding, if there is not anything noteworthy, we're going out

7     and closing those.  So that is the status of the plaintiffs'

8     depositions.

9          THE COURT:  Okay.

10          MR. LEE:  The next topic is the production of data.

11     So the data being requested by plaintiffs, this is not a

12     matter of just pulling reports that exist in the ordinary

13     course of business, both for John Deere's data and data by the

14     plaintiffs [sic].  We are talking about going out and writing

15     custom inquiries and scripts for collection of data.  So we

16     have been working with plaintiffs, helping them understand how

17     data exists and does not exist, so that we can respond to the

18     request in the way that provides them what they need and is

19     reasonably efficient on behalf of Deere.

20          THE COURT:  Okay.

21          MR. LEE:  And that is addressing the Deere side.

22          On the EQUIP side, just to give the Court a little

23     bit of background, in addition to selling its dealers

24     equipment and parts, which are then resold to their customers,

25     John Deere sells technical services to its dealers.  So it

1    basically sells dealers a database system which they can use

2    or may choose not to use in order to produce data.

3          So in this there have been approximately 27 dealers

4    that have been subpoenaed by plaintiffs.  Of those 27 dealers,

5    I believe approximately 24 of them choose to buy EQUIP

6    services from John Deere.  In order to assist with the

7    expedition of the production of documents, the

8    plaintiffs -- I'm sorry, not the plaintiffs -- the dealers are

9    hiring John Deere to assist them in collecting data from the

10   back end.  John Deere will then provide that data to the

11   dealers so it can be produced in this litigation.

12         So, unfortunately, for both the John Deere data and

13   the dealer data, this is not a simple matter of going out and

14   pulling what exists in the ordinary course of business.  This

15   is all custom scripting.  We are working in a reasonably

16   diligent manner and are doing our best to provide data as

17   quickly as we can, but this is not a simple plug-and-play

18   issue.

19         I think that then takes us to the privilege log.  So

20   plaintiffs have never raised any substantive issue with us on

21   the privilege log.  They have had some discussions around

22   privilege log issues, and not to get too much into the weeds

23   here, but they are requesting things like by hash value on a

24   privilege log, which is pretty uncommon and things we don't

25   typically see in privilege logs for number of reasons.  But we

1    are talking about privilege logs here.  We are not debating

2    categorical log versus document by document while we are even

3    negotiating if each individual family in a document needs to

4    be logged.  We are really getting down into what pieces of

5    metadata should and should not exist on the privilege log.  So

6    I think we are fairly close in agreement there, but don't

7    quite have an agreement, and I don't know if we will.

8           And, finally, on the technical issues the plaintiffs

9    are having with software, this is somewhat news to us.  We

10   knew they had some issues getting Customer Service ADVISOR to

11   download.  We addressed that issue a while back, but we have

12   not heard any other issues plaintiffs have been having related

13   to pieces of technology they have asked to be produced in the

14   matter.

15          But I think that is a pretty high level of where we

16   are at right now.

17          THE COURT:  All right.  Hold on one second.

18          Okay.  So, again, in no particular order -- I

19   apologize -- on the subpoena to the dealers, you are writing

20   queries to obtain the information.  It is not as though you

21   say, "Oh, this is kept in this folder, in this file, in this

22   software.  Boom.  We are going to copy it.  Good."  You have

23   to write queries to locate the data, to pull and obtain it.

24   Is that what you are telling me?

25          MR. LEE:  That's correct, Your Honor.  The

1  information and the documents existing with the dealers, it is

2  structured data.  It is data regarding both the sale of

3  products, the sale of parts and repair services, and they have

4  requested certain information.  So this is not a matter as if

5  we were talking about just pulling invoices.  We really are

6  doing some custom inquiries to get information that has been

7  requested by plaintiffs.

8          THE COURT:  Because it is not captured that way when

9  it is inputted?

10         MR. LEE:  Not in the form -- the collection of data

11 which plaintiffs have requested does not exist in a normal

12 format at the dealership.

13         THE COURT:  Okay.  All right.  Look, I'm pretty sure

14 I have said it before:  If you need the Court's assistance to

15 make decisions on things, I have no problem ruling on

16 legitimate reasonable disputes.  That's what I'm here for.  I

17 don't have a problem.  I don't snap at attorneys.  I don't get

18 cranky with them when that happens.  It's not an issue.

19 That's the job.  You know, trust me, I get some that are not

20 substantive and not reasonable.  I'm not hearing anything that

21 falls into that category.  I'm hearing issues that I'm not

22 surprised about occurring in a large antitrust MDL.

23         So if you need my help, figure out a date.  We can

24 either break issues apart.  I could give you a full day if you

25 want.  If you want to do it over two days, and you folks stay

1  at the Renaissance a night, that's fine too. I will find time

2  for that to help both sides get some direction on what should

3  or should not be produced. That's not a problem, so don't

4  hesitate.

5         It sounds like you are working as best you can with

6  each other, but at some point you might reach an impasse. I'm

7  okay with that. You have spent a lot of time trying to work

8  through some things. So don't hold fire because you think I'm

9  going to get mad at you. I'm not. I mean, what I'm hearing

10  are legitimate issues, so we can work through those. Both or

11  one of you might not like the way I come out, but I will give

12  you an answer, so don't worry about that.

13         I know we have another status in June, June 13th. It

14  is the beginning of April -- well, it is April 4th.

15         MR. LEE: Your Honor?

16         THE COURT: Go ahead.

17         MR. LEE: Sorry. There was one thing I forgot to

18  mention earlier that is also kind of impacting our schedule,

19  and that has just been we have had some difficulty getting

20  deposition dates from plaintiff for their depositions. I'm

21  hopeful that we will be able to move that process along. But

22  of the, I believe, six 30(b)(6) depositions we have requested,

23  we have only taken two of those, have dates for another two,

24  and I have two more dates still outstanding.

25         THE COURT: Okay.

1      MR. LEE:  So I'm hopeful that the parties will be

2  able to work that out and get those dates on calendar, but

3  that is something else that has a potential impact on our

4  schedule.

5      THE COURT:  Let me bounce back to the plaintiff,

6  then.  Any idea if those deps are going to occur before

7  mid-June, if you know?

8      MR. FOOTE:  Yes, Judge.  Robert Foote, Judge.

9      They will.  It is now farmer busy time, so a couple

10  of the really big farmers we were having trouble getting

11  dates.  It is our responsibility.  We were having trouble

12  getting dates because they are getting the crops ready to put

13  in.  But we will get them dates so it can be done before the

14  June status, Judge.

15      THE COURT:  Okay.  Great.

16      Hold on one second.

17      MR. WEXLER:  Your Honor, this is Ken Wexler.  I don't

18  want to interrupt if you were going somewhere.  I don't want

19  to interrupt you.

20      THE COURT:  Go ahead.

21      MR. WEXLER:  I just want to mention we are not afraid

22  to bring things to you.  We just feel like we need to exhaust

23  the meet-and-confer process.  But I will tell you we are

24  getting close on some of these issues.

25      And I would take issue with what Mr. Lee said.  We

1   are not in the argument right now with regard to the 30(b)(6)

2   witness, but I would suspect we might need you in May.

3          THE COURT:  Okay.  Hold on.  Let me get my -- I'm

4   popping open my calendar.  I think I may have said we have got

5   trials scheduled like planes landing at O'Hare.

6          So let's see.

7          Yvonne, the week of the 20th looks pretty clear.  Was

8   that intentional or just by happenstance?

9          THE CLERK:  No, Your Honor, it looks that way.

10         THE COURT:  It is just happenstance?

11         THE CLERK:  Yes.

12         THE COURT:  Okay.  I will tell you right now I have

13  got at least two trials, if I'm looking at my calendar

14  correctly.  I am jammed in May, but the week of the 20th is

15  generally free, and definitely towards the end, like the 22nd,

16  23rd, 24th, it is free.  We will put -- what's the phrase the

17  British people use?  Protect your calendar?  Oh, defend my

18  calendar.  We will try to block off the 23rd, 24th, and 25th

19  in case you need it.  Otherwise, the 13th of June, I have a

20  sentencing, but I can give you the rest of the day on that day

21  as well, all right?

22         MR. WEXLER:  Okay.

23         THE COURT:  Just to give you a sense of what my

24  calendar looks like, but trials, trials, trials.

25         MR. WEXLER:  Got it.  Okay.  Thank you very much.

1        THE COURT:  And as you probably know, when I'm in

2   trial, it is not like other things aren't coming in on the

3   docket.  We don't get to shut the door.

4        MR. WEXLER:  My guess, it's more.

5        THE COURT:  Yes, it just backs up.  So I'm just

6   letting you know.

7        MR. LEE:  Your Honor, I just want to make sure I have

8   those dates correct.  Is that May 23rd and 24th?

9        THE COURT:  22nd, 23rd, and 24th, we will defend

10  those days for you.  If you don't need them, that's fine.

11  Trust me, I have got some motions that I need to work on, and

12  three full days, that is gold for me.  So if you don't use

13  them, that's okay, but I will block them off for you.

14       Then like I said, June 13th, we have got you for a

15  telephonic at 9:00.  That's the only thing I have that day,

16  except for a sentencing at 11:00.  That will go 11:00 to noon.

17  If you need that full day, I'm going to block the rest of that

18  day off too.  And maybe you can sit and watch a sentencing and

19  realize, as bad as you think your life is, you are not in that

20  same situation.

21       MR. WEXLER:  Yes.

22       THE COURT:  Okay.  All right.  I'm good with the

23  status.  I appreciate the information from both sides.

24       As I mentioned last time, and I don't know if anybody

25  looked into this, I mentioned that I have got a friend, Vince

1   Maloney.  Charles, the C, Vince Maloney.  He is technically

2   Charles, but he goes by Vince Maloney.  His dad, Bill Maloney,

3   ran the Deere dealership in Avon, Illinois.  It is, in my

4   view, a large dealership.  Bill Maloney passed away.  Vince

5   left Perkins & Coie.  Him and his brother are working the farm

6   and working the dealership.  I mentioned that last time we

7   talked.  I said I didn't talk about the case.

8         Since the last time we talked, his mom passed away,

9   and so I talked to him again.  Again, didn't talk about the

10  case, but became more aware that him and his brother and his

11  family have basically taken over the -- I think it is -- Neff,

12  N-e-f-f, dealership in Avon.  So I have talked to Vince since

13  the last time we talked.  I don't know if it is an issue.

14  Again, I will just put it out there.

15        MR. WEXLER:  It's not an issue for us, Your Honor.

16  This is Ken Wexler.  I think from the last transcript,

17  Mr. Majoras is going to check with his client.

18        THE COURT:  Okay.  Again, if he is some amorphous

19  party in a massive conspiracy, okay, I can kind of separate

20  that out; but if he is going to be deposed and be a witness,

21  I'm going to be very, very uncomfortable.  That's all I'm

22  saying.

23        MR. MAJORAS:  Your Honor, John Majoras for Deere.

24        Thank you.  We appreciate the updated information.  I

25  think our sentiment is the same as you just said if he were to

1   become more directly involved in the litigation.  It sounds

2   like you would have an issue with that in any case, but we

3   would want to address that.  But we do appreciate the updated

4   information.

5           THE COURT:  Okay.  All right.  Thanks.

6           So I'm going to keep you on for a telephonic on

7   June 13th.  I am going to defend May 22nd, 23rd, and 24th.

8   Just so you know, the 24th is the Friday before Memorial Day.

9   But we will just keep those blocked off for you folks in case

10  you have any issues.  Then we will block off the rest of

11  June 13th, except for the sentencing, in case that's the day

12  you folks want to use.  Otherwise, I will talk to you on

13  June 13th at 9:00 for a telephonic.  And you know where to

14  find me, okay?

15          Anybody have any questions for me?

16          MR. WEXLER:  This is Ken Wexler.  The answer is no.

17          THE COURT:  Okay.  Mr. Lee?

18          MR. LIPSCOMB-JACKSON:  Tiffany Lipscomb-Jackson, Your

19  Honor.  No questions.

20          THE COURT:  Okay.  All right.  Thanks, everybody.

21  Have a good day.

22      (Which were all the proceedings heard.)

23

24

25

1                           CERTIFICATE

2     I certify that the foregoing is a correct transcript from

3 the record of proceedings in the above-entitled matter.

4 */s/Heather M. Perkins-Reiva*          *April 4, 2024*

5 _____        _____

6 Heather M. Perkins-Reiva                    Date
  Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25