**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ET AL.<br><br>Plaintiffs,<br><br>v.<br><br>DEERE & COMPANY,<br><br>Defendant. | Case No. 3:25-cv-50017<br>Hon. Iain D. Johnston |
| IN RE: DEERE & COMPANY REPAIR SERVICES ANTITRUST LITIGATION | Case No. 3:22-cv-50188<br>MDL No. 3030<br>Hon. Iain D. Johnston |

**<u>NON-PARTY OEMs RESPONSE TO JOINT STATUS REPORT [ECF No. 43]</u>**

Non-parties CNH Industrial America LLC, AGCO Corporation and Kubota Tractor Corporation (together, the "non-party OEMs") provide this response to certain positions taken in the Joint Status Report (ECF No. 43) filed by the FTC and Deere in the 2025 Action.

**Relevance:** Deere asserts that *all* documents any non-party produced to the FTC during its investigation are now relevant to the 2025 Action, going so far as claiming that these materials are ones "the third-parties *already* found to be responsive to the FTC's <u>subpoena</u>." Jt. Rpt. at 6 (bold and italics in original, underline added). This assertion is wrong on multiple levels.

1

The FTC never issued a *subpoena*, much less one tied to the 2025 Action; rather, it issued civil *investigative* demands as part of an investigation that was greater in scope than the specific claims ultimately made in the 2025 Action. The CIDs broadly called for materials relating to whether Deere "or any other person" was engaged in a wide range of conduct (*i.e.*, "unfair, deceptive, anticompetitive, collusive, coercive, predatory, exploitative, or exclusionary acts or practices") with respect to "the repair of agricultural equipment" in violation of "any" statute or rule the FTC enforces. Stallings Dec. (ECF No. 37-1) at ¶ 1. In contrast, the 2025 Action is filed just against Deere, based on specific Deere conduct, citing only Sherman Act § 2 and FTC Act § 5. Moreover, *there was no meaningful opportunity to contest relevance before the FTC and no "finding" of responsiveness*. The fact that non-party OEMs had to produce these investigative materials does not mean they are now deemed relevant to the specific claims in the 2025 Action.

**Process to Determine Relevance:** Deere creates a strawman, arguing that the non-party OEMs have not proved the materials are irrelevant. Jt. Rpt. at 4 ("Earlier today, the third parties filed a statement with their objections. *See* ECF No. 37. Tellingly, nowhere in their statement do they provide a single explanation for why these materials are irrelevant to this case."). But as the non-party OEMs stated, most of these investigative materials "have nothing to do with the claims or anticipated defenses at issue in the FTC's Complaint in the 2025 Action." Statement (ECF. No. 37) at 3. Indeed, the very purpose of the non-party OEMs' Statement is to seek a *meaningful process* for them to assert Rule 26 and 45 protections (relevancy, burden, proportionality).

The non-party OEMs have offered a workable solution that provides for timely resolution of these issues under the Federal Rules. Deere, though, states that such a process is inappropriate, claiming that all documents should be turned over. Jt. Rpt. at 6-7. Yet, mere pages later, with respect to *the FTC seeking Deere's own documents*, it takes a much different position, arguing that

2

"Deere is afforded the protections of the Federal Rules of Civil Procedure" and that Deere should be allowed to serve responses and objections to discovery demands as well as meet-and-confer on the scope of production. *Id.* at 11. If such a process is good enough for Deere, then it is even more compelling for the *non-party* OEMs that are not parties to this litigation.

Deere also points to a handful of *merger* cases for the proposition that it is "standard practice" for the government to turn over non-party investigative material at the outset of a case. *Id.* at 5. However, those cases address a fundamentally different situation. A government merger investigation is focused on the specific merger at issue; as such, the scope of non-party investigative discovery would relate to the specific merger at issue, unlike the far-reaching *non-merger* investigation at issue here. Moreover, merger litigation moves at an accelerated pace with the substantive hearing typically occurring mere months after the filing of a complaint.[1] Here, the FTC and Deere have not even offered a date for summary judgment, much less trial. Finally, the *one* non-merger case cited by Deere, *Fed. Trade. Comm'n v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626 (6th Cir. 2014), disproves Deere's point. In that case, the complaint was filed on September 25, 2012; yet it was not until seven months later (May 9, 2013) that the defendant issued a discovery demand and the FTC, in response, offered to produce non-party investigative materials. Even then, disputes remained about the scope of production of certain documents. *Id.* In short, to the extent any specialized "practice" exists with respect to government litigation (which

---

[1] And even with the accelerated schedule in merger cases, non-party concerns are not ignored. In *United States v. Aetna Inc.*, No. 1:16-cv-1494-JDB, 2016 WL 8738421, at *5, 9 (D.D.C. Sept. 14, 2016), cited by Deere at Jt. Rpt. at 5, a special master was appointed to hear non-party confidentiality concerns and, after an expedited hearing process, the special master found that those non-parties had not presented specific facts to support their position. Here, non-party OEMs are simply seeking a process to be able to present their facts.

certainly does not appear in the Federal Rules), it does not compel this Court to deny the non-party OEMs' rights under the Federal Rules.

**Deere's Proposal:** Instead of non-party OEMs' process, Deere simply states the non-party OEMs should file "motions for protective orders" in less than a month. Jt. Rpt. at 8. Respectfully, "protective orders" to what? Deere has not served any operative discovery request or subpoena. Deere has simply stated it wants the FTC's investigative files. The Federal Rules have a process for a reason and that process should not be replaced by inchoate discovery assertions.

**Relationship to MDL:** The non-party OEMs object to any of their investigative materials being produced to private MDL plaintiffs. Statement at 7-8. The FTC acknowledges this issue, but Deere remains silent. *See* Jt. Rpt. at 8-9. This issue should be addressed now to avoid subsequent disputes. Deere should state whether it intends to disclose materials to the private MDL plaintiffs so that non-party OEMs can seek relief to avoid such an outcome.

**No "Asymmetric" Information Issue:** Deere asserts that allowing third parties to designate materials as irrelevant would put them at a disadvantage to the FTC in "formulating its case." Jt. Rpt. at 6. No such issue exists. If, after a process that would include this Court's oversight and review, any non-party OEM documents are deemed non-responsive, then *neither* the FTC nor Deere could use them at trial. This is no different than a court deeming any other piece of evidence (such as privileged documents) off limits.

**Confidentiality Order:** Deere and the FTC filed a "consent" motion for a Confidentiality Order *but did not file the proposed order on the public docket*. ECF. No. 39. As a result, the non-party OEMs have not seen its terms and do not consent to its entry.[2] As previously stated

---

[2] The parties' motion (ECF No. 39) states that the proposed Confidentiality Order's terms are patterned after the ones in the 2022 Action which were "negotiated and agreed to by Deere and third parties to the MDL Action (who may also be third parties to this Action)." ECF No. 39 at ¶

(Statement at 5), the non-party OEMs strenuously object to in-house Deere counsel having access to their information. It appears from the Joint Report that the current proposed 2025 Action protective order does *not* contain an outside-counsel-only provision as the parties state that they "expect" to file another proposed confidentiality order that will address confidentiality objections "in the next few weeks." Jt. Rpt. at 3-4. Respectfully, it should not take "weeks" to set forth an outside-counsel-only provision. If Deere agrees to such a provision, it should be included in the initial Order. If Deere does not agree, then the issue should be addressed now to avoid confusion. For example, the parties say the current proposed Order (which, as noted, is not on the public docket for review) is patterned after the Confidentiality Order in the 2022 Action. Yet that Order states that "no party or non-party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such protection." ECF No. 98 at ¶ 9. If such a provision exists in the 2025 Action proposed Order, then the non-party OEMs will move for such relief.

Indeed, this very issue has previously been litigated in this district when the Department of Justice challenged a Deere acquisition. CNH successfully sought to keep Deere from modifying the protective order to allow Deere's in-house counsel to access non-party CNH documents. The Court ruled: "[I]t simply blinkers reality to believe that non-party competitors' confidential information can be sufficiently protected by the proposed modification." *United States v. Deere & Co., et al.*, 1:16-cv-8515, ECF No. 286 (N.D. Ill. Apr. 26, 2017). The same result should hold here.

Dated: February 10, 2025
/s/ William H. Stallings
William H. Stallings (*pro hac vice* application pending)
MAYER BROWN LLP

---

3. To be clear, the non-party OEMs have never negotiated or agreed to the terms of the 2022 Action's Confidentiality Order or the proposed Order filed in the 2025 Action.

wstallings@mayerbrown.com
1999 K Street, NW
Washington, D.C. 20006
Tel: 202-263-3807
*Counsel for CNH Industrial America LLC*

*/s/ Steven Jacob Carroll*
Steven Jacob Carroll
NELSON MULLINS RILEY & SCARBOROUGH LLP
jake.carroll@nelsonmullins.com
201 17th Street NW, Suite 1600
Atlanta, GA 30363
404-322-6298
*Counsel for AGCO Corporation*

*/s/ Gilbert S. Keteltas*
Gilbert S. Keteltas
BAKERHOSTETLER
gketeltas@bakerlaw.com
1050 Connecticut Avenue, NW, Suite 1100
Washington, DC 20036
202-861-1530
*Counsel for Kubota Tractor Corporation*

6