**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| In re: Deere & Company Repair | ) Case No. 22 CV 50188 |
| Services Antitrust Litigation. | ) MDL No. 3030 |

## COURT'S RESPONSE TO PROPOSED CASE MANAGEMENT ORDER No. 5

The Court thanks counsel for their thoughtful status report and most recent proposed case management order.

First, the extension of fact discovery is reasonable. Fact discovery will close on May 19, 2025.

Second, there has been a communication breakdown regarding non-retained expert opinions. As any good case management order should, the Court's standard case management order includes a date for non-retained expert opinions; meaning, opinions governed by Rule 26(a)(**2**)(C). This date is usually in advance of the close of all discovery, so that if additional discovery (such as a deposition) is needed for those opinions, that discovery can be accomplished in a timely manner. This established date also has the benefit of nearly always barring any untimely undisclosed opinions. A party is hard pressed to introduce opinions after missing a cut-off date in a case management order. Fed. R. Civ. P. 37(c)(1). But, somehow, a typographical error was introduced somewhere along the way resulting in a reference to Rule 26(a)(**3**)(c). There's no such rule. So, the Court understands the confusion. To clarify, the Court will required Rule 26(a)(2)(C) disclosures by June 1, 2025. Disclosures under Rule 26(a)(3)(A)(iii) are deferred. Generally, those disclosures will occur in the Final Pretrial Order.

Third, the extension of expert discovery by two months is reasonable. Expert discovery will close on February 9, 2026.

So far, so good.

But here's where the Court has significant concerns. The Court is exceedingly reluctant to brief *Daubert* and class certification issues simultaneously. Perhaps, the Court failed to adequately articulate its reasoning on this issue at the September 8, 2022, hearing. So, the Court will give it another try.

As this Court explained and lamented in *Madison St. Props., LLC v. Marcus Corp.*, 2023 U.S. Dist. LEXIS 160196, at *12 (N.D. Ill. Sept. 11, 2023) (cleaned up), it is almost a metaphysical certainty that *Daubert* motions will be filed: "*Daubert* motions are commonplace in modern civil litigation. In fact, they are too common.

1

Sure as night will follow day, parties file *Daubert* motions to bar the opposition's experts. The filing of *Daubert* motions to bar expert opinions has become a Pavlovian response. Indeed, as one district judge stated during a panel discussion, 'I could have Albert Einstein designated on the Theory of Relativity, and I would still get a *Daubert* motion.'" In one of the greatest named cases of all time—*White Buffalo Env't. Inc. v. Hungry Horse, LLC*, 2023 U.S. Dist. LEXIS 48355, at *22 n.8 (D. N.M. Mar. 22, 2023)—the Court's good friend and colleague, Judge James Browning, engaged in the judicial equivalent of "hold my beer" when discussing *Daubert* and *Daubert* motions. In relevant part, Judge Browning likewise lamented about the sheer prevalence of *Daubert* motions, adding that "The costs of *Daubert* motions, to the court and the parties, is staggering. The time-consuming nature of *Daubert* motions is overwhelming." *Id.*

Having said all that, counsel in this case have stockpiled a significant amount of good will by not engaging in unproductive litigation tactics. The Court is confident that counsel will not file unnecessary *Daubert* motions. And, indeed, sometimes *Daubert* motions are necessary. So, the Court assumes any future *Daubert* motions will be filed in good faith. (If no *Daubert* motions are filed, the Court will hold a hearing at Prairie Street Brewing Company, with at least the first round on the Court.) The remaining analysis is premised upon the assumption that necessary and substantive *Daubert* motions will be filed.

The Court's second premise in this analysis is that it will address any *Daubert* motions before addressing the class certification motion. Analytically, this is the only option that makes sense.

The Court's next premise is that no party believes its retained expert's opinions will be barred. No party is going to pay good money to a retained expert believing there's a good chance the witness' opinions will be barred. That just doesn't happen. So, armed with this assumption, the party's counsel will incorporate their expert's opinions into their briefs for class certification.

On the flip side, the opponent will be just as confident that the other side's expert opinions will be barred—at least in part. And armed with that contrary assumption, that party's counsel will premise its arguments in its class certification filings on the belief that the court will not consider those opinions. They'll be barred, of course. So why waste precious pages with alternative arguments?

But what if, per chance, a party's expert opinion is barred in part or entirely? (Gasp! The horror!) As any experienced civil litigator knows, barring expert opinions or at least some of them happens often. Barring is not a foregone conclusion but it happens regularly. If that occurs, then the party's class certification brief—chock-full of now barred opinions—suddenly contains gaping analytical holes.

Of course, the flip side happens, too. The opponent's brief assumes that the other side's experts' opinions will be barred but when that doesn't happen, there are similar gaping analytical holes in the class certification filing.

The end result of this process is that when Daubert briefs are filed simultaneously with class certification briefs what remains for the court to consider for class certification is a mess. Sometimes, the briefs are almost useless. This means that the parties have spent a considerable amount of time and money drafting and filing unhelpful briefs.

The solution to these problems is the process the Court initially proposed—bifurcated briefing on *Daubert* motions and class certification motions. At first glance, tackling *Daubert* issues first might seem more time consuming. But the Court's experience and the experience of other judges—including some of the most prominent judges assigned multi-district litigation—is that in the long run, bifurcation results in faster and more merits focused resolution. And that's the goal of Rule 1.

Hopefully, this borderline rant more fully and accurately states the reasoning behind the process of the previous case management orders and the Court's significant reluctance to brief *Daubert* and class certification simultaneously. The Court recognizes that part of the reasoning for combining the briefing was to coordinate timing with the Federal Trade Commission's recently filed case. Setting aside that this response is further evidence that the Commission's case will gum up the scheduling in this case, weighing the costs and benefits, the Court would rather bifurcate the *Daubert* and class certification briefing.

But, again, the Court would like to hear from counsel in this case on this issue. Maybe there are good reasons under the unique circumstances in these cases to engage in simultaneous briefing that the Court doesn't recognize. If those reasons exist, the Court is all ears.

Entered: February 18, 2025

By: _____
Iain D. Johnston
U.S. District Judge