IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| In Re: Deere & Company Repair Services Antitrust Litigation | Case No.: 3:22-cv-50188<br><br>Judge Iain D. Johnston |

ORDER REGARDING COMMON INTEREST APPLICABILITY

Attorneys communicated with various trade associations (and/or their attorneys or members) regarding Right to Repair and other regulatory matters. *See* Dkt. 200, Ex. 1. Deere is a member of some of those trade associations, but not with others. Ultimately that distinction doesn't matter. The Court reviewed the documents *in camera*, and finds that Deere's characterization is accurate[1]. The Court also assumes for purposes of this issue in this case that the communications would constitute legal advice, even though they also relate to government relations and business strategy. The sole question is whether the attorney-client privilege is waived in communicating with third-parties.

The attorney–client privilege encourages "full and frank communication" between attorneys and their clients. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege "comes at a price," derogating the search for truth. *Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 963–66 (N.D. Ill. 2010). So, [t]he scope of the privilege should be strictly confined within the narrowest possible limits." *U.S. v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) (citations omitted).

Generally, a privilege-holder waives that protection when its communications occur before third-parties. *U.S. v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997). But, in limited circumstances, the "common interest doctrine" rescinds that waiver, preserving the privilege despite third-party involvement. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 (7th Cir. 2007). A party seeking the narrow exception must demonstrate an "identical—not merely similar—legal interest" and that the communication is intended to further a common goal. *Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 963–66 (N.D. Ill. 2010); *BDO Seidman, LLP*, 492 F.3d at 416. Though the exception to waiver is typically invoked in litigation-related contexts, *see Pampered Chef*, 737 F. Supp. 2d at 958 (discussing cases), litigation isn't *per se* required. *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 416–17 (N.D. Ill. 2006).

Deere principally relies on *Blair v. Pro. Transp., Inc.*, 14-cv-18, 2015 WL 1013566 (S.D. Ind. Mar. 9, 2015), arguing that the common interest doctrine still applies when the third-party is a

---

[1] The Parties initially raised this issue during the December 19, 2024 status hearing. Dkt. 199. Per the Court's request, the Parties submitted position papers. Dkt. 200–01. The Parties discussed it again at the January 24, 2025 conference. Dkt. 206. The Court gave the Parties an opportunity to present any additional arguments on February 27, 2025. The Court now construes Plaintiffs' position as a motion to compel, and grants it.

trade association. In *Blair*, the court applied the doctrine to communications between defendant corporation, its trade association and the trade association's attorney. *Id.* It reasoned that the trade association members "shared legal interests, including understanding their liabilities and obligations under proposed changes to the law . . . and complying with the law in forming the corporation and conducting lobbying efforts." *Id.* The *Blair* decision is fundamentally flawed in its belief that documents exceeding the bounds of an attorney-client relationship can nevertheless be withheld under the doctrine. But, *Blair*'s ruling is fully on point. Deere rightfully relies upon *Blair*. The undersigned would too if in Deere's position.

But *Blair*'s the outlier. The cases applying the doctrine—including ones Deere cites—do so on dissimilar facts, typically involving identical legal interests exemplified in proximate relationships. *See e.g.*, *Big Daddy Games, LLC v. Reel Spin Studio*, 12-cv-449, 2013 WL 12233949 (W.D. Wis. April 10, 2013) (communications between a plaintiff patent-holder and two buyers of potentially infringing product); *Diamond Servs. Mgmt. Co. v. C&C Jewelry Mfg.*, 12-cv-449, 2021 WL 5834004 (N.D. Ill., 2021) (same); *Lislewood Corp. v. AT&T*, 13-cv-1418, 2015 WL 1539051 (N.D. Ill. Mar. 31, 2015) (owner and indemnifying lessee); *Dexia Credit Local v. Rogan*, 231 F.R.D. 268 (N.D. Ill. 2004) (two allegedly defrauded parties seeking repayment from same defendant); *Kirsch v. Brightstar Corp.*, 68 F. Supp. 3d 846 (N.D. Ill. 2014) (entities jointly interested in minimizing liability); *Pampered Chef*, 737 F. Supp. 2d at 958 (discussions with former co-worker likely to also be sued); *In re Sulfuric Acid*, 235 F.R.D. at 407 (parent and partially-owned subsidiary); *Costello v. Poisella*, 291 F.R.D. 224 (N.D. Ill. 2013) (company and former employees working together to defeat a creditor's claim); *Baxter Int'l Inc. v. AXA Versicherung*, 224 F.Supp.3d 648 (N.D. Ill. 2016) (law firms discussing issues relevant to a shared client); *BDO Seidman, LLP*, 492 F.3d at 813 (law and accounting firms discussions about shared client). Deere doesn't provide, nor did the Court come across, another 7th Circuit case like *Blair*.

Further, many courts declined to apply the doctrine in cases involving more similar interests—and remember that it's the shared interest in the legal advice sought that unwinds the waiver—than Deere's and the trade associations'. *See, e.g.*, *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510 (N.D. Ill. 2020) (communications between plaintiff and other entities, all of whom would allegedly benefit in an action against defendants); *LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 958 (N.D. Ill. 2009) (company's communications with its ad agency); *McCullough v. Fraternal Order of Police, Chicago Lodge 7*, 304 F.R.D. 232 (N.D. Ill. 2014) (two employees suing the same employer regarding same issue); *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711 (N.D. Ill 2014) (party's communications with potential litigation funders) *Charvat v. Valente*, *Monco v. Zoltek*, 317 F. Supp. 3d 995 (N.D. Ill. 2018) (two entities transferring a patent);

Now contrast Deere's communications. Attorneys corresponded with various trade associations and their members. Plaintiffs assert that hundreds of entities comprise those associations. It's true that, in some general sense, all members share interests in defeating certain litigation or complying with regulations. As does nearly every company. But the doctrine construes a "shared legal interest" far more narrowly, applying it when the interests (and perhaps the communicators) are essentially identical. And that makes sense: if the general rule—that third-party communications destroy privilege—means anything, then the shared interest doctrine must be interpreted such that it doesn't "swallow the rule." *LG Electronics*, 661 F. Supp. 2d at 958. Allowing Deere to jam potentially thousands of entities into the attorney–client circle would do just that. Deere didn't meet its burden of showing the narrow shared interest exception applies. So, the Court finds that,

to the extent Deere withheld documents with trade associations under a shared-interest rationale, Deere must produce them.

Entered: March 3, 2025       By:_____
                                Iain D. Johnston
                                U.S. District Judge