**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

Federal Trade Commission, et al.,     )
    )
    Plaintiffs,     )
    )
v.     ) No. 25 CV 50017
    ) Judge Iain D. Johnston
Deere & Co.,     )
    )
    Defendant.     )
_____)
    )
In re: Deere & Co. Repair Services Antitrust )
Litigation     ) No. 22 CV 50188
    ) Judge Iain D. Johnston

## MEMORANDUM OPINION AND ORDER

This order addresses two issues: (1) Deere & Co.'s verbal motion to modify the latest case management order, and (2) the parties' dispute as to depositions.

### Modification of Case Management Order in 22 CV 50188

The Court denies Deere's verbal motion to modify Case Management Order No. 5. Dkt. 234 in 22 CV 50188. Case Management Order No. 5 was entered only a few weeks ago. At the time it was entered, the process for addressing class certification, *Daubert* issues, and summary judgment was agreed. Case management orders may be modified "only for good cause." Fed. R. Civ. P. 16(b)(4). Under this provision, in determining whether good cause has been established, courts focus on the diligence of the moving party. *See McCann v. Cullinan*, No. 11 CV 50125, 2015 U.S. Dist. LEXIS 91362, at *30–33 (N.D. Ill. 2015); *see also Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011). After having previously agreed to the procedure in Case Management Order No. 5, the Court doesn't find good cause. The Court understands Deere's newly raised concern that the procedure *might* conceivably result in delay, assuming various scenarios come to fruition. But the proposed modification guarantees more than 100 additional days added to the schedule. Under these circumstances, the Court will take its chances that the recently entered agreed case management order will not result in possible future delays, rather than amending the agreed Case Management Order No. 5 and ensuring a longer schedule in this 2022 case. If the Court's gamble turns out to be wrong, it will eat its slice of humble pie without bellyaching.

1

## Number of Depositions and Deposition Hours in 25 CV 50017

The Court thanks the parties for narrowing the dispute regarding depositions in this case.

As it must, the Court starts with the presumptive limits identified in Rule 30; namely, ten depositions, each limited to one day of seven hours. Fed. R. Civ. P. 30(a)(2)(A)(i); (d)(1). District courts have discretion to modify those presumptions. Fed. R. Civ. P. 26(b)(2). In exercising that discretion, courts consider, among other things, the proportionality factors identified in Rule 26(b)(1). These factors are the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26 added the parties' relative access to the relevant information as a new consideration for district courts. Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.

The governments' action against Deere is not typical, so the Court must consider the unique nature of this action in light of events that have occurred before it was filed. One of those events is the Federal Trade Commission's multi-year investigation of Deere regarding its restrictions on the ability of Deere customers to repair their products themselves or use independent repair providers and whether Deere's alleged restrictions violate antitrust laws. Another one of those events is the extensive discovery conducted by the MDL plaintiffs and their very able counsel in the MDL action. Obviously, the FTC and the other governmental entities suing Deere in the government action have access to the information discovered in the pre-filing investigation. And the governments' counsel will have access to the trove of discovery the MDL plaintiffs have obtained in the years the MDL action has been litigated. As Deere well states, "Plaintiffs in this case are far from writing on a blank slate." Dkt. 132, at 3. Having defended on both fronts, Deere knows precisely what has occurred. Specifically, in the FTC's investigation, seventeen Deere witnesses have provided nearly ninety hours of sworn testimony. *Id.* And, in the MDL action, eleven Deere witnesses have provided about fifty-five hours of sworn testimony. *Id.* What's more, Deere and other entities have provided a cornucopia of documents to the FTC during its investigation. So, throughout its investigation, the FTC had months—if not years—to review and analyze sworn testimony and documents going to the very heart of the claims in the governments' action. One can only imagine how envious the MDL plaintiffs' counsel are of the FTC's prefiling investigative opportunity.

In support of their position, the governments rely upon *SEC v. Saul*, 133 F.R.D. 115 (N.D. Ill. 1990). The Court certainly understands why they rely upon that case. There's great language in that case. Specifically, *Saul* asserts that, "there is no authority which suggests that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts

2

underlying its case." *Saul*, 133 F.R.D. at 118. The *Saul* court wasn't "inclined to set such a precedent." *Id.* That's good stuff for the governments. Unfortunately, this Court disagrees with *Saul* and this specific assertion.

Initially, the Court will set aside the factual distinction between *Saul* and this action. In *Saul*, the defendant was seeking to foreclose discovery. *Id.* at 116 ("Pending before the Court is the defendants' motion for a protective order precluding the SEC from taking the depositions of five individuals whose testimony was taken in the course of the administrative investigation which preceded this suit."). Deere is not seeking to foreclose the governments from obtaining discovery, even from the same people who had previously provided hours of sworn testimony. Instead, Deere is seeking to *limit* the scope of discovery. So, other cases that rely upon *Saul* are likewise factually distinguishable. *See, e.g.*, *SEC v. Rayat*, 21-cv-4777, 2022 U.S. Dist. LEXIS 81922, at * 7–9 (S.D.N.Y. May 5, 2022).

But, more fundamentally, this Court respectfully disagrees with *Saul*. First, the critical sentence is not accurate. In *Saul* the defense counsel simply failed to cite to and provide authority to limit discovery. That's a far cry from saying no authority exists. Indeed, back in 1990, Rule 26 specifically provided authority to limit discovery that was not proportional. Proportionality has existed in the Federal Rules of Civil Procedure since 1983. So, authority existed. Apparently, this authority was just not cited in *Saul*. Instead, the defense counsel in *Saul* chose to rely upon cases that were old—at least one dating back before World War II—and easily distinguishable. Poor lawyering should not forever bind future district judges from exercising their discretion to control discovery. Second, neither *Saul* nor the cases that follow it apply Rule 26's factors, including the recently added factor of relative access to relevant information, to the calculus. Simply put, much—but certainly not all—of the relevant information is equally accessible. The FTC has already gathered it. This information is in its possession. And the FTC and other government plaintiffs will have access to the information already obtained by the MDL plaintiffs. In applying Rule 26(b)(1)'s factors, district courts should not don blinders to the realities of the action pending before it.

The reality in this case is that the FTC has engaged in extensive prefiling discovery. Indeed, the FTC was able to obtain more deposition-type discovery in its investigation than it would be presumptively able to obtain had it filed litigation fresh in a district court. The FTC essentially took seventeen depositions. Added to that are the voluminous demands for documents from not only Deere but also from other entities that sell similar equipment in the same markets. What's more, in this case, extremely experienced and highly skilled MDL plaintiffs' counsel have taken eleven depositions already covering essentially the same claims that the government entities have brought. So, in its discretion, the Court will limit discovery. The only issue is the extent discovery should be limited under the facts of this case.

After reasonable meet-and-confers, the parties have come to an impasse on three issues: (1) the number of Rule 30(b)(1) depositions and the hours that can be used in those depositions; (2) the length of a Rule 30(b)(6) deposition; and (3)

"coordination" with the MDL plaintiffs' deposition of four Deere employees. The impasse is reasonable. Neither side is taking an unreasonable position.

As to the number of hours of deposition time and number of depositions, Deere seeks to limit the government entities to ten Rule 30(b)(1) depositions totaling no more than thirty-five hours. Additionally, any one of these depositions will count for a minimum of two hours. In contrast, the governments seek sixty hours of Rule 30(b)(1) deposition testimony with no limit on the number of witnesses. They also reject being docked a minimum of two hours regardless of how long the deposition lasts.

As to the Rule 30(b)(6) deposition, both sides agree to one deposition. But they disagree as to how many hours the Rule 30(b)(6) deposition may take. Deere seeks to limit the deposition to fourteen hours; whereas, the government entities seek twenty-eight hours.

As to the coordination of four Deere employees who are scheduled to be deposed in the MDL action, Deere apparently wants there to be a single deposition for each of these individuals with counsel for all parties (both the MDL plaintiff and the governments) being allowed to interrogate the witness. According to Deere, these four depositions would not be counted against the Rule 30(b)(1) depositions. The governments' position is that there should be no coordination.

Having reviewed the filings and given due consideration, the Court exercises its discretion and rules as follows.

As to the first issue, the government entities will be allowed to take up to fourteen Rule 30(b)(1) depositions. (Obviously, this is the ten depositions Deere agreed to plus the four depositions that they agreed wouldn't count toward the limit.) They will be allowed forty hours to complete those depositions. A deposition may not exceed one full day of seven hours, unless agreed to by all parties. In the unlikely event that there is a squabble about the continuation of a deposition, the parties can contact the Court for further guidance. The Court will not impose a minimum time for a deposition as proposed by Deere. Moreover, the Court recognizes that it stated that hours of deposition time was more important than the number of depositions. But that statement was not meant to foreclose it from fashioning a solution. Unlimited depositions are inconsistent with the Federal Rules of Civil Procedure, including Rule 1 and Rule 26(b). Imagine if you will taking 120 half hour depositions. Although highly unlikely to happen, the example makes the point that a limitless number of depositions is a bad idea. Depositions are costly not just because of the time consumed in the deposition itself. Deponents need to be prepared by attorneys, which takes the employees away from their regular work and incurs attorneys' fees for preparation time. Additionally, deponents have a right to review the transcript of their deposition. Fed. R. Civ. P. 30(e). That can be an additional cost.

As to the second issue, the governments may conduct one Rule 30(b)(6) deposition limited to not more than sixteen hours, regardless of the number of designees.

4

As to coordination, the Court has already stated that coordinating the cases is nearly impossible. And forcing the governments to participate in these four depositions at this time would likely lead to problems. For example, the governments might later obtain relevant documents that would have been useful in one of these depositions. Under Deere's proposal, the governments would be barred from deposing them without leave of court. The Court recognizes the burden on Deere to possibly producing these four witnesses twice, but other considerations outweigh that burden.

Entered: April 22, 2025                 By:_____

Iain D. Johnston
U.S. Judge

5