UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| IN RE: DEERE & COMPANY REPAIR SERVICES ANTITRUST LITIGATION | Case No.: 3:22-cv-50188<br>MDL No. 3030<br><br>Hon. Iain D. Johnston |

**DEFENDANT DEERE & COMPANY'S MOTION FOR
PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26(c), Defendant Deere & Company ("John Deere") respectfully requests a protective order precluding the deposition of Joshua Jepsen, John Deere's Chief Financial Officer and Senior Vice President. Mr. Jepsen is an apex witness with no unique personal knowledge regarding the issues in this litigation. Plaintiffs assert they are entitled to his deposition on the question of whether financial analyses quantifying the impact of "right to repair" legislation exist. As Plaintiffs know, no such analyses exists during the agreed-to relevant time period. John Deere has repeatedly made this clear in responses to document requests, interrogatory responses, and in the sworn testimony of *two* 30(b)(6) witnesses. Enough is enough: Rule 26(b)(2)(C)(i) does not permit Plaintiffs to continue to burden John Deere with duplicative discovery. Plaintiffs have their answer; Mr. Jepsen's testimony will not change it, and a protective order should be issued.

I.     FACTUAL BACKGROUND

On July 25, 2024, Plaintiffs served a Notice of Deposition for Mr. Jepsen. On July 31, 2024, John Deere responded, making clear Mr. Jepsen's deposition would be inappropriate, burdensome, and contrary to precedent limiting apex witness depositions because Mr. Jepsen

1

"[had] not been identified as the source of relevant information, let alone unique relevant information." *See* Ex. A, July 31, 2024 Letter from C. Lee to Plaintiffs. John Deere also explained that Mr. Jepsen's testimony would be duplicative of other depositions. *See id.* For example, Denver Caldwell—then Vice President of Sales for the United States and Canada and now Vice President of Global Aftermarket & Customer Support—testified on behalf of John Deere on the following topic: "Projections and predictions of the economic impact of 'right to repair' legislation and other expanded 'right to repair' outcomes on Deere's or its authorized Dealers' revenues and profits." *See* Ex. B, July 25, 2023 Plaintiffs' Notice of Deposition of Defendant pursuant to Rule 30(b)(6), Topic 13; *see also* Ex. A. Mr. Caldwell testified unequivocally that no analysis relating to the impact of "right to repair" legislation exists during the relevant time period. The parties subsequently met and conferred, and Plaintiffs agreed not to proceed with Mr. Jepsen's deposition.

On September 6, 2024, Plaintiffs issued their Amended First Set of Interrogatories and Amended Fourth Set of Requests for Production of Documents. John Deere timely responded to those requests on October 21, 2024. In response to Interrogatories Nos. 3 and 5, John Deere confirmed "it has not conducted internal projections of its financial performance and/or profitability related to the potential impact of Right to Repair and/or Fair Repair bills, laws, or legislation for the Relevant Time Period." *See* Ex. C, Defendant Deere & Company's Responses and Objection to Plaintiffs' Amended First Set of Interrogatories.

Plaintiffs never requested to meet and confer regarding John Deere's discovery responses, nor did they identify any deficiencies. Instead, three months later, in January 2025, Plaintiffs reinstated Mr. Jepsen's Notice of Deposition, now asserting they were entitled to Mr. Jepsen's testimony on John Deere's 2023 Annual Report ("2023 10-K"), which was published more than a year after the relevant time period in this litigation. Plaintiffs focused on the unremarkable

2

statement that "regulations and legislation regarding right to repair," among twelve another potential uncertainties like weather conditions and political concerns, could potentially impact John Deere's results. *See* Ex. D, January 10, 2025 Letter from Plaintiffs to John Deere.

Plaintiffs then pointed to a 192-page presentation that was an exhibit in Mr. Caldwell's deposition, which contains no mention of financial analyses related to "right to repair" legislation. Plaintiffs claimed several statements in the presentation "undermine" John Deere's position in this lawsuit. *See* id. Even if that were true, Plaintiffs provided no explanation as to how that entitled them to a deposition of an apex witness like Mr. Jepsen.

On January 27, 2025, John Deere reiterated that Plaintiffs have no basis to depose Mr. Jepsen. *See* Ex. E, January 27, 2025 Letter from C. Lee to Plaintiffs. The parties met and conferred again on February 12, 2025. Plaintiffs agreed to withdraw the Notice of Deposition, and John Deere agreed to put forward a Rule 30(b)(6) witness to testify on "responses to Interrogatories Nos. 3 through 5 and Document Request No. 73" and the "justification for the statement in John Deere's 2023 10-K that states 'regulations and legislation regarding right to repair' could 'impact our results.'" Ex. F, Feb. 24, 2025 Email from C. Lee to K. Wexler. On April 24, 2025, Tommy Morgan, Manager for Aftermarket Sales and a John Deere employee of 30 years, testified extensively on behalf of John Deere on the agreed upon topic.[1] Mr. Morgan confirmed the accuracy of John Deere's discovery responses that no financial projections, analyses, or predictions relating to "right to repair" legislation existed during the relevant time period. He also explained that no financial analysis was conducted in conjunction with the statement at issue in the 2023 10-

---

[1] John Deere did not include Mr. Morgan's transcript as an exhibit to this Motion because it contains confidential information, but will make it available to the Court (along with any of the additional referenced transcripts) if requested.

3

K. Mr. Morgan further testified in his personal capacity that he was involved in the 2023 10-K process, and that he would have been involved in any analysis relating to the impact of "right to repair" legislation, if any had been generated, due to his position and expertise. In preparation for his corporate testimony, Mr. Morgan also testified that he spoke to three witnesses at John Deere who, along with himself, would have been necessary sources of information for any such analysis. He also spoke to John Deere's Director of Investor Relations, a member of the committee that was responsible for the statement at issue, who stated he was not aware of any financial analysis related to the statement. Mr. Morgan further confirmed that there were limited discussions related to this at-issue statement, but it was not unusual for items to be disclosed in the 10-K with limited insights or information.

For the third time, on April 28, 2025, Plaintiffs reinstated Mr. Jepsen's Notice of Deposition without specifying what new and unique information they hoped to obtain. In accordance with Local Rule 37.2, on April 30, 2025, the parties once again conferred. John Deere's counsel reminded Plaintiffs that Mr. Morgan testified that financial projections, analyses, and predictions relating to the "right to repair" do not exist during the relevant time period. Plaintiffs nevertheless demanded to move forward with Mr. Jepsen's deposition based solely on Plaintiffs' unfounded belief that they must exist.

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(2) allows a court to limit the scope of discovery if it determines that the information sought is cumulative, duplicative, obtainable from a more convenient, less burdensome or less expensive source, or if the burden of the proposed discovery "outweighs the likely benefit." Fed. R. Civ. P. 26(b)(2). Under Rule 26(c), courts may, for good cause, issue a protective order to "protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c). "The party seeking a protective

4

order bears the burden of demonstrating why the order should be entered." *Lee v. City of Chicago*, No. 20 CV 1508, 2021 WL 2399999, at *2 (N.D. Ill. June 11, 2021).

The deposition of an apex witness is improper if any of the following apply: (1) the official has "no unique personal knowledge of the matter in dispute"; (2) the information can be garnered from other witnesses; (3) the information can be garnered from other discovery methods; or (4) sitting for the deposition would impose a hardship in light of the officer's other duties. *Id.* (citing *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020)).

### III.   ARGUMENT

A protective order should be issued because Mr. Jepsen does not have unique personal knowledge relevant to this litigation, the subject matter of the desired testimony has already been obtained by other means, including through multiple corporate and percipient witness testimony and written discovery, and deposing Mr. Jepsen will impose hardship, particularly in light of his lack of unique personal knowledge. In considering "the totality of the circumstances [and] weighing the value of the material sought against the burden of providing it," it is clear that Mr. Jepsen's deposition is not warranted, would be duplicative, and would be unduly burdensome such that good cause exists to preclude his deposition. *See Kove IO, Inc. v. Amazon Web Servs., Inc.*, No. 18 C 8175, 2021 WL 12094206, at *8 (N.D. Ill. Oct. 26, 2021).

####   A.   Mr. Jepsen Does Not Have Unique Personal Knowledge Relevant to This Litigation.

"[T]he logical underpinning[] of the apex doctrine seeks to prevent a high-ranking corporate executive from being run through the wringer of civil discovery[] when they do not have personal knowledge of the relevant facts . . . ." *See id.* at *5 (denying plaintiff's motion to compel a deposition of Amazon's CEO). "Courts have not hesitated to block efforts to depose high-ranking

5

officials where – as here – the officials do not have unique personal knowledge of the facts underlying the events that lead to the lawsuit in question." *Lee*, 2021 WL 2399999 at *3 (collecting cases). The mere fact that an apex official might be "aware of plaintiff's allegations" is not enough. *See id.* at *4. Nor is it sufficient to point to their role in the organization if they otherwise lack unique personal knowledge. *See Nucap Indus. Inc. v. Robert Bosch LLC*, No. 15 CV 2207, 2017 WL 6059770, at *3 (N.D. Ill. Dec. 7, 2017).

Mr. Jepsen does not have unique personal knowledge relevant to this litigation, and there is nothing that suggests otherwise. Mr. Jepsen is not a document custodian nor have the documents produced in discovery demonstrated that Mr. Jepsen has relevant information. The *only* documents Plaintiffs identified as the basis for Mr. Jepsen's deposition are generic statements in John Deere's 2023 10-K and a 192-page earnings release presentation that says nothing about financial analyses relating to "right to repair" legislation. Even if these documents contained relevant statements, there is no reason to believe Mr. Jepsen has unique personal information about those statements or anything else that would justify taking his deposition.

Plaintiffs' strained attempts to get around reality is pretext bordering on gamesmanship. On March 1, 2024, Plaintiffs amended their Initial Disclosures, baselessly asserting that Mr. Jepsen would have "[k]nowledge [of] and/or participation in Deere's unreasonable restraints on competition in the repair services market." But as Your Honor has recognized, "simply listing an apex witness under Rule 26(a)(1) as a means of bootstrapping a party's attempt to depose him or her is unlikely to persuade a court." Johnston, J., Apex Witnesses Claim They are Too Big to Depose, 41 Litigation 1, 4 (Fall 2014). There is no reason to believe Mr. Jepsen would have information on the indicated subject matter in Plaintiffs' Amended Initial Disclosures, much less

6

"unique personal knowledge" as to nonexistent financial analyses relating to right to repair legislation.

> B. The Subject Matter of Mr. Jepsen's Desired Testimony Has Been Obtained by Other Less Intrusive Discovery Means.

John Deere has provided discovery responses and produced *four* witnesses to testify on the topics for which Plaintiffs say they need Mr. Jepsen's testimony. Two of those witnesses, Mr. Caldwell and Mr. Morgan, testified that Plaintiffs' sought-after financial analysis does not exist. Mr. Caldwell testified that John Deere's future performance and profitability projections are limited to those that are publicly available and that no analysis relating to the impact of "right to repair" legislation has been done. *See* Ex. A. During Mr. Morgan's 30(b)(6) deposition, he repeatedly testified that no financial analyses of "right to repair" legislation or regulations had been conducted during the relevant time period. Mr. Morgan also testified that he confirmed the basis of that testimony through conversations with numerous John Deere employees, including executives at John Deere, two of which Plaintiffs have already deposed. The discovery on this issue does not end there. John Deere served verified interrogatory responses affirming that "John Deere . . . has not conducted internal projections of its financial performance and/or profitability related to the potential impact of Right to Repair and/or Fair Repair bills, laws, or legislation for the Relevant Time Period." *See* Ex. C. John Deere has satisfied its discovery obligations. There is no more information that can be provided without running afoul of Rule 26.

The 192-page earnings release presentation has nothing to do with Plaintiffs' purported need for Mr. Jepsen's testimony on the financial impact on John Deere from "right to repair" developments, and it supplies no other basis to require Mr. Jepsen's testimony. Plaintiffs point to *one* alleged statement which claims that "few farmers want to modify code" as their basis to depose Mr. Jepsen. But Plaintiffs have now deposed 12 John Deere current or former employees and have

7

at least six more depositions scheduled where Plaintiffs can explore the issue of a farmer's ability to tamper or modify equipment. Both Mr. Gakstatter and Mr. Suhre testified extensively on issues related to software tampering or modifications on tractors. *See* Ex. E. This testimony touches on the exact issue in the statement identified by Plaintiffs in this presentation. Plaintiffs' inability to get their desired testimony relating to modifications does not enable them to depose Mr. Jepsen, an apex witness with no unique personal knowledge on these issues (or any other issue in this litigation).

Plaintiffs have not and cannot show that Mr. Jepsen's testimony will differ from John Deere's discovery responses or the testimony of Mr. Caldwell, Mr. Morgan, Mr. Gakstatter, or Mr. Suhre. This duplicative and cumulative testimony—not to mention Mr. Jepsen's lack of unique personal knowledge—is the exact discovery that Rule 26 seeks to prevent.

### C. Any Deposition of Mr. Jepsen Will Impose Hardship in Light of His Lack Unique Personal Knowledge.

The apex doctrine "bespeaks sensitivity to the risk that very valuable executive time would be wasted where the officer has no real information." *Little*, 2020 WL 868528 at *1 (citations omitted). "Even very slight inconvenience may be unreasonable if there is no occasion for the inquiry." *Nucap Indus. Inc.*, 2017 WL 6059770, at *4 (granting defendants' motion for protective order of Robert Bosch GmbH's Chairman of the Board of Management).

With fact discovery closing in less than 15 days, requiring a deposition of Mr. Jepsen, John Deere's Senior Vice President and Chief Financial Officer, on such short notice would unduly encroach on his responsibilities which do not relate to the any of the claims or defenses in this litigation. Additionally, as the end of second quarter of the fiscal year is approaching, forcing Mr. Jepsen to sit for a deposition would be extremely disruptive to John Deere's business because Mr. Jepsen and his team are preparing an earnings report, with financial results set to be announced on

May 15, 2025, as well as preparing for several meetings with the Board of Directors and Mr. Jepsen's fellow executive staff the following week. Notwithstanding these time-consuming obligations, because there is "no occasion" to depose Mr. Jepsen, the apex doctrine protects senior executives in these exact circumstances.

### IV. CONCLUSION

For the foregoing reasons, this Court should grant John Deere's Motion for Protective Order.

Dated: May 7, 2025                                    Respectfully submitted,

/s/ Corey A. Lee

John M. Majoras
jmmajoras@jonesday.com
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, DC 20001
Telephone: (202) 879-3939

Tiffany D. Lipscomb-Jackson
tdlipscombjackson@jonesday.com
**JONES DAY**
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43215-2673
Telephone: (614) 281-3876

Corey A. Lee
calee@jonesday.com
**JONES DAY**
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939

Amanda B. Maslar (6321073)
amaslar@jonesday.com
**JONES DAY**
110 North Wacker, Suite 4800
Chicago, IL  60606
Telephone: (312) 782-3939

Sean M. Berkowitz (IL Bar No. 6209701)
Gary Feinerman (IL Bar No. 6206906)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
sean.berkowitz@lw.com
gary.feinerman@lw.com

Amanda P. Reeves (pro hac vice)
Tara D. Elliott (pro hac vice)
Ian R. Conner (pro hac vice)

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
amanda.reeves@lw.com
tara.elliott@lw.com
ian.conner@lw.com

Belinda S Lee (pro hac vice)
Meaghan Thomas-Kennedy (pro hac vice)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
belinda.lee@lw.com
meaghan.thomas-kennedy@lw.com

*Counsel for Defendant Deere & Company*

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on May 7, 2025, a copy of the foregoing was filed using the CM/ECF system, which will effectuate service on all counsel of record.

      */s/ Corey A. Lee*