**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| IN RE: DEERE & COMPANY<br>REPAIR SERVICES ANTITRUST LITIGATION | Case No.: 22-cv-50188<br><br>Judge Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Throughout the last year, the MDL Plaintiffs have continually sought discovery explaining whether (and to what extent) Defendant John Deere considers "right to repair' legislation in preparing financial reports. *See* Dkt. 261, 1. Deere consistently refuses these requests because "as Plaintiffs know, no such analyses exist[] during the agreed-to relevant time period." Dkt. 255, 1. Deere believes this adequately answers the Plaintiffs' questions and that further depositions on the matter would only be redundant. Deere especially opposes the deposition of its Chief Financial Officer and Senior Vice President, Joshua Jepsen.

Presently before the Court is Deere's motion for a protective order seeking to completely bar the Plaintiffs from deposing Mr. Jepsen. On a motion for protective order under Rule 26(c), "[t]he party seeking protection from discovery bears the burden of presenting 'a particular and specific demonstration of fact' as to the need for that protection." *City of Rockford v. Mallinckrodt ARD, Inc.*, Nos. 17 CV 50107, 20 CV 50056, 2020 U.S. Dist. LEXIS 59810, at *5 (N.D. Ill. Apr. 6, 2020) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981). Deere has not made the requisite "strong showing" to prevent Mr. Jepsen's deposition. *Id.*

Deere's motion solely relies on the apex witness doctrine: "a common law mechanism to limit overly burdensome discovery requests directed at top-level executive officers of a corporation or entity, particularly where the deposition has certain harassing qualities." *Cruz v. Guevara*, No. 23 C 4268, 2024 U.S. Dist. LEXIS 184486, at *13 (N.D. Ill. Oct. 9, 2024). More of a legal theory than a formal "doctrine," this line of cases encourages courts to consider "the risk that very valuable executive time would be wasted where [a high-ranking executive] officer has no real information." *Dyson, Inc. v. SharkNinja Operating LLC*, No. 1:14-cv-0779, 2016 U.S. Dist. LEXIS 54267, at *5 (N.D. Ill. Apr. 22, 2016). Part of the rational is that parties should not be incentivized to force a settlement in a nuisance case by using harassing discovery. *Mallinckrodt*, 2020 U.S. Dist. LEXIS 59810, at *5 (citing *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002)).[1] Although the apex witness doctrine suggests additional factors for district court's consideration—as with any protective order—the ultimate decision "involves an exercise of the court's vast, unquestioned discretion." *Donald v. City of Chi.*, No. 20 C 6815, 2022 U.S. Dist. LEXIS 37541, at *3 (N.D. Ill. Mar. 3, 2022).

---

[1] That rational is not present in this action. This action is not a nuisance case. And Deere isn't going to fold simply because its CFO is deposed.

1

Not surprisingly, the law surrounding apex witnesses is somewhat indeterminate. When ruling on protective orders for executive depositions, courts generally ask whether: (1) the official has unique personal knowledge of the disputed matter; (2) the information can be collected through less intrusive discovery methods; and (3) the deposition unduly interferes with the officer's professional duties. *Little v. JB Pritzker*, No. 18 C 6954, 2020 U.S. Dist. LEXIS 29805, at *3 (N.D. Ill. Feb. 21, 2020). But even within the same jurisdiction, some courts substitute the final "and" for an "or." *Compare Evolve Biosystems, Inc. v. Abbott Labs.*, No. 19 CV 5859, 2022 U.S. Dist. LEXIS 252240, at *3 (N.D. Ill. Nov. 8, 2022) (using the conjunctive) *with Cruz v. Guevara*, No. 23 C 4268, 2024 U.S. Dist. LEXIS 184486, at *14 (N.D. Ill. Oct. 9, 2024) (using the disjunctive). It's best to look at this list as factors—or data points as the kids say these days—in determining whether good cause exists under Rule 26(c).

Despite some confusion, the weight of the authority shows that the decision to bar apex depositions follows at least a two-step analysis. "[T]he logical underpinning[] of the apex doctrine seeks to prevent a high-ranking corporate executive from being run through the wringer of civil discovery[] when they do not have personal knowledge of the relevant facts . . . ." *Kove IO, Inc. v. Amazon Web Servs., Inc.*, No. 18 C 8175, 2021 U.S. Dist. LEXIS 269297, at *18 (N.D. Ill. Oct. 15, 2021); *Lee v. City of Chi.*, No. 20 CV 1508, 2021 U.S. Dist. LEXIS 109939, at *7 (N.D. Ill. June 11, 2021) (collecting cases).[2] So, courts only reach the latter factors if, as a preliminary matter, the witness has unique personal knowledge of the subject.

There is no doubt about the threshold showing: Deere's CFO has unique personal knowledge about the company's finances. Deere argues that the Plaintiffs have no reason to believe Mr. Jepsen has personal knowledge beyond what was already produced in discovery. Dkt. 255, 5–7. This argument relies on Deere's response in interrogatories that "it has not conducted internal projections of its financial performance and/or profitability related to the potential impact of Right to Repair and/or Fair Repair bills, laws, or legislation for the Relevant Time Period." Dkt. 261-3. But even without those projections, Mr. Jepsen uniquely understands the company's internal assessments and what it would consider to generate such a report. The Plaintiffs are therefore entitled to discuss qualitative variables uniquely within Mr. Jepsen's knowledge and control and not captured by Deere's interrogatory responses.

As for the remaining considerations, the Court jointly considers the availability of alternative witnesses and less intrusive discovery methods. The Plaintiffs have tried both. Throughout interrogatories and 30(b)(6) depositions, Deere consistently asserts that it hasn't formally analyzed the financial impacts of "right to repair" legislation. But this argument ignores the Plaintiffs' right to information on informal qualitative aspects. Deere's 30(b)(6) witnesses have respectively testified that they lack personal knowledge of internal financial projections, Dkt. 261-2 at 52:19–24, and that Deere hasn't quantitatively analyzed the financial impact of "right to repair" legislation. Dkt. 261-3 at 198:24–199:5. Deposing Mr. Jepsen allows

---

[2] One might wonder why fat cats receive this protection when everyday Joes must still be subjected to the wringer. *See* Hon. Iain D. Johnston, *Apex Witnesses Claim They Are Too Big to Depose,* Litigation, Fall 2014, at 41; Mike Vilensky, *Once Too Big to Testify, CEOs Feel Backlash to 'Apex Doctrine'*, BLOOMBERG LAW (Oct. 9, 2024, 4:01 AM CDT), https://perma.cc/C69E-X9A6.

probative insights to the company's internal finances, not available through other discovery methods or witnesses.

      Finally, for the reasons already given, the requested deposition is a reasonable demand on Mr. Jepsen.  Deere argues that Mr. Jepsen shouldn't be deposed because he recently prepared an earnings report (published a few days before this Order) and is presently meeting with Deere's executive suite.  Dkt. 255, 8–9.  Perhaps—and that's open for considerable debate—those "slight inconvenience[s]" would excuse Mr. Jepsen if his testimony were truly duplicative.  *Id*. at 8 (citing *Nucap Indus. v. Robert Bosch LLC*, No. 15 CV 2207, 2017 U.S. Dist. LEXIS 201458, at *13 (N.D. Ill. Dec. 7, 2017).  But, contrary to Deere's assertions, Mr. Jepsen's testimony is relevant to the merits of the Plaintiffs' claims and their damages assessment.  When balancing the value of Mr. Jepsen's anticipated testimony against his temporary busyness, Mr. Jepsen's executive responsibilities are not persuasive.

      The Parties are therefore ordered to make mutually agreeable arrangements for Mr. Jepsen's deposition sometime after Deere's May executive meetings, but no later than June 11, 2025.  Given the Parties' mutual professionalism to date, the Court is confident that the Plaintiffs will make reasonable efforts to minimize the inconvenience to Mr. Jepsen.  On the record available, there is no indication that the Plaintiffs' efforts to depose Mr. Jepsen are harassing, embarrassing, abusive, or any more annoying than any other good-faith deposition.  Without that evidence, "completely prohibiting a deposition is an extraordinary measure," *id.* at 4, unwarranted by the substance of Deere's motion.  The Court will impose additional limits only in the unlikely event that the Parties cannot reach their own agreement.

      For these reasons, the Court denies Deere's motion for a protective order [255].

Entered: May 19, 2025                                              By:_____
                                                                                  Iain D. Johnston
                                                                                   U.S. District Judge