**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Federal Trade Commission, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 25 CV 50017 |
| | ) Judge Iain D. Johnston |
| Deere & Co., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |
| | ) |
| In re: Deere & Co. Repair Services Antitrust | ) |
| Litigation | ) No. 22 CV 50188 |
| | ) Judge Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Three of John Deere's main competitors—which have intervened in this case

for a limited purpose, Dkt. 179—seek a protective order to restrict the access to and

use of documents they provided to the Federal Trade Commission during a pre-

filing investigation.[1] The motions are denied; however, the confidentiality orders in

this case and in *In re Deere & Co. Repair Services Antitrust Litigation*, 22 CV 50188

will be amended as reflected in this order.

---

[1] Because each of the competitors is now a party for the limited purpose of challenging the
production and use of confidential information, each can seek a protective order under Rule
26(c), which provides protections to parties. *Blum v. Schlegel*, 150 F.R.D. 38, 39 (W.D.N.Y.
1993); *see, e.g., Nissei Sangyo America Ltd. V. United States*, 31 F.3d 435 (7th Cir. 1994);
*see also Planned Parenthood of Wisconsin v. Kaul*, 942 F.3d 793, 803 (7th Cir. 2019)
("[Permissive intervention] leaves the district court with ample authority to manage the
litigation before it. The court can even place conditions on the scope of permissive
intervention, allowing more voices to be heard without overcomplicating the case with
additional claims, defenses, discovery, and conflicting positions.").

## BACKGROUND

**The Litigation**

In 2022, several class actions were filed against Deere & Company for allegedly violating various antitrust laws by prohibiting owners of Deere agricultural equipment—such as tractors, combines, and other large agricultural machinery—from repairing the equipment or using independent repair providers. These actions were consolidated in this Court as part of a multi-district litigation action.

In 2025, the Federal Trade Commission, Illinois, and Minnesota sued Deere alleging, among other things, that Deere makes critical repair tools only available to Deere dealers, preventing owners of Deere large agricultural equipment—such as tractors and combines—from repairing their equipment themselves or using independent repair providers, which violates various anti-trust laws. The Court has already found that the MDL action and the Governments' action are very similar. 25 CV 50017, Dkt. 152, at 12.

**The FTC's Pre-Filing Investigation**

Before filing the complaint[2] in this action, the Federal Trade Commission engaged in a lengthy and comprehensive pre-filing investigation of Deere regarding allegations that Deere restricted the ability of Deere customers to repair products themselves or use independent repair providers and whether these alleged restrictions violated antitrust laws. But the investigation's scope was nevertheless

---

[2] Illinois and Minnesota were parties with the FTC in the initial filing. Since that time, Arizona, Michigan, and Wisconsin have joined as plaintiffs.

limited.  The nature and scope of the investigation related to repair restrictions.

Specifically, the nature and scope of the investigation was to "investigate whether

any persons, partnerships, or corporations have engaged or are engaging in unfair,

deceptive, anticompetitive, collusive, coercive, predatory, exploitative, or

exclusionary acts or practices, in or affecting commerce, related to *repair*

*restrictions* . . . ."  (emphasis added.)

During that pre-filing investigation, the FTC sought and obtained documents

from Deere's competitors, including CNH Industrial America LLC, Kubota Tractor

Corporation, and AGCO Corporation (collectively, the OEMs) through civil

investigative demands ("CIDs").  These CIDs stated that the subject of the

investigation was to "determine whether Deere & Company, or any other person,

has engaged in or is engaging in unfair, deceptive, anticompetitive, collusive,

coercive, predatory, exploitative, or exclusionary acts or practices in or affecting

commerce *related to the repair of agricultural equipment* in violation of Section 5 of

the Federal Trade Commission Act . . . ."  (emphasis added.)

In response to the CIDs, each OEM and the FTC each negotiated the scope of

the CIDs.  So, the scope of the CIDs was narrowed.  Dkt. 84, at 4; Dkt. 83, at 3; Dkt.

78, at 4.  Under the FTC's regulations, materials obtained by it may be disclosed in

a court proceeding at the FTC's discretion so long as the disclosure is lawful.  16

C.F.R. § 4.10(g).  An entity that provides the FTC materials during a pre-filing

investigation that the entity deems confidential must be afforded an opportunity to

seek a protective order before a court disclosure.  *Id.*  Unsurprisingly, the FTC is

loath to produce confidential information to competitors lest its own actions help further anti-competitive behavior.

Despite the negotiations and narrowing of the demands, the CIDs netted various financial documents of the OEMs ("Confidential Information"). These documents included documents that the OEMs object to being disclosed to both Deere and the MDL Plaintiffs. In addition to the Confidential Information, the OEMs identified specific documents that they don't want any entity to access. The specific documents at issue are these: for CNH, annual "KE-30" accounting reports and a "Parts Report"; for AGCO, dealer network spreadsheets, AEM[3] spreadsheets, and parts and whole goods spreadsheets; and for Kubota, AEM spreadsheets, parts sales and pricing spreadsheets, and rolled up financial data. 2025 CV 50017, Dkt. 173, at 2.[4] For purposes of this Order, the Court will refer to these specific documents as the Contested Documents, which are a subset of the Confidential Information. The Contested Documents contain highly confidential information that is critical to the business of the OEMs. The OEMs have fully and properly presented sufficient evidence as to the confidential and critical nature of these documents. And no party contends the Contested Documents aren't highly confidential.

During the pre-filing investigation, the FTC also served a CID on the Association of Equipment Manufacturers for data. The Association filed a motion to

---

[3] "AEM" is the Association of Equipment Manufacturers.
[4] At various times, these documents have been referred to as "the crown jewels." Dkt.129, at 2.

4

quash the CID in federal district court. In response, the FTC withdrew the CID to the Association and didn't respond to the motion to quash. So, the Association's concern about the CID was resolved in the Association's favor. 22 CV 50188, Dkt. 218, at 25, 43-44. [5]

### Documents Obtained in Pre-Filing Investigation Sought in This Action and MDL Action

After this action was filed, unsurprisingly, Deere sought all the documents the FTC obtained during the pre-filing investigation, including the Confidential Information and Contested Documents. [6] Not to be left out, in the related MDL action, the MDL Plaintiffs will seek to obtain these documents from Deere if the FTC produces the documents in this action to Deere. [7]

The parties in both actions—along with the OEMs—negotiated a confidentiality order under Rule 26(c). So, the OEMs had input into the terms of the Confidentiality Order. This order starts by defining "Confidential Information"

---

[5] The FTC's CID may have been served on the Association's third party (Hargrove & Associates), not the Association. Counsel's representations on this were somewhat contradictory. But the larger point remains: The FTC sought critical documents from a third party; the third party sought protection from a court; and the FTC withdrew the request, thereby negating the need to produce the documents. So, when the FTC seeks documents, parties have remedies, and at least occasionally, a party prevails, and the documents are not produced.

[6] By agreement, Deere doesn't seek non-U.S. data or data not related to large agricultural equipment. Dkt. 175, at 7. To remove the double negatives, stated differently, Deere only seeks U.S. data related to large agricultural equipment.

[7] The OEMs gripe that the MDL Plaintiffs didn't seek these documents previously during the pendency of the MDL action through a subpoena or other procedure. The OEMs don't cite a rule or authority that this is a legitimate basis to support a protective order. *Cf.* Fed. R. Civ. P. 26(b)(2)(C)(ii). Instead, the OEMs contend that the fact that the MDL Plaintiffs didn't previously seek this information is evidence that they don't need it. But the MDL Plaintiffs' counsel didn't "need" the information because Deere didn't have the information. But now that Deere might possess the information, the MDL Plaintiffs seek to have mutual knowledge. They need to know what Deere knows.

to include "Highly Confidential – Outside Counsel Eyes Only" information. Documents and information designated in this manner protects "competitively sensitive information produced by a non-party manufacturer of agricultural equipment, parts, and repair tools based on a reasonable, good faith belief that the information contains highly sensitive business information, the disclosure of which to another party or non-party would create a substantial risk of serious competitive or commercial harm to the producing non-party." The Contested Documents fall under the "Highly Confidential – Outside Counsel Eyes Only" classification.

The Confidentiality Order also contains a specific notice provision for the OEMs, allowing them to seek additional protection before documents obtained by the FTC as part of the pre-filing investigation are produced to others. Specifically, before the FTC produces these types of documents, the FTC must give the OEMs 30 days' notice to designate the materials under the Confidentiality Order. Thereafter, if the OEMs don't think the Confidentiality Order provides sufficient protection, the OEMs can seek further protection from the Court. The FTC will not produce the documents until the Court has ruled on the OEMs' motion. Essentially, that's what's happening with these motions for protective orders.

Highly Confidential – Outside Counsel Eyes Only designated documents and information can only be disclosed to a limited category of people. These people can review the documents and information "only to the extent reasonably necessary" to conduct the litigation. For example, as the name states, these types of documents can only be reviewed by outside counsel, not in-house counsel. Consultants and

6

experts may review the information, but they must sign an Acknowledgement of Understanding and Agreement to be Bound. This Acknowledgement subjects the consultants and experts to the jurisdiction of the Court and binds them to the terms of the Confidentiality Order. The Acknowledgement also provides that the consultants and experts can only use the Confidential Information "solely for the purposes of" the Governments' action.

What's more, the Confidentiality Order provides protections to secure the documents and information. For example, counsel for the parties must make reasonable efforts to prevent the unauthorized or inadvertent disclosure of Confidential Information. And any person in possession of Confidential Information must use reasonable safeguards designed to protect the security and confidentiality of the documents and information, protect against any reasonably anticipated threats or hazards to the security of the documents and information, and protect against unauthorized access to or use of the documents and information. At the conclusion of the litigation, except for a few limited exceptions, Confidential Information must be destroyed or returned.

## ISSUE

### Pending Motions

The OEMs have now filed motions[8] for a protective order to prevent the FTC from producing the Contested Documents obtained in the pre-filing investigation to

---

[8] These motions spawned considerable filings. *See, e.g.,* Dkt. 37, 120, 121, 122, 125, 140, 143, 163, 164. Indeed, the issue even percolated into the unrelated motion to intervene. Dkt. 177; Dkt. 175. The Court has analyzed all of these filings and more to reach its determination.

Deere and from producing *any* documents and information the FTC obtained during the pre-filing investigation to the MDL Plaintiffs. Dkt. 78, 83, 84. Through multiple conferences, the FTC and the OEMs were able to alleviate *some* of the OEMs' concerns and reach agreement regarding many of the documents the FTC obtained during the pre-filing investigation. *See, e.g.,* Dkt. 175, at 7. The Court thanks counsel for their efforts. But they were unable to reach agreement as to the Contested Documents. Dkt. 129, at 2. Although the OEMs seek to continue to negotiate about producing these documents to Deere, Deere has declared an impasse. Dkt. 163, 164.[9]

To their credit, the OEMs don't seek to prohibit Deere from obtaining some of the information they produced to the FTC during the pre-filing investigation. But the OEMs oppose Deere having access to the Contested Documents—the "crown jewels," as they put it—they produced to the FTC. As competitors, the OEMs don't want Deere to have access to documents containing critical, highly-confidential information. According to the OEMs, the Contested Documents are not relevant to

---

[9] The Court recognizes that high-stakes litigation is rarely treated with the gentility of high tea at the Savoy. *See In re Marriage of Adler*, 648 N.E.2d 953, 956 (Ill. App. Ct. 1995) (Hoffman, J.) (rest in peace). So, sharp elbows can occur. But that has yet to happen in the Governments' action or the MDL action. The Court commends all counsel for their civility and professionalism in these actions.

8

either action, and even if they were, the "burden"[10] of producing the documents outweighs Deere's need.

As mentioned, the OEMs seek broader relief against the MDL Plaintiffs. The OEMs don't want the MDL Plaintiffs to receive *any* of the documents or information obtained by the FTC during the pre-filing investigation. It's not just the Contested Documents the OEMs don't want the MDL Plaintiffs' counsel to receive. It's *all the information* the OEMs provided to the FTC during the pre-filing investigation. So, although Deere holds the majority of the market share for combines and tractors and is the largest rival to each of the OEMs, the OEMs are more concerned about the MDL Plaintiffs' counsel obtaining Confidential Information—or any information, for that matter. Obviously, counsel for the MDL Plaintiffs don't compete in the marketplace against the OEMs. So, the OEMs concerns about the MDL Plaintiffs' counsel obtaining the information relate to either being sued by the MDL Plaintiff's counsel, 22 CV 50188, Dkt. 218, at 26—which would require an intentional violation of the Confidentiality Order—or that the MDL Plaintiffs' counsel will somehow inadvertently disclose the Confidential Information. As counsel bluntly and honestly said, "[W]e just don't want this information out there." 22 CV 50188, Dkt. 242, at 12-13.

---

[10] The OEMs use the term "burden" to mean "the interests that enforced production would compromise or injure." *Patterson v. Burge*, 03 C 4433, 2005 U.S. Dist. LEXIS 1331, at *6 (N.D. Ill. Jan. 6, 2005) (*citing Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 928-29 (7th Cir. 2004).); *see also Davis v. City of Springfield*, No. 04-3168, 2009 U.S. Dist. LEXIS 26806, at *8-10 (C.D. Ill. Apr. 1, 2009). Obviously, as the documents have already been gathered and produced to the FTC and are in the FTC's possession, the traditional and usual concept of burden (an administrative burden) doesn't apply under these circumstances.

9

**Contentions**

The OEMs contend that the information they provided to the FTC, particularly the Contested Documents, are confidential. And because the information is confidential, the OEMs assert that Deere must establish that the relevance of and need for the information outweighs the harm caused by the disclosure to Deere. According to the OEMs, the information is not relevant, and Deere—and the FTC for that matter—have failed to show that they need the information. Undergirding the OEMs' contention is that absent a showing of relevance and need, the Court shouldn't even consider the protections offered by the Confidentiality Order, but even if it did, the Confidentiality Order is insufficient to alleviate the potential harm.

Deere doesn't argue that the Contested Documents are confidential, but Deere points out that it is common knowledge and practice that documents—even documents of non-parties—that the FTC obtains in pre-filing investigations are produced in subsequent litigation.[11] Moreover, Deere believes the documents are relevant, particularly when viewed in light of the allegations in the complaint. But Deere's apparently biggest concern is that without the Contested Documents, it will be forced to litigate against the FTC with a knowledge deficit. According to Deere, the FTC has possessed the Confidential Information for months and has been able

---

[11] *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626 (6h Cir. 2014); *United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 185 (D.D.C. 2018). Similarly, apparently, it's common practice for parties in large antitrust cases to subpoena and receive detailed transactional data from third parties to better inform their experts' economic analyses. *Fusion Elite All Stars v. Rebel Ath. Inc.*, No. 20-cv-2600, 2022 U.S. Dist. LEXIS 77287, at *22 (W.D. Ten. Apr. 28, 2022).

to analyze it and develop a litigation strategy based on that analysis. Without possessing and analyzing these same documents, Deere will be litigating against the FTC without being fully informed; there will be asymmetry of knowledge. Lastly, Deere contends that any potential concerns about disclosure are adequately addressed by the Confidentiality Order.

Like Deere, the FTC notes that it routinely discloses documents obtained during pre-filing investigations. The FTC also asserts that the Contested Documents are relevant and needed for the litigation. Additionally, the FTC asserts that any potential harm is unlikely and adequately addressed by the Confidentiality Order.

The OEMs contend that the MDL Plaintiffs shouldn't have access to *any* of the information disclosed to the FTC during the pre-filing investigation. What's more, the OEMs reassert their contention that the information is not relevant and that the MDL Plaintiffs don't need the information. Additionally, the OEMs contend that the possibility of inadvertent disclosure and resulting harm is too great. The MDL Plaintiffs counter by contending that if Deere possesses the Confidential Information, including the Contested Documents, then it is likewise entitled to the information. In the same way that Deere contends that it is entitled to mutual knowledge with respect to the FTC, the MDL Plaintiffs contend that they are entitled to know what Deere knows.

## ANALYSIS

Deere has the better argument. Understandably, the OEMs rely upon the balancing test used when a party serves a subpoena through Rule 45 on a non-party that would result in the disclosure of confidential information. Under this approach, if the respondent establishes that confidential information is being sought, then the burden shifts to the serving party to establish that the information is sufficiently relevant and necessary so as to outweigh the harm the disclosure would cause. *Shields Enters., Inc. v. First Chicago Corp.*, No. 86 C 10213, 1988 U.S. Dist. LEXIS 14950, at *10 (N.D. Ill. Dec. 28, 1988); *see FTC, et al. v. GTCR, LLC, et al.*, 25-cv-2391, Dkt. 177, at 4; *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 138 F.R.D. 530 (C.D. Ill. 1991). But the circumstances in this case are fundamentally different than those at play when the balancing test is used under Rule 45. In the OEMs' cited cases, the respondent is seeking to prevent the initial disclosure of the information. The cat's still in the bag. In this case, the OEMs have *already* produced the information to the FTC, now a party to litigation, and the FTC has considered that information. The cat's out of the bag. And the OEMs produced the information without seeking protection from a federal court—as the AEM (or Hargrove & Associates) did—and with full knowledge that there was a good chance these documents would be disclosed in subsequent litigation. Alone, these fundamental differences make the cases upon which the OEMs rely inapplicable, including *FTC, et al. v. GTCR, LLC, et al.*, 25-cv-2391, Dkt. 177, at 4.

The Court doesn't follow the OEMs' main case—*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 138 F.R.D. 530 (C.D. Ill. 1991)—for this and three other reasons. First, like Judge Cummings' decision in *FTC v. GTCR*,[12] *Greater Rockford Energy* isn't binding. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). Second, deciding whether to enter a protective order in these situations is discretionary. *Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1346 (7th Cir. 1984) (district courts have wide discretion in deciding what documents are protected by a Rule 26(c) protective order). And, when making discretionary decisions, different judges faced with similar facts can reach different conclusions, with neither abusing their discretion. *Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 55-56 (E.D. Pa. 1980) ("Of course, it is in the nature of such a discretionary judgment that the same set of facts may evoke contrary responses but responses which are nonetheless equally warranted in law from different judges."); *see also Bracey v. Grondin*, 712 F.3d 1012, 1020 (7th Cir. 2013); *United States v. Williams*, 81 F.3d 1434, 1437 (7th Cir. 1996). Third and most importantly, the analysis in *Greater Rockford Energy* is suspect. *Greater Rockford Energy*'s analysis starts by stating, "[I]t is not the magnitude of the potential harm that could occur from disclosure, but rather, the likelihood that such harm could occur at all. *Citicorp v. Interbank Card Ass'n.*, 87 F.R.D. 43, 47 (1980). Here, the Court finds that the likelihood of such harm occurring is minimal." *Greater Rockford Energy*, 138 F.R.D. at 533. But then, strangely, the analysis focuses almost entirely on the

---

[12] The Court isn't saying in any way that Judge Cummings' decision in *FTC v. GTCR* is incorrect, just that it's not applicable to these facts.

magnitude of potential harm—not the likelihood of harm—to justify denying the production of the information. *Id.* at 535, 536, 537. And the *Greater Rockford Energy* court did so even after it previously found that the likelihood of harm occurring was minimal. *Id.* at 533.

Rather than relying on *Greater Rockford Energy*, the Court finds helpful the non-precedential decision of *United States v. Aetna Inc.*, No. 16-cv-1494, 2016 U.S. Dist. LEXIS 194989 (D.D.C. Sep. 4, 2016). On the parties' presentation and the Court's own research, *Aetna* is the only decision concerning a non-party's attempt to object to the production of documents that were already tendered to the government during a pre-filing investigation. In *Aetna*, the Department of Justice served CIDs on Aon and UnitedHealth during DOJ's investigation into a merger between Aetna and Humana. *Aetna*, 2016 U.S. Dist. LEXIS 194989, at *7. In response to the CIDs, Aon and UnitedHealth provided DOJ with "confidential and competitively sensitive" documents and "highly confidential documents and data." *Id.* After DOJ filed an action related to the merger, Aon and UnitedHealth informed DOJ that they objected to DOJ producing these documents ("confidential information") to the defendants, Aetna and Humana. *Id.* Aon and UnitedHealth then filed motions to modify the existing protective order to prevent, or at least limit, the disclosure of the confidential information to the defendants, who were their competitors. Among other things, Aon and UnitedHealth argued that the confidential information wasn't relevant to the actions, and that the DOJ pre-filing investigation was far more expansive than the claims eventually made in the action. *Aetna*, 2016 U.S.

14

Dist. LEXIS 194989 at *9-10.  The United States objected to the motion, arguing that there was no precedent for the unusual and unnecessary request.  The defendants also objected, arguing that if the motions were granted the United States would benefit by possessing a "significant amount of information … that would be off-limits to defendants."  *Id.* at *10.

The *Aetna* decision didn't use a balancing test in denying the motion.  Indeed, the decision rejected Aon's assertion that a "'broad distribution [did] not appropriately balance Aon's interest in "avoiding the inadvertent use or disclosure of the Aon Confidential Reports with the parties'" need to litigate their cases.'" *Id.* at *25.  Instead, the *Aetna* decision focused on the burdens required to modify protective orders.  *Id.* at *17.  In doing so, the *Aetna* decision found that the protections afforded by the protective order were sufficient to safeguard the non-parties' (Aon and UnitedHealth) confidential information.  *Id.* at *17-33.  The Court finds this decision persuasive on all fronts.

The *Aetna* decision is analogous and well-reasoned throughout, with two points warranting special attention.  First, the *Aetna* decision highlighted the inappropriateness of a non-party deciding what is relevant to litigation, which would result in a non-party preventing a competitor access to all the information that the government has when the government sues the competition.  Second, the same types of protections that existed in the *Aetna* protective order exist in the Confidentiality Order, including limiting who has access to the confidential information, how they can use the confidential information, that persons who have

15

access to the confidential information acknowledge the requirements of the protective order, and that the confidential information is returned or destroyed at the conclusion of the litigation. Having set aside the inapplicable balancing test of *Greater Rockford Energy*, the Court now analyzes these two points in order.

### Fundamental Fairness Concerns with Non-Party Intervention

Like in *Aetna*, the Government is the only party in this action that possesses the Confidential Information. The FTC can—and, in fact, did—use Confidential Information in the Governments' action against Deere. Justice can't be done unless all parties have equal access to relevant information. In 1947, the Supreme Court recognized this principle when it stated, "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Allowing the FTC to have access to the Confidential Information, including the Contested Documents, but not allowing Deere the same access puts Deere at a fundamental disadvantage in this critical litigation. Without being trite, denying Deere access to this information is fundamentally unfair. So, Deere is entitled to the Confidential Information, including the Contested Documents.

And once Deere has access to the Confidential Information in this litigation, for the very same reason, the MDL Plaintiffs must be provided all the Confidential Information in the MDL action. If Deere is entitled to the Confidential Information in its case against the Governments, once Deere possesses the Confidential Information, then it necessarily follows that the MDL Plaintiffs are entitled to all

the Confidential Information in their case against Deere. The MDL Plaintiffs can't be put in the same fundamentally unfair position.

The OEMs' solution to this basic problem is to simply prohibit the FTC from using the Contested Documents. Under this approach, there would be no asymmetry of knowledge. Dkt. 177, at 2. The OEMs offer no support for this novel and expansive request, allowing a non-party to prohibit a party from using information the party lawfully received from the same non-party. Besides the lack of authority for this request, the OEMs don't explain as a practical matter how this request would operate given that the FTC already possesses and analyzed the Confidential Information, including the Contested Documents. What's more, how would the Court police this ruling? Would the Court cross-examine the FTC's counsel as to each document they considered[13] in drafting the complaint? And, if it turned out that the FTC's counsel did, in fact, consider the Contested Documents for any part of the complaint, would the Court then strike those allegations? Further, going forward, would the Court need to periodically question the FTC's counsel to ensure that their litigation strategy and decisions weren't based on information gleaned from the Contested Documents, and if it were determined that the strategy and decisions were, in fact, based on the Contested Documents, what would be the remedy? Absent a neuralyzer, the Court can't imagine a way that it could enforce

---

[13] The Court uses the term "considered" in the way it is defined under Rule 26(b)(4)(C)(ii), meaning that it broader than "relied upon" and includes information reviewed but then not used. *Ross v. City of Rockford*, 15 CV 50064, 2018 U.S. Dist. LEXIS 51398, at *5-6 (N.D. Ill. Mar. 27, 2018).

the OEMs' request that the FTC not use the Contested Documents in the Governments' action.

Additionally, the OEMs' solution doesn't address the MDL Plaintiffs' counsel's request for the Confidential Information. Assuming that the Court were to prevent the FTC from using the Contested Documents in the Governments' action, the remaining Confidential Information would still be disclosed to Deere in the Governments' action. And, again, once Deere possesses even just the Confidential Information—but not the Contested Documents—that Confidential Information would need to be produced to the MDL Plaintiffs to prevent an asymmetry of knowledge. The OEMs don't address this flaw in their solution, only highlighting the *Aetna* decision's well-founded concern about a non-party dictating how documents already produced to a party in litigation can be used—if at all—by it and other parties in the same litigation.

### Strength of the Confidentiality Order

The Court also finds compelling the *Aetna* decision's focus on the protective order's protections afforded to the non-party. Generally, the Court believes that the robust Confidentiality Order—which the OEMs participated in drafting— adequately addresses concerns about inadvertent disclosure. Initially, the Confidentiality Order limits who has access to Confidential Information, including the Contested Documents. Further, the Confidentiality Order explicitly provides that the Confidential Information can only be used for this litigation. Additionally, the Confidentiality Order requires reasonable controls to prevent the unauthorized

18

or inadvertent disclosure of Confidential Information, including the use of reasonable administrative, technical or physical safeguards to protect the security and confidentiality of the Confidential Information. Moreover, at the conclusion of the litigation, the Confidentiality Order generally requires the return or destruction of Confidential Information. Finally, the Confidentiality Order requires an acknowledgment that recipients of Confidential Information have read the order and agree to be bound by the terms of the order, the failure of which subjects the recipient to serious penalties. These are the hallmarks of good protective orders,[14] and they have been found to be sufficient to protect against the disclosure of confidential information in other cases, including information produced by non-parties. *Fusion Elite All Stars v. Rebel Ath. Inc.*, No. 20-cv-2600, 2022 U.S. Dist. LEXIS 77287, at *21-22 (W.D. Tenn. Apr. 28, 2022) (protective order limited access and use of confidential information); *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 CV 0864, 2018 U.S. Dist. LEXIS 206588, at *18-22 (N.D. Ill. Dec. 6, 2018) (protective order limited use of information to particular case; provided for penalties, such as contempt, for violations; and required destruction or return of documents at the conclusion of the case); *United States v. Aetna Inc.*, No. 16-cv-01494, 2016 U.S. Dist. LEXIS 194989, at *15-20 (D.D.C. Sept. 14, 2016) (protective order limited who had access to the confidential information and what the information could be used for, specifically, that litigation).

---

[14] The Court's standard proposed protective order has many of these provisions. The parties wisely used this document as their starting point. The Court thanks Magistrate Judge Shelia Finnegan (ret.) for creating the standard protective order.

But, being cautious by nature, the Court will require the following additional protections in the Confidentiality Order.  First, in ex parte filings, contractors, consultants, and experts will be identified to the Court.  For contractors and consulting firms, including vendors, the chief operating officer will also be identified.  The Court will thereafter schedule an ex parte call with the chief operating officer to not only emphasize the importance of the Confidentiality Order, but also the consequences for failing to comply with the Confidentiality Order, including monetary sanctions, referral to any disciplinary body, enjoining the further use of the information by a person or entity, and civil and criminal contempt.  These calls can occur with more than one chief operating officer.  For consulting or testifying experts, the same process will be used.  Those calls will be separate from any calls with chief operating officers, but those calls can include more than one expert.  Second, going forward, any filing containing any Confidential Information must be filed under seal consistent with Local Rule 5.8. The entity that produced the Confidential Information during the pre-filing investigation must be notified of the filing at the time of the filing and be provided with a copy of the filing contemporaneously with the filing. The filing will remain sealed for three days (as computed under Rule 6) but will be unsealed absent a motion by the entity within those three days to keep the filing sealed.  Third, the Acknowledgement and Agreement to be Bound must be signed under penalty of perjury.  Fourth, attorneys who are no longer representing any party to the litigation must file a motion to withdraw under Local Rule 83.17 within seven days

20

of the entry of this order.  Going forward, any attorney no longer representing any party must comply with Local Rule 83.17 within five days.  Fifth, as agreed to by Deere, e-discovery vendors are prohibited from accessing the Contested Documents. Dkt. 175, at 7.

The Confidentiality Order in the MDL action must be revised to incorporate these additions, too.

The existing protections of the Confidentiality Order in conjunction with the additional requirements the Court has added provide the Court with confidence that inadvertent disclosure is not reasonably likely to occur. *Coca-Cola*, 107 F.R.D. at 293 ("[T]he relevant injury to be weighed in the balance is not the injury that would be caused by public disclosure, but the injury that would result from disclosure under an appropriate protective order.").  And the possibility of inadvertent disclosure doesn't require barring access to confidential information when a protective order reasonably addresses that possibility.  *JAB Distribs., LLC v. London Luxury, LLC*, No. 09-CV-5831, 2010 U.S. Dist. LEXIS 109178, at * 10 (N.D. Ill. Oct. 13, 2010) ("It is of little surprise, then, that Defendant does not marshal even a single case for its proposition that the mere possibility of an inadvertent disclosure of confidential information fatally undermines the operation of a protective order, thus justifying its decision not to produce the sought-after documents.")

The very few concerns the Court has about misuse or inadvertent disclosure are further reduced by the nature of the Confidential Information.  For example, a

stated concern was that the Confidential Information might be filed on the Court docket. But the Contested Documents are structured data. In the Court's experience and as stated by one of the MDL Plaintiffs' counsel, structured data is rarely filed. Moreover, as described by counsel, some of the Contested Documents contain a massive amount of data, such as containing a million lines of text in an Excel spreadsheet. Indeed, the spreadsheet is so massive that counsel couldn't obtain a piece of paper large enough to print the document on to show the Court. What's more, some of the data is so granular that it would be inconceivable for a person, such as a consultant or an expert, to recall the information. For example, the KE-30 document identifies the price of *every part* that goes into making a combine or tractor. This would include wing nuts. How somebody would be able to retain all this information for later misuse is unstated. And like attorneys, the Court assumes consultants and experts will comply with protective orders. *Cox Operating v. Atina*, No. 20-2845, 2021 U.S. Dist. LEXIS 226215, at *14 (E.D. La. Oct. 1, 2021). Finally, a reasonable inference in today's world is that the prices identified will change over time, particularly if the parts are manufactured outside the United States.

Based on the requirements of the existing Confidentiality Order—as already entered and as strengthened—and the nature of the Confidential Information and Contested Documents, it's more speculation than a reasonable inference that inadvertent disclosure will occur. For no specific reason, the OEMs imagine that (1) a hypothetical bad actor or careless attorney violates court orders by uploading

confidential information to the docket; (2) a hypothetical court crawler, with both the interest and expertise to make sense of the document, stumbles across the inadvertent filing before the Court can correct it; (3) the court crawler translates the document for mass consumption; *then* (4) customers and competitors obtain access to internal margin information, placing the OEMs at a competitive disadvantage. *Anderson v. United States,* 417 U.S. 211, 224 (1974). But they never draw "straight lines of reasonable inferences" between these assumptions, *Haynes v. Alumax Recycling Grp., Inc.*, 719 F. Supp. 707, 713 (N.D. Ill. 1989), *aff'd,* 899 F.2d 16 (7th Cir. 1990), instead "piling inference upon inference," essentially, to suggest that an unidentified bad actor might harm the OEMs at an unspecified time in an unspecified way. *See United States v. Sullivan*, 903 F.2d 1093, 1099 (7th Cir. 1990) (collecting cases where the Court disapproved of multiple inferences). That's speculation. And it's not enough to justify the protective order sought by the OEMs. *JAB Distribs., LLC v. London Luxury, LLC*, 2010 U.S. Dist. LEXIS 109178, at *9 ("[T]he mere possibility of an inadvertent disclosure of confidential information [does not] fatally undermine[] the operation of a protective order."). The Court's belief that inadvertent disclosure is speculative is further supported by the lack of any evidence that any of the attorneys or firms involved in this litigation have failed

23

to comply with a protective order or inadvertently disclosed confidential information in the past.[15]

Although the Court understands the OEMs' concern and has thoroughly considered all their arguments, it denies the motion for the reasons already given.

## CONCLUSION

Under the unusual circumstances of this case, the Court denies the OEMs' motion for a protective order to bar the disclosure of the Confidential Information, including the Contested Documents, obtained by the FTC during its pre-filing investigation to Deere and the MDL Plaintiffs. But the Confidentiality Orders in both actions must be amended consistent with the additional protections identified in this Memorandum Opinion and Order.

Entered: August 8, 2025

By:_____
Iain D. Johnston
U.S. District Judge

---

[15] To the extent the OEMs' concern is that Deere's or the MDL Plaintiffs' counsel will violate the Confidentiality Order, 22 CV 50188, Dkt. 242, at 21, Dkt. 218, at 26, the Court rejects that concern. The Court has never had any concerns about the integrity of counsel in these cases, including the MDL Plaintiffs' counsel, several of whom routinely appear before the Court. Indeed, this is precisely why the Court appointed them to their various leadership roles in the MDL action.