**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| IN RE: DEERE & COMPANY REPAIR SERVICES ANTITRUST LITIGATION | MDL No. 3030<br><br>Case No.: 3:22-cv-50188<br><br>Hon. Iain D. Johnston |

**JOINT DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT DEERE & CO.,
CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS,
AND RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, we, Kenneth A. Wexler, Daniel C. Hedlund, and Adam J. Zapala, declare as follows:

1. We have personal knowledge of the matters described below, and if called to testify upon them, would be competent to do so.

2. Kenneth A. Wexler is managing partner in the law firm Wexler Boley & Elgersma LLP. Daniel C. Hedlund is a partner at the law firm Gustafson Gluek PLLC. Adam J. Zapala is a partner at the law firm Cotchett, Pitre & McCarthy, LLP. We have served as lead or co-lead counsel in numerous nationwide class actions and have substantial experience litigating class actions and complex civil litigation. Most of the cases we have handled have been antitrust class actions.

3. We submit this Joint Declaration in Support of Plaintiffs' Motion for Preliminary Approval of the Settlement with Defendant Deere & Co., Certification of the Proposed Settlement Class, and Related Relief (the "Motion").

4. Plaintiffs and Deere & Co. ("Deere" and, together with Plaintiffs, the "Parties") have reached a proposed settlement (the "Settlement") which, if approved, will fully resolve this

litigation.[1] The Settlement provides the Class with substantial injunctive relief, ensuring that farmers and independent repair shops can diagnose and fix their Deere-brand Large Ag Equipment without having to use an authorized Deere Dealer for the repairs.[2] Deere has also agreed to pay $99 million (plus interest accruing since January 15, 2026) to those who paid Deere or authorized Deere Dealers for repairs to their Large Ag Equipment from January 10, 2018 until the date of preliminary approval. The two-pronged relief afforded by the Settlement is an excellent result for the Settlement Class.

## I. BACKGROUND AND PROSECUTION OF THE ACTION

5. Before filing this lawsuit, Plaintiffs' counsel had been investigating right-to-repair issues and a potential case against Deere for its monopolization of the repair services market for agricultural equipment. After extensive investigation of the factual and legal bases for potential claims by farmers throughout the United States, our firms filed the first complaint; numerous additional complaints were subsequently filed.

6. By Order dated June 1, 2022, the Judicial Panel on Multidistrict Litigation centralized and transferred to this Court various actions alleging similar anticompetitive practices pursuant to which Deere monopolized the market for repair services for Deere agricultural equipment. Dkt. No. 71, MDL No. 3030 (J.P.M.L).

7. On September 2, 2022, the Court adopted Plaintiffs' proposed leadership slate that included the following attorneys as Interim Co-Lead Counsel for Plaintiffs: Kenneth A. Wexler of Wexler Boley & Elgersma LLP; Daniel C. Hedlund of Gustafson Gluek PLLC; and Adam J.

---

[1] Plaintiff Wilson Farms Land and Cattle Co. LLC has informed Class Counsel that it does not support the proposed Settlement.

[2] Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the March 6, 2026 Settlement Agreement between Plaintiffs and Deere (the "Settlement Agreement"), attached as **Exhibit A**.

Zapala of Cotchett, Pitre & McCarthy, LLP. Dkt.[3] No. 73. Robert Foote of Foote, Mielke, Chavez & O'Neil, LLC, was designated as Interim Liaison Counsel for Plaintiffs, and Marc C. Gravino, of Williams McCarthy LLP, was designated as Interim Local Facilitating Counsel for Plaintiffs (collectively with Interim Co-Lead and Interim Liaison Counsel, "Interim Class Counsel"). *Id.* In addition, the Court appointed several firms and lawyers to an Interim Plaintiff Steering Committee. The firm and attorney profiles discussing our professional background and qualifications are attached as **Exhibit B**. Interim Class Counsel have been intimately involved in every aspect of the litigation since its inception.

8.      Plaintiffs—farms and farmers that own Deere tractors and other farm equipment—filed a Consolidated Class Action Complaint ("Complaint") on October 24, 2022, alleging Deere violated the federal antitrust laws by engaging in an anticompetitive scheme to withhold from farmers and independent repair facilities vital repair tools for such equipment. *See, e.g.*, Dkt. No. 85, ¶¶ 3-4.

9.      On December 8, 2022, Deere answered Plaintiffs' Complaint. Dkt. No. 103. That same day, Deere moved for judgment on the pleadings, arguing, *inter alia*, that Plaintiffs lacked standing, could not plead a plausible relevant market, and had raised defective claims under Sections 1 and 2 of the Sherman Act. *See* Dkt. Nos. 104, 105.

10.     Plaintiffs filed their opposition to the motion on January 23, 2023, Dkt. No.110,[4] and Deere replied on February 23, 2023, Dkt. No. 123. The Department of Justice filed a Statement of Interest related to the motion. Dkt. No. 120. The Court held a 3-hour motion hearing on August 7, 2023.

---

[3] Unless otherwise indicated, all "Dkt." citations are to Case No. 22-cv-50188 (N.D. Ill.).

[4] Plaintiffs filed a corrected opposition on January 27, 2023 to fix certain scrivener's errors. Dkt. No. 113.

11. On November 27, 2023, the Court issued an 89-page opinion denying Deere's motion in its entirety. Dkt. No. 159.

## II. DISCOVERY

12. The Parties subsequently negotiated—and the Court entered—an Agreed Confidentiality Order, a Joint Protocol for Production of Documents and Electronically Stored Information, and an Order pursuant to Federal Rule of Evidence 502(d). Dkt. Nos. 97-99.

13. The ensuing discovery efforts in this case were substantial, including interrogatories, document productions, the retention of experts, the service and negotiation of nearly 40 subpoenas, and related motion practice. For nearly all discovery requests, the Parties engaged in meet-and-confer discussions in which Interim Class Counsel advocated and demonstrated their need for discoverable information. The meet-and-confer process was often protracted and typically contentious.

14. Ultimately, Deere produced more than 2 million pages of documents in response to Plaintiffs' Requests for Production.

15. Plaintiffs also served document subpoenas on 28 authorized Deere Dealers; hundreds of thousands of pages of documents and large amounts of data were produced in response to those subpoenas. To obtain this crucial information, Interim Class Counsel engaged in numerous meet-and-confer discussions and letter exchanges. In addition, Plaintiffs served an additional 11 subpoenas on other tractor manufacturers and industry trade groups. Plaintiffs similarly conducted lengthy negotiations with those entities to obtain relevant documents and data.

16. Additionally, Plaintiffs sought and received the FTC investigative file in *Federal Trade Commission, et al. v. Deere & Co.*, No. 3:25-cv-50017 (N.D. Ill.); that file contained an additional 30,000 pages of documents, including materials from Deere competitors.

17.     Depositions in the case began in July 2024 and continued through June 2025. Plaintiffs took a total of 19 depositions of Deere's current and former employees. Among other things, those depositions focused on Deere's alleged anticompetitive scheme to restrict farmers' and independent repair shops' ability to conduct certain repairs, Deere's alleged fight against legislative right-to-repair measures, and Deere's alleged pretextual reliance on certain Environmental Protection Agency requirements to restrict repair capabilities. Deere attempted to block the deposition of CFO Joshua Jepsen via a protective order. Dkt. No. 265. Plaintiffs defeated that motion and deposed Mr. Jepsen on June 6, 2025.

18.     Deere, in turn, deposed each named Plaintiff. The Parties also deposed nine non-parties.

19.     Fact discovery closed on May 19, 2025.[5]

20.     On August 13, 2025, Plaintiffs served Deere with their opening expert report in support of class certification and merits issues. In that report, Dr. Russell Lamb, Ph.D.—a noted antitrust economist—opined that Deere has substantial market power in the relevant antitrust markets, that Deere has economic incentives to exercise its market power to foreclose competition in the repair-services market, and that Deere's exclusionary conduct causes harm to competition. Dr. Lamb constructed a yardstick damages model common to the class, ultimately concluding that all or nearly all Class members would have been impacted by Deere's conduct and estimating overcharge damages to be in the range of $190.0 million to $387.3 million.

---

[5] The depositions of Matthew Zebarth, Justin Greuel, Duane Schnuelle, Joshua Jepsen, and Kent Brown occurred after the close of discovery, with approval from the Court, as did the non-party depositions of CNH Industrial, Mahindra USA, and Kubota Tractor Corporation. Dkt. Nos. 253, 258.

### III.    SUMMARY OF THE SETTLEMENT AGREEMENT

21.     Looking to explore potential settlement, the Parties retained the Honorable Layn R. Phillips (ret.) as a mediator to help facilitate the Parties' negotiations. The Parties briefed relevant issues prior to participating in a day-long, in-person mediation in New York on October 9, 2025. Judge Phillips participated as mediator along with two of his colleagues, the Honorable Sean Coffey (ret.) and Niki Mendoza. The Parties' in-person negotiations, which were adversarial and sometimes contentious, did not result in immediate settlement. Instead, the Parties continued to negotiate—with the assistance of the mediators—for two additional months, ultimately reaching agreement on December 10, 2025.

22.     Under that agreement, Deere agreed to pay $99 million (plus interest accruing since January 15, 2026) into a Settlement Fund for the benefit of the Settlement Class. Subject to Court approval, the Settlement Fund Amount will be used to pay for the costs, fees, and expenses related to administration of the Settlement, pay attorneys' fees and costs and expenses incurred in litigating the Action, pay service awards to the Class Representatives, and pay applicable taxes and tax-preparation expenses. Ex. A (Settlement Agreement), ¶¶ 12, 34. The remaining balance of the Settlement Fund will be distributed to the Class pursuant to the proposed Plan of Allocation. *See* **Exhibit C.**

23.     The Parties subsequently fine-tuned the terms of the injunctive relief, which are memorialized in the March 6, 2026 Settlement Agreement.

24.     Subject to limited exceptions set forth in the Settlement Agreement, for a 10-year period, Deere will:

- Make Repair Resources—which allow Deere Large Ag Equipment to be maintained, diagnosed, and repaired such that they can be operated in the

    manner for which they were designed—available to every Owner, Lessor, and IRP on a license or subscription basis on Fair and Reasonable Terms;[6]

- Make available to every Owner, Lessor, and IRP on Fair and Reasonable Terms Future Repair Resources[7] that Deere provides to Deere Dealers as soon as access is granted to over 50 percent of Deere Dealer locations.

- Provide Owners, Lessors, and IRPs with the ability to access and view Dealer Technical Assistance Center ("DTAC") Solutions, consistent with Section A.3(p) of Appendix A, as incorporated in the definition of Repair Resources, no later than December 31, 2026.

- Enable Owners, Lessors, and IRPs to report potential defects in design and manufacturing to Deere through Deere's Customer Contact Center.

- Enable Owners, Lessors, and IRPs, through John Deere Operations Center PRO Service, to perform reprogramming and diagnostics in offline mode no later than December 31, 2026.

Ex. A (Settlement Agreement), § B.1-B.5, D.

25.    The significance of what this injunctive relief accomplishes cannot be overstated; as a result, Class members will have access to repair tools that will permit them to avoid going to authorized Deere Dealers to make repairs.

26.    No commitments have been made to or by Interim Class Counsel other than what is set forth in the Settlement Agreement.

---

[6] "Fair and Reasonable Terms" includes, but is not limited to, consideration of the following factors: (1) the net cost (accounting for any discounts, rebates, or other incentive programs) to a Deere Dealer for similar items obtained from Defendant; (2) the cost to Defendant of preparing, maintaining, and distributing the items; (3) the price charged by other manufacturers of agricultural equipment for similar items; (4) the means by which the item is distributed; (5) the extent to which the item is used, which includes the number of users, and frequency, duration, and volume of use; and (6) inflation. Settlement Agreement, App'x A, § A.2.

[7] "Future Repair Resources" means any successor products, versions, improvements, additions, upgrades, or updates to Repair Resources. For the avoidance of doubt, Future Repair Resources includes any new functionality, capability, or product which allows Deere Large Ag Equipment to be maintained, diagnosed, and repaired, without which such equipment cannot be operated in the manner for which it was designed. *Id.* § A.4.

7

## IV.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

27.    Based on extensive experience representing plaintiffs in similar class actions, and our experience in actively litigating this case since 2022, we recognize the costs and risk of continued prosecution of the Action and believe it is in the best interest of Plaintiffs and the Settlement Class to resolve it on the terms set forth in the Settlement Agreement. We have collectively prosecuted numerous antitrust class actions as lead counsel or in other leadership positions. We have each personally negotiated settlements of many class and non-class lawsuits. In our opinion, the Settlement Agreement with Deere is fair, reasonable, and adequate in light of all the risks and circumstances presented in the case.

28.    We believe the Settlement Agreement will provide significant benefits to the Settlement Class in light of all known facts and circumstances. Given the risks, uncertainties, expense, and delay of continued litigation—including the uncertain results of class certification and summary judgment motions, trial, and any potential appeals—we believe the significant injunctive relief and $99 million monetary recovery are an excellent result for the Settlement Class.

29.    We have vigorously represented the interests of Plaintiffs and all Settlement Class members from inception. Such extensive involvement has enabled Interim Class Counsel to negotiate this beneficial settlement from a position of knowledge and strength, and as advocates for the Class as a whole.

## V.    SETTLEMENT ADMINISTRATION

30.    Pursuant to the Settlement Agreement, Ex. A, ¶ 18, Deere recently provided Interim Class Counsel with data—including customer names and contact information—that, when used in conjunction with other data and information Plaintiffs obtained in discovery, will help facilitate

the best notice practicable to the Settlement Class. Such efforts will include direct notice to certain Settlement Class members and/or a subset of pre-populated claim forms.

31. Our efforts to merge these data sets are ongoing, however, and will impact the final notice and claims-processing plans to be presented for Court review. We believe such plans will be finalized in the next two weeks, at which time we will supplement our filings so the Court can take them into account when considering whether to grant preliminary approval of the Settlement.

32. Plaintiffs intend for the Court to include the notice materials in its consideration of whether to grant preliminary approval and propose a single hearing date be set to consider all the factors relating to preliminary approval.

## VI. ADDITIONAL ATTACHMENT

33. In addition to those referenced above, attached hereto as **Exhibit D** is a true and correct copy of the Associated Bank Escrow Agreement.

## VII. CONCLUSION

In our opinion, the proposed Settlement with Deere is fair, reasonable, and adequate. The Settlement provides substantial benefits to the Class and avoids the delay and uncertainty of continued protracted litigation. We recommend preliminary approval of the Settlement, which we believe is an excellent result for the Settlement Class.

9

We declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed on April 6, 2026 in Chicago, Illinois.

/s/ Kenneth A. Wexler
Kenneth A. Wexler

/s/ Daniel C. Hedlund
Daniel C. Hedlund

/s/ Adam J. Zapala
Adam J. Zapala

10