# Exhibit A

*Final Execution Version*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| **IN RE: DEERE & COMPANY REPAIR SERVICES ANTITRUST LITIGATION** | Case No.: 3:22-cv-50188 |
| **THIS DOCUMENT RELATES TO: ALL CASES** | Hon. Iain D. Johnston |

<u>**SETTLEMENT AGREEMENT**</u>

This Settlement Agreement ("Agreement") is made and entered into this sixth day of March, 2026 ("Execution Date") by and between Defendant Deere & Company ("John Deere"), and Interim Co-Lead Class Counsel (as hereinafter defined), on behalf of the Settlement Class and subject to approval of the Court.

WHEREAS, Interim Co-Lead Class Counsel and the Named Plaintiffs are prosecuting claims against John Deere on their own behalf and on behalf of the Settlement Class in the case captioned *In re Deere & Company Repair Services Antitrust Litigation*, Case No. 3:22-cv-50188 (the "Action") which alleges, among other things, that members of the Settlement Class were injured as a result of John Deere's alleged federal antitrust violations as set forth in the Consolidated Class Action Complaint, *see* Consolidated Class Action Compl., 3:22-cv-50188 (ECF No. 85) (the "Complaint");

WHEREAS, John Deere denies the Complaint's allegations, has asserted defenses to the Complaint's claims in the Action, and strongly asserts it has not violated any federal or state laws;

WHEREAS, Interim Co-Lead Class Counsel and John Deere desire to settle this litigation by entering into this Agreement after counsel for the Parties engaged in arm's-length negotiations, including mediation with a nationally recognized and highly experienced

*Final Execution Version*

mediator, on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of the settlement.

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice, without costs as to Named Plaintiffs, the Settlement Class, or John Deere, subject to the approval of the Court, on the following terms and conditions:

A. **Definitions**

In addition to terms defined elsewhere in this Agreement, as used in this Agreement, the following terms shall have the respective meanings indicated below (such meanings to be applicable equally to both the singular and plural forms of such terms):

1. "Deere Large Agricultural Equipment" means agricultural equipment manufactured by John Deere, which depend for their functioning, in part, on electronic control units ("ECUs") and which include large and medium tractors (all 6000, 7000, 8000 and 9000 Series models); combines; cotton pickers; cotton strippers; sugarcane harvesters; tillage, seeding (including planters), and application equipment and sprayers.

2. "Repair Services" means the diagnosis, maintenance, or repair of any Deere Large Agricultural Equipment.

3. "Parties" shall collectively mean Named Plaintiffs and members of the Settlement Class on the one hand, and John Deere on the other.

4. "Released Claims" shall mean all claims, demands, causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Agreement or makes a claim upon or participates in the Settlement Fund,

*Final Execution Version*

whether directly, representatively, derivatively, or in any other capacity) that the Parties ever had, now have, or hereafter can, shall, or may ever have, that exist as of the Execution Date on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages, and the consequences thereof that have been asserted, or could have been asserted, under federal or state law in any way arising out of or relating in any way to the alleged factual predicates, events, actions, or failures to act described in the Complaint, including without limitation any claims arising under any federal or state antitrust, unjust enrichment, unfair competition, trade practice, statutory or common law, and consumer protection law, as well as any claims involving the institution, prosecution, and the defense of the Action or advocacy related to the claims made therein.

5.      "Named Plaintiffs" means the current proposed class representatives: Plum Ridge Farms, Ltd., Colvin Farms, LLC, England Farms & Harvesting, LLC, Wilson Farms Land & Cattle Co. LLC, Hapka Farms, Inc., Eagle Lake Farms Partnership, and Blake Johnson.

6.      "Releasees" shall refer to John Deere and its respective parents, subsidiaries, affiliates, divisions, predecessors, successors, and assigns and their respective past and present officers, directors, employees, insurers, agents, and attorneys. "Releasees" shall also refer to the Named Plaintiffs and the members of the Settlement Class insofar as the mutual release is concerned, as per Paragraphs 23-26.

7.      "Releasors" shall refer to Named Plaintiffs and the members of the Settlement Class as well as each of their parent entities, subsidiaries, affiliates, divisions, predecessors, successors, and assigns and their respective past and present officers, directors, employees, insurers, agents, and attorneys. "Releasors" shall also refer to John Deere and its respective

3

*Final Execution Version*

parents, subsidiaries, affiliates, divisions, predecessors, successors, and assigns and their respective past and present officers, directors, employees, insurers, agents, and attorneys insofar as the mutual release is concerned, as per Paragraphs 23-26.

8.      With the proviso that John Deere does not endorse certification of the Settlement Class or agree to the propriety of class certification for any purpose other than to effectuate this settlement, for purposes of this Agreement, the proposed "Settlement Class" is defined as:

> All persons and entities who purchased Repair Services for Deere Large Agricultural Equipment from John Deere or its authorized Dealers in the United States between January 10, 2018 and the date of preliminary approval of this Agreement.

> Excluded from the Settlement Class are all governmental entities; John Deere and any parent, subsidiary, or affiliate thereof; John Deere's officers, directors, employees, and immediate families; and any judicial officer presiding over this action and the members of his/her judicial staff and immediate family.

9.      "Interim Co-Lead Class Counsel" shall refer to the following law firms: Wexler Boley & Elgersma LLP, 311 South Wacker Drive, Suite 5450, Chicago, Illinois, 60606; Cotchett, Pitre & McCarthy, LLP, 840 Malcolm Road, Burlingame, California, 94010; Gustafson Gluek PLLC, 120 South Sixth Street, Suite 2600, Minneapolis, Minnesota, 55402.

10.      "Settlement Amount" shall be the total of USD $99,000,000, plus accrued interest, as agreed and further specified in Paragraph 27.

11.      "Settlement Fund" means the qualified settlement fund (Treas. Reg. Sec. 1.468B-1) into which the Settlement Amount is deposited, in accordance with this Agreement. No portion of the Settlement Fund shall revert to John Deere after the Effective Date.

12.      "Net Settlement Fund" means the Settlement Fund, plus accrued interest and income, less any award of attorneys' fees, Named Plaintiff service awards, reimbursement of expenses or litigation fund costs, and less applicable taxes, tax preparation expenses, and costs

of class notice and settlement administration as provided for in this Agreement, that may be awarded or approved by the Court; and any other costs, reimbursements, or fees as approved by the Court.

13. "Injunctive Relief" means the terms outlined in Appendix A hereto.

14. "Effective Date" means when (i) the Court has entered in the Action a final order certifying the Settlement Class and approving this Agreement under Federal Rule of Civil Procedure 23(e) and has entered a final judgment dismissing the Action with prejudice as to John Deere and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to John Deere described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to John Deere have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.

**B.** **Approval of this Agreement and Dismissal of Claims Against John Deere**

15. Interim Co-Lead Class Counsel and John Deere shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures, including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e), to secure the complete and final dismissal with prejudice of the Action.

16. Interim Co-Lead Class Counsel shall draft and file a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion") within thirty (30) days of its execution. The Preliminary Approval Motion shall include the proposed form of an order

5

preliminarily approving this Agreement (the "Preliminary Approval Order"). The Preliminary Approval Order shall provide that, *inter alia*:

(a)     The settlement proposed in the Agreement has been negotiated at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the members of the Settlement Class;

(b)     The class notice meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and constitutes the best notice practicable under the circumstances for settlement purposes;

(c)     A final settlement approval hearing on the settlement proposed in this Agreement shall be held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate and whether it should be finally approved by the Court;

(d)     Members of the Settlement Class who wish to object to this Agreement must submit an appropriate and timely written statement of the grounds for objection;

(e)     Members of the Settlement Class who wish to appear to object to this Agreement may do so at the fairness hearing if permitted by the Court; and

(f)     Attorneys representing members of the Settlement Class who wish to object to this Agreement must submit an appropriate and timely written statement of representation and the grounds for objection.

17.     No less than seven (7) business days before filing, Interim Co-Lead Class Counsel shall submit a draft of the Preliminary Approval Motion and Preliminary Approval Order to John Deere for review and comment, and Interim Co-Lead Class Counsel shall reasonably consider John Deere's comments.

*Final Execution Version*

18.      John Deere agrees to use reasonable best efforts to assist Interim Co-Lead Class Counsel in providing class notice sufficient to comply with Rule 23 and due process and to provide information and data relevant to conducting the settlement administration process. In this regard, John Deere agrees to use reasonable best efforts to provide Interim Co-Lead Class Counsel information and data kept in the normal course of business and in its possession, custody, or control that it has the legal right to produce and that would assist Interim Co-Lead Class Counsel in effectuating Rule 23 notice and settlement administration. Interim Co-Lead Class Counsel, in turn, agrees to provide John Deere with their proposed notice and notice plan at least fourteen (14) days before filing and consider in good faith John Deere's comments.

19.      Interim Co-Lead Class Counsel will select a notice provider and claims administrator, subject to Court approval.

20.      Interim Co-Lead Class Counsel shall seek the entry of an order and final judgment, the text of which Interim Co-Lead Class Counsel and John Deere shall agree upon, and such agreement will not be unreasonably withheld.  The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

(a)      certifying the Settlement Class described in Paragraph 8, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class for the Action;

(b)      approving finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the members of the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

*Final Execution Version*

(c)      finding the class notice given constitutes due, adequate, and sufficient notice, and meets the requirements of due process and the Federal Rules of Civil Procedure;

(d)      directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4) and claims to be waived and released pursuant to Paragraph 26;

(e)      directing that the Action (including the Complaint) be dismissed as to John Deere with prejudice and, except as provided for in this Agreement, without costs or attorneys' fees on the Effective Date;

(f)      reserving exclusive jurisdiction over the settlement and this Agreement, including the interpretation, administration, and consummation of this settlement and Injunctive Relief, to the United States District Court for the Northern District of Illinois, Western Division, for a period of at least ten (10) years following the Effective Date; and

(g)      stating the terms of Injunctive Relief.

21.    This Agreement shall become final and be deemed to have received "Final Court Approval" on the Effective Date. On the date that Interim Co-Lead Class Counsel and John Deere have executed this Agreement, Named Plaintiffs, Interim Co-Lead Class Counsel, and John Deere shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraph 42.

22.    Neither this Agreement (whether or not it becomes final) nor the final judgment, nor any negotiations, documents, and discussions associated with them, shall be deemed or construed to be an admission by John Deere or any other Releasee, or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by John Deere or any other Releasee, or of the truth of any of the claims or allegations contained in any complaint or any

8

other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, in any arbitration, action, or proceeding whatsoever, against John Deere or any other Releasee. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by John Deere or any Releasee, shall be referred to, offered as evidence, or received in evidence in any pending or future civil, criminal, or administrative action, arbitration, or proceeding, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, and/or claims to be waived and released pursuant to Paragraph 26, or as otherwise required by law. Named Plaintiffs, the Settlement Class, John Deere, and their respective counsel further agree that this Agreement, its terms and provisions, and any and all negotiations thereof shall be governed by Federal Rule of Evidence 408; notwithstanding the foregoing, the Agreement may be filed with the Court and made public in conjunction with the filing of the Preliminary Approval Motion.

## C. **Mutual Release, Discharge, and Covenant Not to Sue**

23. In addition to the effect of any final judgment entered in accordance with this Agreement, upon the Effective Date, and in consideration of the terms set forth herein, the Parties shall completely release, acquit, and forever discharge each other from the Released Claims. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to final judgment, all members of the Settlement Class who have not submitted a valid request to be excluded from the Settlement Class shall be barred from asserting any Released Claims against John Deere.

24. The Parties agree that the terms of this Agreement, including the Settlement Amount, will represent John Deere's all-inclusive, full consideration to the Settlement Class,

9

and that any award of attorneys' fees, costs, notice and claims administration fees or expenses, and other expenses approved by the Court shall be paid from the Settlement Fund, as further specified in Paragraphs 30, 32, and 34-36.

25.     The Parties further agree that they do not intend this Agreement, or any part hereof or any other aspect of the proposed settlement, to release, compromise, or otherwise affect in any way any claims other than the Released Claims.

26.     In addition to the provisions of Paragraph 23, Releasors hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming final, as set out in Paragraph 21, any and all provisions, rights, and benefits, as to their claims concerning Repair Services, conferred by Section 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are released pursuant to the provisions of Paragraph 23, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that John Deere and Interim Co-Lead Class Counsel have agreed to release pursuant to Paragraph 23, whether or not concealed

or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

### D. Settlement Amount

27. Subject to the provisions hereof, and in full, complete, and final monetary settlement of the Action as provided herein, John Deere shall pay or cause to be paid the Settlement Amount of USD $99,000,000 plus any accrued interest, as set forth in Paragraph 10, into the Settlement Fund within fifteen (15) business days following the Court's entry of the Preliminary Approval Order. Interest shall accrue for the benefit of the Settlement Class. As of January 15, 2026, interest began to accrue on the $99,000,000 at the annual rate of 3.95%. In addition to the $99,000,000 principal, John Deere will pay into the Settlement Fund at the time of its funding all interest accumulated on the principal since January 15, 2026.

28. If this Agreement does not receive Final Court Approval, including final approval of the Settlement Class, or if the Action is not certified as a class action for settlement purposes, then all amounts paid by John Deere into the Settlement Fund, net of necessary expenses incurred in connection with notice and/or settlement/claims administration not to exceed $1 million, shall be returned to John Deere from the Settlement Fund along with any interest accrued thereon within fifteen (15) business days of the Court's denial of approval.

### E. Settlement Fund

29. The Settlement Fund shall be maintained by Interim Co-Lead Class Counsel in an escrow account at Associated Bank, Associated Trust Company, N.A., 5353 Wayzata Boulevard, St. Louis Park, MN 55416 in an account which shall remain under the Court's continuing supervision and control.

11

30. All payments into the Settlement Fund shall, at the direction of Interim Co-Lead Class Counsel, be invested in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury Bills, U.S. Treasury Money Market Funds, or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit. Any interest earned on any of the foregoing shall become part of the Settlement Fund. In no event shall any Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution, and administration. Releasors shall look solely to the Settlement Fund for settlement and satisfaction against Releasees of all related claims.

31. The Settlement Amount held in the Settlement Fund shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as the Settlement Fund shall be distributed pursuant to this Agreement and further order(s) of the Court. No disbursement shall be made from this Settlement Fund without the prior written approval of the Court.

32. The Settlement Fund is intended by the parties hereto to be treated as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. At the request of John Deere, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made to enable the Settlement Fund to be treated as a qualified settlement fund from the earliest date possible, and the parties hereto shall take all actions as may be necessary or appropriate to this end. At the direction of

Interim Co-Lead Class Counsel, taxes or estimated taxes shall be paid on any income earned on the funds in the Settlement Fund, whether or not Final Court Approval has occurred. In the event federal or state income tax liability is finally assessed against and paid by John Deere as a result of any income earned on the funds in the Settlement Fund, John Deere shall be entitled to reimbursement of such payment from the funds in the Settlement Fund after approval of the Court and whether or not Final Court Approval has occurred. John Deere will use reasonable efforts to resist any such assessment or payment. Except as set forth in this Paragraph 32, John Deere and each Releasee, and their respective counsel, shall have no responsibility to make any tax filings related to the Settlement Fund or to pay any taxes or tax expenses with respect thereto, and neither John Deere nor any Releasee nor their respective counsel shall have any liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

33. After the Effective Date, the Net Settlement Fund shall be distributed in accordance with a plan of allocation or distribution to be submitted to the Court at the appropriate time by Interim Co-Lead Class Counsel, subject to approval by the Court.

**F.** **The Settlement Fund & Payment of Expenses, Costs, Fees, and Service Awards**

34. John Deere and the other Releasees shall not be liable for any costs, fees, or expenses of the Named Plaintiffs, the Settlement Class, or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, subject to Court approval, such Parties, agents, and other representatives shall be reimbursed and paid solely out of the Settlement Fund for all past, current, or future litigation costs and expenses and any award of attorneys' fees incurred in connection with the Action. Service awards to the Named Plaintiffs, if approved by the Court, will also be paid solely out of the Settlement Fund. No such service

13

award will be paid until after the Effective Date. Attorneys' fees, costs, and expenses awarded by the Court shall be payable from the Settlement Fund, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Interim Co-Lead Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund with interest, if and when, as a result of any appeal or further proceedings on remand, or successful collateral attack, the fee or award of costs and expenses is reduced or reversed, or in the event the Agreement is rescinded or otherwise fails to become effective.

35.     The procedure for and the allowance or disallowance by the Court of the application by Interim Co-Lead Class Counsel for attorneys' fees, costs, and expenses, or service awards for the Named Plaintiffs to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

36.     Neither John Deere nor any Releasee under this Agreement shall have any responsibility for, interest in, or liability whatsoever with respect to (i) any payment to Interim Co-Lead Class Counsel and/or Named Plaintiffs of any fee or expense award, or service awards, in the Action or (ii) the allocation among Interim Co-Lead Class Counsel, and/or any other person who may assert some claim thereto, of any fee or expense award that the Court may make in the Action. The payment of attorneys' fees, costs, or service awards shall come solely from the Settlement Fund as ordered by the Court.

14

*Final Execution Version*

### G.  Injunctive Relief

37.   As a material part of the consideration to be provided by John Deere, John Deere agrees to the terms of Injunctive Relief outlined in Appendix A and that such terms shall be included in the order and final judgment approving the settlement, as stated in Paragraph 20.

### H.  Exclusions

38.   With respect to any potential members of the Settlement Class that timely seek exclusion, John Deere reserves all of its legal rights and defenses.

39.   Subject to Court approval, a request for exclusion from the Settlement Class must be in writing and state the full name, street address, telephone number, and email address of the person or entity seeking exclusion from the Settlement Class and must clearly state that the person or entity wants to be excluded from the Settlement Class.  Subject to Court approval, a request for exclusion that does not comply with these or any other requirements set forth in the class notice will be invalid, and each person or entity submitting an invalid request shall be deemed a member of the Settlement Class and shall be bound by this Agreement upon Final Court Approval.

40.   John Deere or Interim Co-Lead Class Counsel may dispute an exclusion request, and they shall, if possible, resolve the disputed exclusion request by agreement and shall inform the Court of their position, and, if necessary, ask the Court to resolve the dispute at or before the final approval hearing.

41.   Within ten (10) days after the end of the period to request exclusion from the Settlement Class, Interim Co-Lead Class Counsel will cause copies of all timely requests for exclusion to be provided to counsel for John Deere.

## I.     Rescission if this Agreement is Not Approved or Final Judgment is Not Entered

42.     If the Court refuses to approve this Agreement or any part of the Agreement, including, but not limited to, if the Court does not certify the Settlement Class, or if such approval is modified or set aside on appeal, or if the Court does not enter final judgment dismissing the Action with prejudice as to John Deere and without costs other than those provided for in this Agreement, or if the Court enters such final judgment and appellate review is sought, and on such review, this final judgment is not affirmed in its entirety, then John Deere and Interim Co-Lead Class Counsel shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.  Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 52.  Upon rescission, the Settlement Fund shall be restored and returned to John Deere consistent with this Agreement, including, but not limited to, Paragraph 28 and the Parties will be deemed to have reverted and been restored to their respective positions in the Action as of the day before the Execution Date.  A modification or reversal on appeal of any amount of Interim Co-Lead Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

## J.     Miscellaneous

43.     Interim Co-Lead Class Counsel and John Deere agree that the Settlement Amount, Injunctive Relief, and other terms of the Agreement as described herein were negotiated in good faith and reflect a settlement that was reached voluntarily and after consultation with competent legal counsel.

16

44.     John Deere, Named Plaintiffs, and Interim Co-Lead Class Counsel agree not to disclose publicly or to any other person the terms of this Agreement until this Agreement is fully executed by all John Deere and Interim Co-Lead Class Counsel and the Motion for Preliminary Approval has been filed.

45.     John Deere shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

46.     The United States District Court for the Northern District of Illinois, Western Division, Judge Iain D. Johnston, shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement for a period of ten (10) years, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement, including the terms of Injunctive Relief provided for herein, or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Interim Co-Lead Class Counsel and John Deere, including, without limitation, challenges to the reasonableness of any party's actions or disputes over compliance with and enforcement of the Injunctive Relief provisions.  This Agreement shall be governed by and interpreted according to the substantive laws of the state of Illinois without regard to its choice of law or conflict of laws principles.  No party will object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.

47.     This Agreement constitutes the entire, complete, and integrated agreement between the parties hereto pertaining to the settlement of the Action against John Deere, and no representations, warranties, or inducements have been made to any party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized herein.  It is understood by the parties hereto that, except for the matters expressly

17

represented herein, the facts or law with respect to which this Agreement is entered into may turn out to be different from the facts now known to each party or believed by such party to be true; each party therefore expressly assumes the risk of the facts or law turning out to be so different, and agrees that this Agreement shall in all respects be effective and not subject to termination by reason of any such different facts or law. This Agreement supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the undersigned in connection herewith.

48. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto. Without limiting the generality of the foregoing, upon Final Court Approval of this Agreement each and every covenant and agreement made herein by Interim Co-Lead Class Counsel shall be binding upon all members of the Settlement Class and Releasors.

49. This Agreement may be executed in counterparts, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the parties to this Agreement shall exchange among themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

50. Neither Interim Co-Lead Class Counsel nor John Deere shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

18

51.     Interim Co-Lead Class Counsel, on behalf of all members of the Settlement Class, represent that they are, subject to Court approval, expressly authorized to take all action required or permitted to be taken by or on behalf of all members of the Settlement Class pursuant to this Agreement to effectuate its terms and to enter into and execute this Agreement and any modifications or amendments to the Agreement on behalf of all members of the Settlement Class that they deem appropriate.

52.     This Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

53.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 53), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided and, where notice must be provided to John Deere, additionally to John Deere's Chief Legal Officer.

Dated: March 6, 2026

Kenneth A. Wexler
Justin N. Boley
Tyler J. Story
Margaret L. Shadid
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Drive, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
F: (312) 346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
tjs@wbe-llp.com
ms@wbe-llp.com

Adam J. Zapala
Elizabeth T. Castillo
Christian S. Ruano
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com
ecastillo@cpmlegal.com
cruano@cpmlegal.com

Daniel C. Hedlund
Daniel E. Gustafson
Michelle J. Looby
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dhedlund@gustafsongluek.com
dgustafson@gustafsongluek.com
mlooby@gustafsongluek.com

Dennis J. Stewart
**GUSTAFSON GLUEK PLLC**
600 W. Broadway, Suite 3300
San Diego, CA 92101

*Final Execution Version*

Dated: March 6, 2026

Kenneth A. Wexler
Justin N. Boley
Tyler J. Story
Margaret L. Shadid
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Drive, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
F: (312) 346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
tjs@wbe-llp.com
ms@wbe-llp.com

Adam J. Zapala
Elizabeth T. Castillo
Christian S. Ruano
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com
ecastillo@cpmlegal.com
cruano@cpmlegal.com

Daniel C. Hedlund
Daniel E. Gustafson
Michelle J. Looby
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dhedlund@gustafsongluek.com
dgustafson@gustafsongluek.com
mlooby@gustafsongluek.com

Dennis J. Stewart
**GUSTAFSON GLUEK PLLC**
600 W. Broadway, Suite 3300
San Diego, CA 92101

20

*Final Execution Version*

Dated: March 6, 2026

_____

Kenneth A. Wexler
Justin N. Boley
Tyler J. Story
Margaret L. Shadid
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Drive, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
F: (312) 346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
tjs@wbe-llp.com
ms@wbe-llp.com


_____

Adam J. Zapala
Elizabeth T. Castillo
Christian S. Ruano
**COTCHETT, PITRE &
MCCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com
ecastillo@cpmlegal.com
cruano@cpmlegal.com

_____

Daniel C. Hedlund
Daniel E. Gustafson
Michelle J. Looby
Frances Mahoney-Mosedale
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dhedlund@gustafsongluek.com
dgustafson@gustafsongluek.com
mlooby@gustafsongluek.com
fmahoneymosedale@gustafsongluek.com

*Final Execution Version*

Dennis J. Stewart
**GUSTAFSON GLUEK PLLC**
600 W. Broadway, Suite 3300
San Diego, CA 92101
dstewart@gustafsongluek.com

*Interim Co-Lead Counsel for Plaintiffs*

Robert M. Foote
**FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC**
1541 E. Fabyan Parkway, Suite 101
Geneva, IL 60134
Telephone: (630) 232-7450
rmf@fmcolaw.com

*Interim Liaison Counsel for Plaintiffs*

21

*Final Execution Version*

Tiffany D. Lipscomb-Jackson
JONES DAY
325 John H. McConnell Boulevard,
Suite 600
Columbus, OH 43215-2673
Telephone: (614) 281-3876
tdlipscombjackson@jonesday.com

John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Telephone: (202) 879-3939
jmmajoras@jonesday.com

Corey A. Lee
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
calee@jonesday.com

Sean M. Berkowitz (IL Bar No. 6209701)
Gary Feinerman (IL Bar No. 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700
Facsimile: +1.312.993.9767
Email: sean.berkowitz@lw.com
gary.feinerman@lw.com

Amanda P. Reeves (pro hac vice)
Tara D. Elliott (pro hac vice)
Ian R. Conner (pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201
Email: amanda.reeves@lw.com
tara.elliott@lw.com

Denver Caldwell
Deere & Company
6400 NW 86th St,
Johnston, IA 50131
Telephone: (612) 968-2397
CaldwellDenverD@JohnDeere.com

*Defendant*

22

ian.conner@lw.com

Belinda S Lee (pro hac vice)
Meaghan Thomas-Kennedy (pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095
Email: belinda.lee@lw.com
meaghan.thomas-kennedy@lw.com

*Counsel for Defendant Deere & Company*

**APPENDIX A**

*Final Execution Version*

## INJUNCTIVE RELIEF

**A. Definitions**.

1.  "Deere Large Agricultural Equipment" shall have the same meaning as set forth in the Parties' Settlement Agreement.

2.  "Fair and Reasonable Terms" includes, but is not limited to, consideration of the following factors: (1) the net cost (accounting for any discounts, rebates, or other incentive programs) to a Deere Dealer for similar items obtained from Defendant; (2) the cost to Defendant of preparing, maintaining, and distributing the items; (3) the price charged by other manufacturers of agricultural equipment for similar items; (4) the means by which the item is distributed; (5) the extent to which the item is used, which includes the number of users, and frequency, duration, and volume of use; and (6) inflation.

3.  "Repair Resources" include John Deere Operations Center™ PRO Service and the following functions and capabilities which allow Deere Large Agricultural Equipment to be maintained, diagnosed, and repaired such that it can be operated in the manner for which it was designed:

    (a)  secure authentication of software tool user credentials and confirmation of user authorization to access PIN-specific equipment details;

    (b)  viewing and searching (including any AI-enhanced search functions) of operator and technical manuals;

    (c)  viewing of diagnostic trouble codes ("DTCs") and related diagnostic

A-2

information;

(d)     clearing and refreshing of DTCs and related diagnostic information to the extent permitted by statute, regulation, rule, or guidance of a competent governmental authority and/or by third party component suppliers to John Deere;

(e)     performance of interactive tests to confirm diagnosis or repair success, including aftertreatment NOx sensor tests, to the extent permitted by statute, regulation, rule, or guidance of a competent governmental authority and/or by third party component suppliers to John Deere. John Deere shall use their reasonable best efforts to obtain any necessary consent from third party component suppliers to John Deere;

(f)     calibration of all equipment settings consistent with factory specifications;

(g)     viewing of live and stored equipment readings and data points performed by the Owner or Lessor;

(h)     once development and testing is complete, fluid sampling performed by the Owner or Lessor;

(i)     replacement of existing and future electronic control units ("ECUs" or "controllers") to the extent permitted by third party component suppliers to John Deere;

(j)     programming, reprogramming, and reinstallation of embedded software, with respect to existing and future ECUs, to the extent

permitted by statute, regulation, rule, or guidance of a competent governmental authority and/or by third party component suppliers to John Deere;

(k) replacement of engines to the extent permitted by third party component suppliers to John Deere as described herein;

(l) updating of Modular Telematics Gateway ("MTG"), display, and Combine Grain Quality Monitor;

(m) wireless updating of embedded software on MTG-enabled equipment;

(n) updating of embedded software via an Electronic Data Link ("EDL");

(o) access to John Deere's Customer Contact Center for support with respect to diagnostic and repair software issues, advice on applicable materials in technical manuals, and direction to potentially applicable DTAC Solutions for customers and IRPs;

(p) viewing of DTAC Solutions generated for customers and IRPs;

(q) set up of customized maintenance plans for equipment;

(r) viewing of equipment's GPS location on a map;

(s) notice and viewing of "PIPs" or "Product Improvement Programs" for equipment, including both mandatory PIPs and those designated as "fix as fail" no later than December 31, 2026;

(t) viewing and management of equipment fleet;

(u) viewing of PIN-specific information about factory configurations

A-4

and components;

(v)     viewing of equipment-specific warranty and extended warranty coverage information;

(w)     once development and testing is complete, near real time receipt of John Deere Machine Health Insights™ for equipment; and

(x)     performance of emissions inducement overrides in connection with repair following an engine final inducement to the extent permitted by statute, regulation, rule, or guidance of a competent governmental authority.

For the avoidance of doubt, the subscription or license of any Repair Resources does not include title or ownership of any of John Deere's intellectual property rights therein.

4.     "Future Repair Resources" means any successor products, versions, improvements, additions, upgrades, or updates to Repair Resources. For the avoidance of doubt, Future Repair Resources includes any new functionality, capability, or product which allows Deere Large Agricultural Equipment to be maintained, diagnosed, and repaired, without which such equipment cannot be operated in the manner for which it was designed.

5.     "Owner" means the person or entity that owns any Deere Large Agricultural Equipment.

6.     "Lessor" means the person or entity that leases any Deere Large Agricultural Equipment.

7.     "IRP" means independent repair provider.

A-5

*Final Execution Version*

8.    "Deere Dealer" means any entity that is authorized by John Deere to sell or lease Deere Large Agricultural Equipment and to provide services and parts for Deere Large Agricultural Equipment as of the Execution Date of this Agreement or thereafter.

**B. Injunctive Relief**.

This injunction requires John Deere to provide Owners, Lessors, and IRPs with the digital tools required for the maintenance, diagnosis, and repair of Deere Large Agricultural Equipment, and without which such equipment cannot be operated in the manner for which it was designed, subject to the limited exceptions outlined below.

Subject to the exceptions and limitations set forth herein, John Deere shall:

1.    Make Repair Resources available to every Owner, Lessor, and IRP on Fair and Reasonable Terms, on a license or subscription basis;

2.    Make available to every Owner, Lessor, and IRP on Fair and Reasonable Terms Future Repair Resources that John Deere provides to Deere Dealers as soon as access is granted to over fifty (50) percent of Deere Dealer locations;

3.    Provide Owners, Lessors, and IRPs with the ability to access and view DTAC Solutions, consistent with part A.3(p), as incorporated in the definition of Repair Resources, no later than December 31, 2026;

4.    Enable Owners, Lessors, and IRPs to report potential defects in design and manufacturing to John Deere through John Deere's Customer Contact Center; and

A-6

*Final Execution Version*

5.      Enable Owners, Lessors, and IRPs, through John Deere Operations Center™ PRO Service, to perform reprogramming and diagnostics in offline mode no later than December 31, 2026.

Notwithstanding the foregoing, John Deere may provide any capabilities or features not designated as Repair Resources to any Deere Dealer, Owner, Lessor, or IRP. Further, John Deere can condition the ability of an IRP to use Repair Resources or Future Repair Resources with respect to a particular piece of Deere Large Agricultural Equipment on obtaining the Owner's or Lessor's consent. John Deere shall, however, not impose unreasonable barriers or conditions to obtaining such consent.

**C.  Legal Compliance**.

Nothing in this Injunctive Relief shall be construed to require John Deere to act in a manner inconsistent with any applicable local, state, or federal laws, rules, regulations, or guidance.

**D.  Term & Enforcement**.

The Injunctive Relief set forth above shall remain in effect for a period of ten (10) years and shall be enforceable by the Court for that period upon the motion of any Settlement Class member. Before any enforcement motion can be filed, a Settlement Class member must give written notice of noncompliance to Interim Co-Lead Class Counsel and Counsel for John Deere and engage in a good faith meet and confer discussion. Any subsequent motion must certify that such meet and confer occurred prior to the filing of the motion for enforcement.