# Exhibit D

## ESCROW AGREEMENT

**ESCROW AGREEMENT** (**"Escrow Agreement"**), dated as of March 23, 2026 (**"Effective Date"**), by and among **Co-Lead Counsel** (as defined below) and Associated Trust Company, N.A., as Escrow Agent (**"Associated Trust"**, or the **"Escrow Agent"**).

**WHEREAS:**

**A.** Deere & Company (**"Deere"**) was a defendant in an action styled IN RE DEERE & CO. REPAIR SERVICES ANTITRUST LITIGATION, Case No. 22-cv-50188, MDL No. 3030 in the Western Division of the Northern District of Illinois (the **"Action"**).

**B.** The Court appointed the firms of Gustafson Gluek PLLC, Cotchett, Pitre & McCarthy, LLP, and Wexler Boley & Elgersma LLP as Interim Co-Lead Counsel in this Action (hereinafter collectively **"Co-Lead Counsel"**). All agreements made herein by Co-Lead Counsel are made on behalf of all settling cases consolidated under the Action.

**C.** Co-Lead Counsel, on behalf of plaintiffs to the case consolidated under the Action, and Deere have entered into a Confidential Term Sheet (**"TS"**) executed on December 10, 2025;

**D.** The parties subsequently signed a Confidential Settlement Agreement (**"SA"**) on March 6, 2026. The terms of the SA will be made public when Lead Counsel files the Motion for Preliminary Approval on April 6, 2026;

**E.** Pursuant to the Settlement Agreement of the Co-Lead Counsel and Deere, Deere will be required to deposit certain funds into a Settlement Account and such funds will be deposited within 15 business days following the Court's entry of the Preliminary Approval Order and the provision of wiring instructions to Deere;

**F.** Co-Lead Counsel intends that any income tax payable in respect of any earnings on the Settlement Account and any fees or expenses of the Escrow Agent be paid as provided herein;

**G.** Associated Trust will serve as the Escrow Agent for the Settlement Account; and

**H.** Co-Lead Counsel desires that the Escrow Agent accept, hold and distribute such funds transferred to and deposited with the Escrow Agent, and the Escrow Agent has agreed to accept, hold and distribute such funds deposited with the Escrow Agent, in accordance with the terms, provisions, covenants and conditions of this Escrow Agreement.

**NOW, THEREFORE,** in consideration of the mutual premises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1

1.      Recitals and Definitions. The foregoing recitals are true and correct and are incorporated herein as if set forth at length. All references to specific defined terms not defined herein shall bear the same meaning and definition as set forth in the TS.

2.      Establishment of Escrow. Co-Lead Counsel represents that the following will be specifically contemplated by the Settlement Agreement in this Action: (i) the appointment of the Escrow Agent as provided herein; (ii) payment of income tax arising in respect of earnings on the Deere Settlement Fund Account as provided herein; or (iii) any payment of fees or expenses of the Escrow Agent as provided herein.

3.      Appointment of and Acceptance by the Escrow Agent. Co-Lead Counsel hereby appoints Associated Trust to serve as the Escrow Agent hereunder, and the Escrow Agent hereby accepts such appointment.

4.      Settlement Account and Legal Fee Settlement Sum. Upon execution of this Escrow Agreement, the Escrow Agent shall immediately establish an account at Associated Trust titled "Deere Settlement Fund Account" (hereinafter "Settlement Account") into which Deere shall deposit funds for disbursement in accordance with the terms of this Escrow Agreement and the TS. All of the funds to be deposited by Deere, which are identified in the TS, will be referred to as the **"Deere Settlement Fund"** herein. The Escrow Agent, immediately upon receipt, shall acknowledge receipt of funds so received to Co-Lead Counsel in writing.

5.      Investment of Deere Settlement Fund.

5.1      Investment. The Escrow Agent is authorized and directed to invest and reinvest the Deere Settlement Fund as soon as reasonably possible and to the extent practicable, in instruments secured by the full faith and credit of the United States, including Treasury Bills, Treasury Notes and Treasury Bonds, and money market funds investing solely in those instruments. All interest and earnings of the Deere Settlement Fund shall be retained for the benefit of the Settlement Account. All such interest and earnings shall be reported, for tax purposes, under a tax identification number to be obtained by Co-Lead Counsel for the Settlement Account. The Escrow Agent is authorized and directed to sell such investments as may be required to make any payment due under this Escrow Agreement.

5.2      Statements. The Escrow Agent shall, on a monthly basis, furnish to Co-Lead Counsel a statement of the balance of the Settlement Account as of the last "Business Day" (as hereinafter defined) of each month and the amount of interest or income that has accrued on the Settlement Account as of such date. For the purposes hereof, "Business Day" shall mean a day other than a Saturday, Sunday or other day on which commercial banks in the United States are authorized or required by law to close.

6.      Disbursements from the Deere Settlement Fund.

6.1      Instruction. The Escrow Agent shall hold, maintain, and administer the Deere Settlement Fund for the benefit of the Settlement Account and shall permit the disbursement thereof solely pursuant to an order or other written instruction issued by the Court or as otherwise authorized herein. It is recognized and agreed that the Court may order, or Co-Lead Counsel may

agree, that the Escrow Agent transfer funds into a separate sub-account which may be established solely for the purposes of satisfying the provisions of the TS.

6.2     Withdrawal. Escrow Agent shall disburse the Deere Settlement Funds from time to time, upon receipt of, and in accordance with, a Written Direction. **"Written Direction"** shall mean a written direction executed by Co-Lead Counsel and directing Escrow Agent to disburse all or a portion of the Deere Settlement Funds or to take or refrain from taking an action pursuant to this Escrow Agreement. Such Written Direction shall contain wiring instructions or an address to which a check shall be sent. Such Written Direction may be emailed to the Escrow Agent rather than sent by personal service or certified mail.

6.3     Qualified Settlement Account. Co-Lead Counsel represents that the Settlement Account meets the requirements of a Qualified Settlement Fund under 26 CFR §§ 1.468B and 1.468B-1 (c) and shall be treated accordingly for tax purposes. Escrow Agent or its designee is appointed as the tax administrator of the Settlement Account. Co-Lead Counsel shall (i) obtain the federal and state taxpayer identification numbers for the Settlement Account and provide same to the Escrow Agent and (ii) provide instructions, in accordance with the notice provisions of paragraph 11.6 of this Escrow Agreement, to the Escrow Agent for the release of sufficient funds from the Settlement Account to pay all taxes owed by the Settlement Account in accordance with 26 CFR § 1.468B-2 and any applicable state tax laws. The tax administrator shall (i) be responsible for all tax reporting and filing requirements for the Settlement Account, and (ii) send copies of all such tax filings and returns to Co-Lead Counsel in accordance with the notice provisions of paragraph 11.6 of this Escrow Agreement

7.     Concerning the Escrow Agent.

7.1     Scope of Understanding. Other than as set forth in this Escrow Agreement, the Escrow Agent has no interest in the Deere Settlement Fund, but is serving as a stakeholder only and shall not be required to take any action with respect to any matters that may arise in connection with this Escrow Agreement, other than to receive, hold, pay interest earned as set forth in paragraph 5.1 hereof and make delivery of the Deere Settlement Fund as herein expressly provided or by reason of a judgment or court order. The Escrow Agent shall not be responsible for the performance of Co-Lead Counsel's obligations under this Escrow Agreement or for the performance of any obligations under the terms and provisions of the SA.

The Escrow Agent shall not be personally liable for any act taken or omitted by it hereunder if taken by it in good faith and in the exercise of its own best judgment absent acts constituting gross negligence or willful misconduct. The Escrow Agent is not a fiduciary.

7.2     Knowledge and Sufficiency of Documents. The Escrow Agent shall not be bound by or have any responsibility with respect to compliance with any agreements between any parties herein, including, but not limited to, the SA, irrespective of whether the Escrow Agent has knowledge of the existence of any such agreement or the terms and provisions thereof. The Escrow Agent's only duty, liability, and responsibility shall be to receive, hold, invest in accordance with the terms of this Agreement, pay interest earned as set forth in paragraph 5.1 hereof and deliver the Deere Settlement Fund as herein provided. The Escrow Agent shall not be required in any way to determine the validity or sufficiency, whether in form or in substance, of the Deere Settlement

3

Fund or the validity, sufficiency, genuineness or accuracy of any instrument, document, certificate, statement or notice referred to in this Escrow Agreement or contemplated hereby, including, but not limited to, the SA, the parties to this Agreement's mistake of law or fact, or for anything it may do or refrain from doing in connection herewith, except for its own willful misconduct or negligence.

7.3     Consultation with Legal Counsel. The Escrow Agent may consult with its in-house counsel, or as reasonably necessary, with other counsel satisfactory to the Escrow Agent with respect to questions relating to its duties and/or responsibilities hereunder or otherwise in connection herewith and shall not be liable for any action taken, suffered or omitted by the Escrow Agent upon the advice of such counsel, provided that Escrow Agent does not commit gross negligence or willful misconduct. The Escrow Agent may act through its directors, officers, affiliates, agents, representatives, attorneys and employees so long as they are not affiliated with any of the parties.

In the event of a prolonged dispute involving this Agreement that cannot be resolved, Escrow Agent may file an action in interpleader naming the Co-Lead Counsel in Federal court pursuant to section 11.8 and deposit the balance of the Deere Settlement Fund with the clerk of court after first deducting Escrow Agent's reasonable and actual costs of filing the action, including, without limitation, attorneys' fees, court costs and costs incurred in consulting legal counsel of Escrow Agent's selection prior to filing the interpleader action. Concurrently with such filing, Escrow Agent shall be dismissed from such action, this Escrow Agreement shall terminate, and all liability, obligation and responsibility of Escrow Agent shall be released and discharged, other than for losses, costs or damages resulting from Escrow Agent's willful misconduct or gross negligence.

7.4     Reimbursement of Fees and Expenses of the Escrow Agent. In consideration of its acting as the Escrow Agent under and pursuant to this Agreement, the Escrow Agent shall be entitled to reasonable fees and expenses for its services performed hereunder, in accordance with Exhibit A attached to and incorporated into this Agreement. Such fees and expenses shall be chargeable to, and the Escrow Agent may deduct such fees and expenses from, the Deere Settlement Fund; except that Escrow Agent shall give Co-Lead Counsel ten (10) days' advance written notice of its intention to deduct any fees or expenses from the Deere Settlement Fund.

7.5     Use of Settlement Funds. At all times, all interest and/or all other economic benefits derived from the Settlement Fund, must be applied directly to the Settlement Fund and may not be used to provide benefits or income to any third parties other than to cover transaction costs normally and customarily associated with purchasing the financial instruments for the account.

7.6     Dispute Resolution for Fees and Expenses. Any dispute regarding the reasonableness of costs, expenses or fees provided for in subparagraph 7.4 shall be determined by the Court.

7.7     Limited Liability of Escrow Agent. The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied, and the

4

Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement, settlement or stipulation. The Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the primary cause of any loss to the parties hereto. In no event shall Escrow Agent be liable for incidental, indirect, special, consequential or punitive damages (including, but not limited to lost profits), or any losses, claims, damages, liabilities and expenses, including reasonable costs of investigation, reasonable attorneys' fees and disbursements that may be imposed on the Escrow Agent or incurred by the Escrow Agent in connection with the performance of its duties under this Escrow Agreement ("**Losses**"), including but not limited to any litigation arising from this Escrow Agreement or involving its subject matter; except for any Losses arising from the gross negligence or willful misconduct of Escrow Agent.

8.     Removal or Resignation of the Escrow Agent. The Escrow Agent may resign at any time, for any reason, by written notice of its resignation given by the Escrow Agent to Co-Lead Counsel at least thirty (30) days before the effective date specified for such resignation. The Escrow Agent may be removed by the Court or by written agreement of Co-Lead Counsel at any time for any reason by written notice given to the Escrow Agent at least thirty (30) days before the effective date specified for such removal. Upon the effective date of such resignation or removal:

(i)     The Deere Settlement Fund shall be delivered by the Escrow Agent to such successor escrow agent as may be designated by the Court or otherwise designated by mutual written agreement of Co-Lead Counsel, whereupon the Escrow Agent's obligations hereunder shall cease and terminate;

(ii)     If no such successor escrow agent has been designated by such date, all obligations of the Escrow Agent hereunder shall, nevertheless, cease and terminate, and the Escrow Agent's sole responsibility thereafter shall be to keep the Deere Settlement Fund and to deliver the same to a person designated by the Court or otherwise designated by mutual written agreement of Co-Lead Counsel; and

(iii)     Further, if no such successor escrow agent has been designated by such date, the Escrow Agent may petition the Court for the appointment of a successor escrow agent and the Escrow Agent may deliver to the Court the Deere Settlement Fund.

9.     Dealings. The Escrow Agent and its "Affiliates" (as such term is defined in Rule 12b-2 under the Securities Exchange Act of 1934, as amended) may, without having to account therefor to any other party hereto, accept deposits from, extend credit (on a secured or unsecured basis) to and generally engage in any kind of banking, trust or other business with any such party or any of its Affiliates as if it were not acting as the Escrow Agent. Other than as set forth in this Escrow Agreement, the Escrow Agent and/or the Escrow Agent's Affiliates shall have no right of set-off or recoupment against the Deere Settlement Fund in connection with any loan or other business transaction with any other party hereto.

10.     Representations, Warranties and Additional Agreements.

5

10.1     Authority. Each party hereto represents and warrants that it is duly organized, validly existing, and in good standing and has full power and authority to execute and deliver this Escrow Agreement and to perform its obligations hereunder.

10.2     Additional Agreements.

(a) Co-Lead Counsel agrees that neither party shall have any greater interest or rights to the Deere Settlement Fund than as granted by the terms of the SA and herein.

(b) Until the Deere Settlement Fund is released pursuant to the terms of this Escrow Agreement, the Deere Settlement Fund shall not be an asset of any party to this Escrow Agreement, and the Deere Settlement Fund shall not be encumbered, alienated, used as collateral or listed as an asset on any financial statement of any party.

(c) The interests of the Escrow Agent and/or its Affiliates and/or Agent Parties are limited as set forth in this Escrow Agreement.

11.     Miscellaneous.

11.1     Complete Agreement. This Escrow Agreement shall constitute the entire agreement with respect to the subject matter hereof and supersede all agreements, representations, warranties, statements, promises and understandings, whether oral or written, with respect to the subject matter hereof.

11.2     Amendments and Waivers. This Escrow Agreement may be amended, modified and supplemented, and compliance with any provision hereof may be waived, only by a writing signed by each of the parties hereto.

11.3     Assignment. No party to this Agreement may assign any of its rights under this Agreement without the prior consent of the other parties to this Agreement, such consent not to be unreasonably withheld. This Escrow Agreement shall be binding upon and inure to the benefit of Co-Lead Counsel, the Escrow Agent and their respective successors and permitted assigns.

11.4     Waivers Strictly Construed. With regard to any power, remedy or right provided herein or otherwise available to any party hereunder (a) no waiver or extension of time shall be effective unless expressly contained in a writing signed by the waiving party; and (b) no alteration, modification or impairment shall be implied by reason of any previous waiver, extension of time, delay or omission in exercise, or other indulgence.

11.5     Severability. In case anyone or more of the provisions contained in this Escrow Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Escrow Agreement, and this Escrow Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

11.6     Notices. All notices under this Escrow Agreement will be in writing and will be delivered by personal service or facsimile or certified mail (or, if certified mail is not

6

available, then by first class mail), postage prepaid, to such address as may be designated from time to time by the relevant party, unless otherwise specified herein, and which will initially be as set forth below. Copies of all notices shall be given to Co-Lead Counsel and the Escrow Agent. Any notice sent by certified mail will be deemed to have been given three (3) days after the date on which it is mailed. Any notice transmitted by facsimile will be deemed given upon confirmation of receipt. All other notices will be deemed given when received. Notices will be addressed as follows or to such other address as the party to whom the same is directed will have specified in conformity with the foregoing:

    (a)    If to Co-Lead Counsel:

Gustafson Gluek PLLC
Attn: Daniel C. Hedlund
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Fax: (612) 339-6622
dhedlund@gustafsongluek.com

Cotchett, Pitre & McCarthy, LLP
Attn: Adam J. Zapala
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Fax: (650) 697-0577
azapala@cpmlegal.com

Wexler Boley & Elgersma LLP
Attn: Kenneth A Wexler
311 S. Wacker Drive, Suite 5450
Chicago, IL 60606
kaw@wbe-llp.com

    (b)    If to the Escrow Agent:

Associated Trust Company, N.A.
Attn: John Kvamme
5353 Wayzata Boulevard
St. Louis Park, MN 55416
Fax: 952-591-2774
John.Kvamme@AssociatedBank.com

    11.7    Governing Law. The rights and liabilities of the parties under this Escrow Agreement shall be governed by the laws of the State of Minnesota, regardless of the choice-of-law provisions of such state or any other jurisdiction.

    11.8    Forum and Consent to Jurisdiction. Any litigation that arises out of or under this Escrow Agreement or which relates to this Escrow Agreement in any manner whatsoever

7

(including any litigation to void or otherwise set aside this Escrow Agreement) shall be instituted exclusively in the U.S. District Court for the District of Minnesota. All parties to this Escrow Agreement agree to and do hereby submit themselves to the jurisdiction of such court for purposes of any litigation arising out of or under or relating in any manner to this Escrow Agreement.

11.9 Facsimile: Counterparts. The receipt of a facsimile executed copy of this Escrow Agreement from any party hereto shall be deemed to be original incontrovertible evidence that such party has delivered this Escrow Agreement with the same force and effect as though the original executed Escrow Agreement had been delivered. This Escrow Agreement, and any Written Direction related hereto, may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11.10 Survival. The provisions of this Escrow Agreement shall survive the termination of this Escrow Agreement.

11.11 Construction. This Escrow Agreement shall be construed without regard to any presumption or rule of law against the party causing this Escrow Agreement to be drafted.

12. USA Patriot Act. To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. For a non-individual person such as a business entity, a charity, a Trust or other legal entity, Escrow Agent will ask for documentation to verify its formation and existence as a legal entity. Escrow Agent may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation. The parties acknowledge that a portion of the identifying information set forth herein is being requested by the Escrow Agent in connection with the USA Patriot Act, Pub.L.107-56 (the "Act"), and each agrees to provide any additional information requested by the Escrow Agent in connection with the Act or any other legislation or regulation to which Escrow Agent is subject, in a timely manner.

13. Security Advice Waiver Language. Co-Lead Counsel acknowledge that regulations of the Comptroller of the Currency grant them the right to receive brokerage confirmations of security transactions as they occur. Co-Lead Counsel specifically waive such notification to the extent permitted by law and acknowledge that Co-Lead Counsel will receive periodic cash transaction statements, which will detail all investment transactions.

**IN WITNESS WHEREOF**, the parties hereto have caused this Escrow Agreement to be duly executed and delivered as of the date first written above.

**Co-Lead Counsel:**

Gustafson Gluek PLLC

By:_____
        Dan Hedlund

8

Cotchett, Pitre & McCarthy, LLP

By: _____
     Adam Zapala

Wexler Boley & Elgersma LLP

By:_____
     Kenneth A. Wexler

Escrow Agent:

**Associated Trust Company, N.A.**

By:_____
     John Kvamme

9

(including any litigation to void or otherwise set aside this Escrow Agreement) shall be instituted exclusively in the U.S. District Court for the District of Minnesota. All parties to this Escrow Agreement agree to and do hereby submit themselves to the jurisdiction of such court for purposes of any litigation arising out of or under or relating in any manner to this Escrow Agreement.

      11.9    Facsimile; Counterparts. The receipt of a facsimile executed copy of this Escrow Agreement from any party hereto shall be deemed to be original incontrovertible evidence that such party has delivered this Escrow Agreement with the same force and effect as though the original executed Escrow Agreement had been delivered. This Escrow Agreement, and any Written Direction related hereto, may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

      11.10  Survival. The provisions of this Escrow Agreement shall survive the termination of this Escrow Agreement.

      11.11  Construction. This Escrow Agreement shall be construed without regard to any presumption or rule of law against the party causing this Escrow Agreement to be drafted.

      12.    USA Patriot Act. To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. For a non-individual person such as a business entity, a charity, a Trust or other legal entity, Escrow Agent will ask for documentation to verify its formation and existence as a legal entity. Escrow Agent may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation. The parties acknowledge that a portion of the identifying information set forth herein is being requested by the Escrow Agent in connection with the USA Patriot Act, Pub.L.107-56 (the "Act"), and each agrees to provide any additional information requested by the Escrow Agent in connection with the Act or any other legislation or regulation to which Escrow Agent is subject, in a timely manner.

      13.    Security Advice Waiver Language. Co-Lead Counsel acknowledge that regulations of the Comptroller of the Currency grant them the right to receive brokerage confirmations of security transactions as they occur. Co-Lead Counsel specifically waive such notification to the extent permitted by law and acknowledge that Co-Lead Counsel will receive periodic cash transaction statements, which will detail all investment transactions.

      **IN WITNESS WHEREOF**, the parties hereto have caused this Escrow Agreement to be duly executed and delivered as of the date first written above.

**Co-Lead Counsel:**

Gustafson Gluek PLLC

By: _Dan C. Hedlund_ 
      Dan Hedlund

8

**Co-Lead Counsel:**

Gustafson Gluek PLLC

By:_____

    Dan Hedlund

Cotchett, Pitre & McCarthy, LLP

By:_____

    Adam Zapala

Wexler Boley & Elgersma LLP

By:_____

    Kenneth A. Wexler

Escrow Agent:

**Associated Trust Company, N.A.**

By:_____

    John Kvamme

9

Cotchett, Pitre & McCarthy, LLP

By: _____
    Adam Zapala

Wexler Boley & Elgersma LLP

By: _____
    Kenneth A. Wexler

Escrow Agent:

**Associated Trust Company, N.A.**

By: _____
    John Kvamme

9

Exhibit A
Fees

## ESCROW AGENT / INVESTMENT MANAGEMENT FEES

### Market Value Managed in Escrow Account(s):

Value of the Funds held in Escrow:  2 basis points

### Included in the above fees:

Annual account fees
Investment Management
Acceptance and Set-Up Fee
Escrow agent charges
Transactions / securities settlement charges
Wire / Cash movement charges
Portfolio Online – 24/7 online viewing access
Statement / Reporting services
Designated Service Team access
Tax Reporting Fees

*Legal and Extraordinary Costs will be charged at cost if required. Extraordinary Costs are costs incurred for unforeseen duties or responsibilities, including termination, default, workouts, amendments, releases, etc. that are not provided for in the governing documents.  A reasonable charge will be assessed based on the nature of the services and the responsibility involved.*

10